Kevin M. Cassidy (*pro hac vice* application to be filed)
Oregon Bar No. 025296
Pacific Environmental Advocacy Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
(781) 659-1696
cassidy@lclark.edu

Adam Keats (*pro hac vice* application pending)
California Bar No. 191157
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, CA 94104
415-436-9682 x304
akeats@biologicaldiversity.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; and GRAND CANYON WILDLANDS COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, a United States Government Agency,<br><br>Defendant. | No. CIV<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Resource Conservation and Recovery Act Endangerment) |

## NATURE OF THE CASE

1. Plaintiffs Center for Biological Diversity, Sierra Club and Grand Canyon Wildlands Council bring this case to limit the disposal of a known toxin on public lands in northern Arizona and to protect wildlife species threatened by exposure to spent lead ammunition in their foraging range within United States Forest Service (Forest Service) land in Arizona.

2. This is a citizens' suit brought to enforce the Resource Conservation and Recovery Act (RCRA).  It is authorized under Section 7002 of RCRA, 42 U.S.C. § 6972.

3. The Forest Service manages a significant portion of the federal land within condor range in Arizona, including the Kaibab National Forest.  Though the Forest Service has both broad authority and responsibility to protect public land and the wildlife found there, the agency has failed to take action to stop the disposal of lead in the form of spent ammunition on Forest Service land.  Spent ammunition disposed of on Forest Service land presents an "imminent and substantial endangerment to health or the environment."  This endangerment is ongoing as of the date of this complaint.

4. Plaintiffs accordingly seek judicial review, as well as declaratory and/or injunctive relief, from this Court to stop the continued endangerment to wildlife species occurring within the Kaibab National Forest, and to prevent the harm to the Plaintiffs and their members that has resulted and is resulting from the ongoing endangerment.

## JURISDICTION AND VENUE

5. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 6972(a) (RCRA citizen suit). An actual, justiciable controversy exists between Plaintiffs and the Forest Service. The requested relief is proper under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), and 42 U.S.C. § 6972(e).

6. As required by RCRA § 7002(b) and 42 U.S.C. § 6972(b), on May 15, 2012, Plaintiffs sent a 90-day notice of the endangerment to the Forest Service, the United States Department of Agriculture, and the United States Department of the Interior, as well as to the United States Environmental Protection Agency (EPA) and the State of Arizona. *See* Exhibit 1 (attached and incorporated by reference). The notice period has expired. The Forest Service has not remedied the endangerment alleged in this complaint and the endangerment continues. Neither the EPA nor the State of Arizona has taken any action that could bar Plaintiffs' claims pursuant to 42 U.S.C. § 6972(b).

7. Venue is properly vested in this Court pursuant to 42 U.S.C. § 6972(a) because the alleged endangerment has occurred and is occurring within the Kaibab National Forest. The Kaibab National Forest is located within this judicial district. The Prescott Division of the Court includes Coconino County. LRCiv 5.1(a). Cases arising in counties within the Prescott Division must be filed in Phoenix. *Id.*

### PARTIES

8. **United States Forest Service**. Defendant Forest Service is a federal agency within the United States Department of Agriculture. The Forest Service oversees and manages the Kaibab National Forest, approximately 1.6 million acres of public land,

which borders the north and south rims of the Grand Canyon. The Forest Service is vested by law with the authority and responsibility to manage and protect the public lands and resources of the Kaibab National Forest at issue in this litigation.

9. The Plaintiff Groups in this action are:

   a. **Center for Biological Diversity**. The Center for Biological Diversity ("CBD") is a nonprofit conservation organization incorporated in California and based in Tucson, Arizona, with more than 38,000 members throughout the United States and the world. Through public education, science, and participation in administrative proceedings and litigation, CBD seeks to preserve, protect, and restore biodiversity, native species, ecosystems, and public lands and public trust resources. More than 1,600 of its members reside in Arizona, where CBD has offices in Tucson, Phoenix, and Flagstaff in addition to other locations throughout the United States.

   b. **Sierra Club**. The Sierra Club is a nationwide non-profit conservation organization formed in 1892, with more than 700,000 members, and a Grand Canyon Chapter in Arizona. The Sierra Club's mission is to explore, enjoy, and protect the wild places of the Earth, to practice and promote responsible uses of the Earth's ecosystems and resources, to educate and enlist humanity in the protection and restoration of the quality of the natural and human environment and to use all lawful means to carry out those objectives.

   c. **Grand Canyon Wildlands Council**. The Grand Canyon Wildlands Council is a non-profit organization committed to creating and applying a dynamic

conservation area network that ensures the existence, health, and sustainability of all native species and natural ecosystems in the Grand Canyon ecoregion.

