Kevin M. Cassidy (*pro hac vice*)
Oregon Bar No. 025296
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
(781) 659-1696
cassidy@lclark.edu

Adam Keats (*pro hac vice*)
California Bar No. 191157
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, CA 94104
415-436-9682 x304
akeats@biologicaldiversity.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; and GRAND CANYON WILDLANDS COUNCIL,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | Case No: 3:12-cv-08176-SMM<br><br>**MEMORANDUM IN RESPONSE TO THE STATE OF ARIZONA'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF FILING A MOTION TO DISMISS** |

COME NOW Plaintiffs Center for Biological Diversity, Sierra Club and Grand Canyon Wildlands Council (collectively "Plaintiffs"), by and through undersigned counsel, and file this Memorandum in Response to the State of Arizona's Motion to Intervene for the Limited Purpose of Filing a Motion to Dismiss. In this case brought under the citizen suit provision of the Resource

1

Conservation and Recovery Act ("RCRA"), Plaintiffs seek declaratory relief and Plaintiffs seek to permanently enjoin the United States Forest Service ("Forest Service") from creating or contributing to the creation of an imminent and substantial endangerment to human health or the environment on Kaibab National Forest land in northern Arizona. The endangerment is caused by the disposal of spent lead ammunition on national forest land that is later ingested by wildlife there.

While Plaintiffs strongly dispute many of the assertions Arizona sets forth in its brief, Plaintiffs do not oppose Arizona's Motion to Intervene. In short, Plaintiffs accept that the Ninth Circuit has interpreted the requirements of Federal Rule of Civil Procedure 24 broadly in favor of intervention. However, Plaintiffs submit this response to the State's Motion to Intervene, to expressly preserve all arguments as to the State's potential Motion to Dismiss. To the extent that similar requirements appear in the test for whether a party should be permitted to intervene in a case and whether an absent party is necessary and indispensable under Rule 19, those requirements are viewed in vastly different lights by courts. While the State of Arizona may have articulated interests sufficient to meet the relatively permissive standards for intervention, those same interests will not be sufficient to support a Motion to Dismiss under Rule 19. Thus, Plaintiffs seek to preserve their arguments as to a potential Motion to Dismiss, including, but not limited to, whether Arizona is a necessary party

under Rule 19(a); whether, if Arizona is a necessary party, joinder is feasible[1]; whether, if joinder is not feasible, if in equity and good conscience the action case should proceed among existing parties; and whether the public rights exception to traditional joinder rules applies. Further, as explained below, Plaintiffs respectfully request the Court defer ruling on the question of whether the State of Arizona waives its sovereign immunity by intervening even for a limited purpose until the parties are able to more fully brief that issue.

Finally, Plaintiffs submit this response to clarify and correct certain assertions in Arizona's Motion to Intervene. In describing Arizona's asserted interests in this case, Arizona mischaracterizes, *inter alia*, the nature of the case and relief sought in this action against the federal government about activity occurring on federal land. Plaintiffs respond to correct those mischaracterizations herein.

**I.    Arizona's Articulated Interests and Purported Impairment Thereof May Be Sufficient for Purposes of a Motion to Intervene, but Will Be More Closely Scrutinized for Purposes of a Motion to Dismiss for Nonjoinder, Which are Disfavored.**

For motions to intervene as of right, "the [Rule 24] requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *see also*

---

[1] State agencies are potentially liable parties subject to lawsuit under RCRA's citizen suit provision. *See* 42 U.S.C. § 6972(a)(1)(B); *see also, e.g., Cox v. City of Dallas, Texas*, 256 F.3d 281, 307-09 (5th Cir. 2001) (citizen suit under RCRA 6972(a)(1)(B) against the executive director of the Texas Natural Resource Conservation Commission in his official capacity).

3

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) ("constru[ing] Rule 24(a) liberally in favor of potential intervenors"). In addition to mandating broad construction, Rule 24 intervention analysis "is guided primarily by practical considerations, not technical distinctions." *Id*. Applicants to intervene as of right must demonstrate that four requirements are met: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Id*.