10. As described above, Plaintiffs and their respective members have advocated and will continue to advocate for the protection of wildlife species in the Kaibab National Forest, including the California condor and other species that are particularly susceptible to lead poisoning caused by spent ammunition, by seeking the prohibition of the use of lead ammunition in the Kaibab National Forest.

11. Over the years, Plaintiffs, their members and their families have hiked, backpacked, camped, taken river trips, bird-watched, and recreated in areas of northern Arizona known to be important habitat for a variety of wildlife known to be adversely affected by spent lead ammunition in the environment, including in the Kaibab National Forest and Grand Canyon National Park. They intend to continue to use the region on an ongoing basis in the future.

12. Members of each of the Plaintiff Groups consider the opportunity to view, photograph, study, and experience wildlife in their natural habitat to be an important and aesthetically significant aspect of the area in which they live and recreate.

13. The Forest Service has virtually complete control over the manner in which the public uses Forest Service land. Although it is well within the agency's authority to prohibit or otherwise regulate use of lead ammunition within National Forests, the Forest Service has not done so. In addition, the Forest Service issues special use permits for hunting guides and outfitters whose clients are able to use lead ammunition when hunting on Forest Service land. The Forest Service's actions and

inaction with respect to the use of lead ammunition on federal land contributes to the disposal of spent lead ammunition on Forest Service land that may present an imminent and substantial endangerment to health or the environment.

14. Plaintiffs and their members are concerned about continued lead contamination within the Kaibab National Forest, and seek to prevent to the greatest extent possible any amount of toxic pollutants entering the environment.

15. Plaintiffs' members have read many scientific studies and reports documenting the threat to human health and wildlife posed by spent lead ammunition in the environment, as well as documenting the actual harm to condors and other wildlife attributed to lead poisoning from spent lead ammunition.

16. Plaintiffs and their members are reasonably concerned that the Forest Service's failure to use its broad authority to eliminate continued lead contamination on Forest Service lands in Arizona presents serious threats to wildlife, both within Kaibab National Forest as well as on adjacent public lands, such as Grand Canyon National Park.  As a result, Plaintiffs and their members are reasonably concerned that protections afforded wildlife, such as bald and golden eagles and condors, in Grand Canyon National Parkwill be less effective due to the continued exposure of that wildlife to spent lead ammunition within Kaibab National Forest.

## LEGAL BACKGROUND

**A.     Citizen Suits under the Resource Conservation and Recovery Act**

17. In RCRA, Congress found that "disposal of solid waste . . . in or on the land without careful planning and management can present a danger to human health and the

environment;" and that "inadequate and environmentally unsound practices for the disposal or use of solid waste have created greater amounts of air and water pollution and other problems for the environment and for health." 42 U.S.C. § 6901(b).

18. Congress empowered citizens to commence civil actions in federal district court to address risks to human health and the environment posed by improperly controlled and managed solid and hazardous wastes.

19. Specifically, § 7002(a)(1)(B) of RCRA authorizes any person to commence a civil action "against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

20. Under a citizen suit for imminent and substantial endangerment, "[t]he district court shall have jurisdiction, . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph 1(B), to order such person to take such other action as may be necessary, or both . . ." 42 U.S.C. § 6972(a).

**B.    Forest Service Authority to Regulate Activities on Forest Service Land**

21. The Property Clause of the United States Constitution gives Congress the power to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The "'complete power' that Congress has over public lands necessarily includes the power to regulate and protect the wildlife living there." *Kleppe v. New Mexico*, 426 U.S. 529, 540-41 (1976). National Forests are public lands owned by the United States and administered by the United States Forest Service. 16 U.S.C. § 1609(a).

22. Congress has exercised its authority in establishing the United States Forest Service to manage public lands and resources within the National Forest System. Through the Organic Administration Act of 1897 (16 U.S.C. §§ 473-82, 551), the Multiple-Use Sustained Yield Act of 1960 (MUSYA, 16 U.S.C. §§ 528-531), the National Forest Management Act of 1976 (NFMA, 16 U.S.C. §§ 1600-1614), the Federal Land Policy and Management Act (FLPMA, 43 U.S.C. §§ 1701-2, 1711-23, 1732-37, 1740-42, 1744, 1746-48, 1751- 53, 1761-71, 1781-82) and other legislation, Congress has vested the Forest Service with broad authority and responsibility to regulate activities on and occupancy of the National Forests.