In support of its Motion to Intervene, Arizona articulates two interests related to the subject of the action: "(1) Arizona's sovereign interest to adopt and enforce its own statutes and regulations concerning the manner and methods for taking wildlife, including the types of permissible ammunition, and (2) Arizona's sovereign interest in wildlife conservation and preserving its voluntary lead reduction program." *Arizona Motion to Intervene*, at 6. At this stage, Plaintiffs accept—without conceding the correctness of Arizona's assertions—that those interests will be liberally construed in favor of intervention.

By contrast, motions to dismiss are disfavored, and "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency *will certainly result*." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440-41 (4th Cir. 1999) (emphasis added); *see also Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (indispensable party analysis "is designed to avoid the harsh results of rigid application"); Wright and Miller, 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.) (generally federal courts are reluctant to dismiss a complaint for failure to join a party); *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) ("Dismissal of a case is a drastic remedy, however, which should be employed only sparingly."); *Jasper v. New York Prop. Ins. Underwriting Assoc.*, 815 F.2d 240, 242 (2d Cir. 1987) ("As an alternative to dismissal, a court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit.").

In determining whether a party is necessary under Rule 19(a), a court must determine whether the absent party has a legally protected interest in the suit. *Makah Indian*, 910 F.2d at 558 (finding absent tribes had a legally protected interest because any shares of ocean harvest of salmon reallocated to the Makah Tribe would necessarily come from other, absent tribes). This interest must be more than a financial stake and more than speculation about a future event. *Id*. There is no formula for determining whether a nonparty must

be joined under Rule 19(a). The inquiry is "heavily influenced by the facts and circumstances of each case." *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir.1986) (quoting *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982)). If a legally protected interest is established, the Court must consider whether the absent party is so situated that disposing of the action in the party's absence may, as a practical matter, impair or impede the party's ability to protect the interest. Fed. R. Civ. P. 19(b).

To the extent that similar requirements appear in analyzing whether a party should be permitted to intervene in a case and whether an absent party is necessary and indispensable under Rule 19, those requirements are viewed in vastly different lights by courts. Accordingly, while an applicant for intervention may show that it meets the four "broadly interpreted" requirements for the purposes of Rule 24 intervention, a similar showing is not necessarily sufficient for similar requirements viewed in the context of Rule 19. Specifically, Plaintiffs, by not opposing Arizona's Motion to Intervene, do not concede that the State's articulated interests and purported impairment thereof, when strictly construed in the context of a Rule 19 joinder analysis, will satisfy those requirements.

## II. The State of Arizona's Sovereign Immunity Status

The Court should defer ruling on whether Arizona, by seeking to intervene in this case, has waived its sovereign immunity from suit. In a

footnote, Arizona cites to one case—*Southwest Center for Biological Diversity v. United States Bureau of Reclamation ("Southwest Center")*, 143 F.3d 515 (9th Cir. 1998)—that the State says "recogniz[es] state interest in intervening for purpose of seeking dismissal." *Arizona Motion to Intervene*, at 2, n.2. *Southwest Center*, however, recognizes no such interest. There, several states did *not* seek intervention, but filed a brief by special appearance.[2] *Southwest Center*, 143 F.3d at 519-20. The states argued they were necessary parties based on their interest in water levels of Lake Mead on the Lower Colorado River, but that they could not be joined in the case because of their Eleventh Amendment sovereign immunity. *Id*. at 520. The district court denied the states' indispensable party motions as moot because it had already dismissed the original complaint. *Id*. The Ninth Circuit affirmed. *Id*. at 522 ("once Reclamation was no longer subject to an order to spill water, the states' claim became hypothetical and moot as a matter of law"). Accordingly, not only did *Southwest Center* not involve states seeking intervention, the court did not reach the merits of the sovereign immunity issue.

Plaintiffs are aware of no case holding that a state retains its sovereign immunity when it has sought and been granted intervention for the sole purpose of filing a motion to dismiss under Rule 19. Given the scant and tangential case law cited in a footnote by Arizona for its proposition that intervention for a

---

[2] Notably, several parties did seek and were granted intervention in the case. *Id*. at 519.

7

purported limited purpose does not act as a waiver of sovereign immunity, the Court should, if it grants the State's Motion to Intervene, defer ruling on the sovereign immunity question until it can be more fully briefed by the parties.