23. The Forest Service has interpreted its broad statutory authorities to include the ability to issue orders and regulations that prohibit and restrict activities in areas and regions for the purpose of, *inter alia*, protecting "threatened, endangered, rare, unique, or vanishing species of plants, animals, birds or fish, or special biological communities." 36 C.F.R. § 261.70(a)(4). The regulations provide that each Forest Supervisor has the

authority to restrict the manner in which the public uses the particular Forest Service lands over which the supervisor has jurisdiction. *See id*. § 261.50(a).

24. One of the ways the Forest Service exercises its authority over the use of Forest Service land is by prohibiting commercial uses of national forest land unless the user first obtains a Special Use permit; commercial guiding and outfitting for hunting trips are included within this regulatory regime. *See generally* 36 C.F.R. § 251.50-.65. Each special use authorization must contain terms and conditions that "[m]inimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment." *Id*. § 251.56.

## FACTS

25. Lead is a potent, potentially deadly toxin, exposure to which can cause damage to many organs in the body and cause all animals, as well as humans, to suffer numerous and severe adverse health effects.

26. Lead is used as the primary material in many forms of ammunition, including bullets used for big game hunting.

27. Lead ingestion and poisoning from ammunition sources has been documented in many avian predators and scavengers that inhabit Forest Service land in Arizona, such as California condors, bald and golden eagles, northern goshawks, ferruginous hawks, turkey vultures, and common ravens.

28. Many bird species are exposed to spent lead ammunition when they consume mammals that have been shot with lead ammunition but not retrieved and later die in

the wild.  These "shot but not retrieved" carcasses are a food source for wild, free-ranging California condors in Arizona.

29. Wildlife species also are exposed to spent lead ammunition when they consume the remains of field-dressed animals that have been killed with lead ammunition.  The remains of large game animals left behind after field-dressing are sometimes known as "gut piles." Lead bullet fragments consumed by avian scavengers are typically concentrated in the gut piles.

30. When lead-core rifle bullets strike an animal they often fragment into hundreds of small pieces of lead that can be found several inches from the site of the wound in large game animals.  A very small lead fragment is enough to severely poison and/or kill a bird, even one as large as a California condor.

31. The ingestion of spent lead ammunition, even in minute amounts, by wildlife causes many adverse behavioral, physiological and biochemical health effects, including seizures, lethargy, progressive weakness, reluctance to fly or inability to sustain flight, weight loss leading to emaciation, and death.  The existence of such adverse health effects makes the wildlife experiencing them more susceptible to other forms of mortality, such as predation.

32. Due to the significant adverse health effects and mortality caused by exposure to and ingestion of spent lead ammunition, the federal government instituted in 1991 a nationwide ban on the use of lead ammunition for hunting waterfowl.  56 Fed. Reg. 22100-01 (May 13, 1991).  The nationwide ban continues in effect, and the federal government has issued additional regulations prohibiting the use of lead ammunition

in other hunting contexts, such as depredation. *See, e.g.,* 75 Fed. Reg. 75153-01 (Dec. 2, 2010) (requiring non-lead ammunition for take of migratory birds under a depredation order to prevent toxicity hazards to other wildlife).

33. The Forest Service manages the Kaibab National Forest in northern Arizona. Hunting, including big-game hunting for deer and elk, occurs within the Kaibab National Forest, primarily during the fall hunting seasons. The Kaibab Plateau, an area north of the Grand Canyon in the Kaibab National Forest, is renowned for its trophy large-antlered mule deer ("the Kaibab deer") and, as a result, is a popular hunting destination.

34. The Forest Service issues Special Use permits for hunting guides and outfitters to take clients on hunting trips within the Kaibab National Forest. As part of its permitting process, the Forest Service does not prohibit or restrict the use of lead ammunition within the Kaibab National Forest. Likewise, Arizona Game and Fish Department hunting regulations do not prohibit or restrict the use of lead ammunition for hunting within the Kaibab National Forest.

35. Spent lead ammunition disposed of within the Kaibab National Forest creates a complete exposure pathway for wildlife species, such as California condors, that feed on discarded "gut piles" and on carcasses of shot but not retrieved animals, which are contaminated with lead ammunition. Condors are obligate scavengers that rely on large-mammal carrion for a major percentage of their food source. Condors also have been known to scavenge on other hunter-shot species such as coyote, rabbits, and ground squirrels.

36. There are currently only 73 free-flying condors in northern Arizona and southern Utah ("Southwest condor population").  The Kaibab National Forest provides critical breeding habitat and foraging range for the Southwest condor population.  Condor use of the North Kaibab Ranger District, the area of the Kaibab National Forest north of the Grand Canyon, is year-round, including breeding and nesting.  Condors have been extensively radio-tracked and have been detected flying over, foraging and roosting throughout the North Kaibab Ranger District.