### III. The Central Issue in This Case is Whether the Forest Service Has Contributed or Is Contributing to the Disposal of Solid or Hazardous Waste on the Kaibab National Forest that May Present an Imminent and Substantial Endangerment to Health or the Environment

Every year, in the Kaibab National Forest, many species of wildlife are needlessly exposed to and poisoned by spent lead ammunition in their wild habitat. Although the State of Arizona's Motion to Intervene focuses on California condors, lead ingestion and poisoning from ammunition sources has been documented in many avian predators and scavengers that inhabit the Kaibab National Forest, including bald and golden eagles, northern goshawks, ferruginous hawks, turkey vultures, and common ravens. Complaint, ¶ 27. Because biologists have tracked and monitored condors extensively since their reintroduction to northern Arizona in 1996, the incidence of lead toxicity and mortality among that population is well documented. Complaint, ¶ 38; *see also generally Arizona Motion to Intervene, Exhibit B*. As Arizona acknowledges, despite the existence of its voluntary lead reduction program since 2003, lead toxicity has been and continues to be the leading cause of condor mortality in northern Arizona. *Arizona Motion to Intervene*, at 3.

The Kaibab National Forest, approximately 1.6 million acres of public land bordering the north and south rims of the Grand Canyon, is vitally important habitat for California condors. Complaint, ¶ 36. The Forest Service is vested by law with the authority and responsibility to manage and protect the public lands and resources of the Kaibab National Forest at issue in this litigation. Complaint, ¶¶ 21-24.

Through this lawsuit, the Plaintiffs seek to require the Forest Service to take necessary actions to abate the known endangerment caused by spent lead ammunition disposed of on the Kaibab National Forest. In its Motion, Arizona mischaracterizes the injunctive relief sought by the Plaintiffs in this case: "Plaintiffs seek an injunction requiring the [Forest Service] to stop the use of lead ammunition on the national forest." *Arizona Motion to Intervene* at 2. Plaintiffs' Complaint, however, seeks to "[p]ermanently enjoin the Forest Service from creating or contributing to the creation of an imminent and substantial endangerment to human health or the environment within the Kaibab National Forest." Complaint ¶ 47.

While at this stage, Plaintiffs believe that a prohibition on the use of lead ammunition on the Kaibab National Forest is the most direct, effective and efficient way for the Forest Service to abate the endangerment, the Court will have broad discretion in fashioning an appropriate remedy under RCRA. 42 U.S. C. § 6972(a) ("The district court shall have jurisdiction, . . . to restrain any

person who has contributed or who is contributing to the past or present . . . disposal of any solid or hazardous waste referred to in paragraph 1(B), to order such person to take such other action as may be necessary, or both."). Indeed, Arizona includes as participators in its voluntary lead reduction program, those hunters who use lead ammunition but bury their gut piles or carry them out of the national forest so as to eliminate the potential for lead exposure. *See Arizona Motion to Intervene*, at 3 (describing part of Arizona's voluntary program as "encouraging hunters to bury or remove gut piles").

Arizona further speculates about the effect that abating the endangerment caused by spent lead ammunition on Kaibab National Forest land will have, including claiming, with no justification or support, that actions designed to remove a toxin from the environment "jeopardize[] public support for additional releases of condors, as well as support for reintroducing other wildlife species." *Arizona Motion to Intervene* at 4, n.3. This is nothing more than unfounded speculations and scare tactics on the part of Arizona. Indeed, such an attitude on the part of the State does hunters a great disservice. The vast majority of hunters recognize the need for reasonable regulations and regulatory schemes (e.g., hunting license requirements, seasonal restrictions, bag limits, etc.) to protect and conserve wildlife and hunting opportunities for *all* hunters and future generations of hunters.

Even if the relief ultimately granted in this case involves prohibiting or restricting the use of lead ammunition on national forest lands, such relief would not constitute a restriction on *hunting* on those lands, and is not a collateral attack on the Commission's authority to regulate hunting. To the extent that Arizona suggests otherwise (*Arizona Motion to Intervene*, at 4, n.3 & 7), it is engaging in hyperbole. The truth is hunting activities would not be restricted. Hunters would enjoy the same access to the Kaibab National Forest that existed prior to any potential lead ammunition restrictions. Hunters would be able to hunt, *inter alia*, in the same areas, for the same species and numbers of game, and at the same times of year. This lawsuit does not seek to "impose restrictions on hunting;"[3] rather it seeks to address the endangerment to health and the environment caused by spent lead ammunition on Kaibab National Forest land.