37. Lead poisoning has been and continues to be the leading cause of condor mortality in Arizona, and the primary obstacle to achieving a self-sustaining population of condors there.  California condors require properly functioning habitat, which includes lead-free carrion, for their survival and recovery.

38. Of the 46 condor fatalities in the Southwest condor population for which diagnoses were possible between the reintroduction in 1996 and 2011, the Southwest Condor Recovery Team (SCRT) attributes 21 to lead poisoning (46%) and an additional two deaths of suspected lead poisoning.  Many more condor deaths would have occurred but for veterinary intervention and treatment by wildlife biologists with the SCRT.

39. Spent lead ammunition has been and continues to be the primary source of the condors' lead exposure in Arizona.  According to a 2012 report by the SCRT, "radiographs have continued to reveal lead pellets and fragments in the digestive tracks [sic] of lead-poisoned condors and bullet fragments in deer and coyotes collected in the condor's range."  SCRT 2012 Report at 14.

40. Free-flying condors frequently have elevated levels of lead in their blood. The SCRT has documented hundreds of instances of lead exposure in condors since the Southwest condor population was reintroduced in 1996. Annually, 45 to 95 percent of the condor population tests positive for lead exposure. Veterinary intervention is often required to save lead-poisoned condors. In many cases, chelation, an expensive and invasive blood treatment, has been required to reverse dangerously high blood lead levels.

41. Condors are social animals that often feed in groups. As a result, one contaminated carcass or gut pile can poison several condors in the course of one feeding event.

42. The Southwest condor population's blood lead levels peak during the fall deer hunting season in the Kaibab National Forest. Based on GPS telemetry, the SCRT study found "an abrupt increase of blood lead levels corresponded with increased use of deer-hunting areas on the Kaibab Plateau in 2002 and thereafter. Spikes in blood lead levels were associated with condor visitation there during and just after the 2002-06 deer seasons, and there were significantly higher lead levels among condors visiting the Kaibab Plateau in the weeks prior to testing." *Id*.

## FIRST CLAIM FOR RELIEF:

### (Resource Conservation and Recovery Act)

**The Forest Service has contributed and is contributing to disposal of solid waste on the Kaibab National Forest that may present an imminent and substantial endangerment to health or the environment**

43. Plaintiffs incorporate by reference all preceding paragraphs.

44. RCRA prohibits "any person" from contributing to the past or present handling, treating, storing, or disposing of solid waste in a manner "which may present an imminent and substantial endangerment to health of the environment." 42 U.S.C. § 6972(a)(1)(B).

45. The Forest Service, by and through its authority and control over the Kaibab National Forest and the activities that occur there, has contributed and is contributing to the past or present disposal of solid or hazardous waste, which may present an imminent and substantial endangerment to health or the environment by failing to use its broad authority to stop the disposal of lead in the form of spent ammunition within the Kaibab National Forest. 42 U.S.C. § 6972(a)(1)(B).

46. The Forest Service, by and through its authority and control over the Kaibab National Forest and the activities that occur there, has contributed and is contributing to the past or present disposal of solid or hazardous waste, which may present an imminent and substantial endangerment to health or the environment by issuing Special Use permits for guiding and outfitting activities that do not prohibit the use of lead ammunition within the Kaibab National Forest.

## REQUEST FOR RELIEF

47. Plaintiffs respectfully request that this Court enter the following relief:

   (1).   Adjudge and declare that the Forest Service has contributed and is contributing to the past or present disposal of any solid or hazardous waste which may present an imminent and substantial endangerment in violation of § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B);

(2).     Permanently enjoin the Forest Service from creating or contributing to the creation of an imminent and substantial endangerment to human health or the environment within the Kaibab National Forest;

(3).     Order the Forest Service to pay reasonable attorneys fees and costs (including expert witness fees), as provided by RCRA, 42 U.S.C. § 6972(e).

(4).     Grant Plaintiffs such further and additional relief as the Court may deem just and proper.

DATED: September 5, 2012                                  Respectfully submitted,


/s/
Adam Keats
351 California St., Suite 600
San Francisco, CA 94104
Email: akeats@biologicaldiversity.org
Tel: 415-436-9682 x304

Kevin M. Cassidy
P.O. Box 445
Norwell, MA  02061
Email: cassidy@lclark.edu
Tel: 781-659-1696

Attorneys for the Plaintiffs