Finally, even if such speculative effects on hunting in the Kaibab National Forest were considered restrictions (which they would not be), such restrictions would not be due to the reintroduction of condors as Arizona suggests. *See Arizona Motion to Intervene*, at 4, n.3. Rather, they would be required to address the disposal and existence of a toxic waste in the environment that may

---

[3] Condors are obligate scavengers that rely on large-mammal carrion for a major percentage of their food source. Accordingly, discarded "gut piles" and carcasses of shot but not retrieved animals, which occur in condor habitat as a result of hunting activities there, are an excellent food source for condors, so long as they are not contaminated with lead. Complaint, ¶ 35.

present an imminent and substantial endangerment.  The spent lead ammunition and attendant threats exist in the Kaibab National Forest and, so long as hunting continues and abatement measures are not undertaken, will continue to exist in the environment with or without condors.  What biologists have done—by tracking and monitoring the reintroduced condor populations so closely—is show the direct exposure pathway that spent lead ammunition in the environment creates, and how adversely affected all species of wildlife are that are exposed to this deadly toxin.[4]  Complaint, ¶¶ 35, 38-40.  Because their blood lead levels are checked consistently, condors can and do serve as a measurement of the amount of lead in the environment that may present endangerment for other exposed species, such as bald and golden eagles, which are not tracked or monitored in Arizona as closely as condors are.  Before condors were reintroduced in northern Arizona, the extent and nature of the threat and exposure to lead was largely undefined, but the reintroduction of condors did not cause the threat to exist on Kaibab National Forest land, it simply makes it impossible for the Forest Service to ignore it any longer.

Of course, the dangers posed by spent lead ammunition in the environment generally *are* well known and have been known for decades.  Due to the significant adverse health effects and mortality caused by exposure to and

---

[4] Free-flying condors in northern Arizona frequently have elevated levels of lead in their blood, and those levels peak during the fall hunting seasons on the Kaibab National Forest.  Complaint, ¶¶ 39-42.

ingestion of spent lead ammunition, the federal government instituted in 1991 a nationwide ban on the use of lead ammunition for hunting waterfowl.  56 Fed. Reg. 22100-01 (May 13, 1991).  Complaint, ¶ 32.  The nationwide ban continues in effect, and the federal government has issued additional regulations prohibiting the use of lead ammunition in other hunting contexts, such as depredation.  *See, e.g.*, 75 Fed. Reg. 75153-01 (Dec. 2, 2010) (requiring non-lead ammunition for take of migratory birds under depredation order to prevent toxicity hazards to other wildlife).

The Forest Service has an obligation to prevent the disposal of solid or hazardous waste on its property that may cause an imminent and substantial endangerment to health or the environment.  In fact, the Forest Service has a heightened duty in this regard because it manages the Kaibab National Forest as public lands in trust for the American people, including many citizens of Arizona—both hunters and non-hunters alike—who want to put an end to easily preventable wildlife poisoning and death from lead toxicity.

**IV.  Conclusion**

While the State of Arizona may have articulated interests sufficient to meet the relatively permissive standards for intervention, those same interests will not be sufficient to support a Motion to Dismiss under Rule 19.  It is premature for the Plaintiffs to address fully the State's Proposed Motion to Dismiss at this stage.  By not opposing Arizona's Motion to Intervene,

Plaintiffs do not waive any arguments Plaintiffs may make in response to the State's Motion if and when it is filed, including, but not limited to, arguing that Arizona has waived its sovereign immunity by seeking intervention in this case.

Respectfully submitted,

Dated:  November 20, 2012             */s/ Kevin Cassidy*
                                      Kevin M. Cassidy

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, which will send notification of such filing to the following:

**Dustin Maghamfar**, United States Department of Justice, Attorney for Defendant United States Forest Service.
**James Odenkirk**, Attorney for the State of Arizona.
**Adam Keats**, Attorney for Plaintiffs.


/s/ *Kevin Cassidy*