C. D. Michel - Cal. B.N. 144258
Scott M. Franklin - Cal. B.N. 240254
MICHEL & ASSOCIATES, PC
180 E. Ocean Boulevard, Suite No. 200
Long Beach, CA 90802
(pro hac vice applications forthcoming)
Facsimile:    562-216-4445
Emails:       cmichel@michellawyers.com
              sfranklin@michellawyers.com
Telephone:    562-216-4444

Douglas S. Burdin, DC B.N. 434107
Anna M. Seidman, DC B.N. 417091
Safari Club International
501 2nd Street, NE
Washington, D. C. 20002
(pro hac vice applications forthcoming)
Facsimile:    202-543-1205
Emails:       dburdin@safariclub.org
              aseidman@safariclub.org
Telephone:    202-543-8733

Attorneys for Proposed Defendant-
Intervenors National Rifle Association
of America and Safari Club International

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| Center for Biological Diversity, et al., | CASE NO. 3:12-cv-08176-PCT-SMM |
| Plaintiffs, | NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, DECLARATIONS IN SUPPORT THEREOF |
| vs. | |
| United States Forest Service, | |
| Defendant, and | |
| National Rifle Association of America and Safari Club International, | ORAL ARGUMENT REQUESTED |
| Proposed Defendant-Intervenors. | |

TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard, in Courtroom 625 at 401 W. Washington Street, Phoenix, Arizona, before the Honorable Stephen M. McNamee,

1

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

proposed Defendant-Intervenors National Rifle Association of America ("NRA") and Safari Club International ("SCI") (collectively "NRA and SCI") will, and hereby do, move this Court for an order granting leave to intervene in this action, under 42 U.S.C. § 6972(b)(2)(E) and Federal Rule of Civil Procedure 24(a),[1] or alternatively under Rule 24(b).

Oral Argument is requested pursuant to LRCiv 7.2(f), as this case is one of broad public importance and the current defendant is not likely to advocate in support of NRA and SCI's proposed intervention.  Oral argument will give the Court an opportunity to make inquiries as to any issues it deems relevant but that were not briefed by the parties.  The Motion of NRA and SCI is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations and attached exhibits, all pleadings and papers filed in this action, and any and all arguments and evidence presented by counsel at the requested hearing.  Plaintiff Center for Biological Diversity ("CBD"), and the other Plaintiffs herein (collectively the "CBD Plaintiffs"), oppose the proposed intervention, while the Defendant United States Forest Service (the "Service") takes no position as to the proposed intervention.

Respectfully submitted this 21st day of November, 2012.

**MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
C.D. Michel, *Attorneys for Proposed Defendant -Intervenor National Rifle Association of America*

**SAFARI CLUB INTERNATIONAL**

/s/ Douglas S. Burdin
Douglas S. Burdin and Anna M. Seidman, *Attorneys for Proposed Defendant-Intervenor Safari Club International*

---

[1]  All rule references in this Motion and the attached Memorandum refer to the Federal Rules of Civil Procedure.

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

## I.   INTRODUCTION

NRA and SCI respectfully request they be granted leave to intervene as defendants in this action.  In the last three years, NRA and SCI have sought and obtained permission to participate in three lawsuits brought by CBD regarding lead-based ammunition ("lead ammunition").[2]  As explained below, NRA and SCI meet the requirements for intervention under 42 U.S.C. § 6972(b)(2)(E) and intervention as of right under Rule 24(a), as well as the requirements for permissive intervention under Rule 24(b).  NRA and SCI both have members who plan to hunt in the Kaibab National Forest ("Kaibab NF") using lead ammunition.  CBD Plaintiffs seek to force the Service to prohibit lead ammunition use in the Kaibab NF.  That relief would harm NRA's, SCI's, and their members' interests.  Accordingly, NRA and SCI seek leave to intervene herein.

## II.   PROCEDURAL HISTORY AND PREVIOUS RELATED CASE

CBD Plaintiffs seek a ban of hunting with lead ammunition in the Kaibab NF, which is managed by the Service.  Compl. ¶¶ 3, 47 (Dkt. 1).  CBD Plaintiffs rely on the Resource Conservation and Recovery Act ("RCRA") in requesting that the Court issue an order: (1) finding the "Service has contributed and is contributing to the past or present disposal of any solid or hazardous waste which may present an imminent and substantial endangerment" and (2) enjoining the furtherance of the alleged endangerment, i.e., the use of lead ammunition in the Kaibab NF.  *Id*. ¶ 47.  The alleged endangerment CBD Plaintiffs focus on is the supposed threat that California condors ("condors") face as a result of ingesting hunter-shot game containing lead.  *Id*. ¶ 10.

This lawsuit is CBD's second attempt at using condor protection as the putative basis

---

[2]  Order Granting [NRA] Mot. Intervene Jan. 30, 2010 at 8-9 & Order Granting [SCI] Motion for Amicus, *Ctr. for Biological Diversity v. Bureau of Land Mgmt. (CBD v. BLM)*, Case No. 3:09-cv-08011-PCT-PGR (D. Ariz.) (Dkt. 58 & 73, respectively); Minute Order Granting [NRA and SCI's] Mot. Intervene April 28, 2011, *Ctr. for Biological Diversity v. Jackson (CBD v. Jackson)*, Case No. 1:10-cv-02007-EGS (D.D.C.); Minute Order Granting [NRA and SCI's] Mot. Intervene July 31, 2012, *Trumpeter Swan Society v. Envtl. Protection Agency (TSS v. EPA)*, Case No. 1:12-cv-00929-EGS (D.D.C.).  CBD is a co-plaintiff in *TSS v. EPA*.

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   for obtaining a ban on hunting with lead ammunition in northwestern Arizona.  The 2009

2   action *CBD v. BLM* was very similar to this action: both are grounded in an allegation that a

3   federal agency responsible for managing federal land in northwestern Arizona violated

4   environmental laws by failing to take the actions CBD believes are necessary to protect

5   condors.  *Id.*; *see* First Am. Compl., *CBD v. BLM* (Dkt. 21).

6        In *CBD v. BLM*, CBD attempted to raise condor-related claims under the National

7   Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA"), though the

8   condor-related ESA claim was dropped by CBD during litigation.   First Am. Compl. ¶ 1,

9   *CBD v. BLM* (Dkt. 21); Second Am. Compl. ¶ 1, *CBD v. BLM* (Dkt. 91).  The *CBD v. BLM*

10  court dismissed CBD's NEPA claim at the summary adjudication stage because, contrary to

11  CBD's assertion, the Bureau of Land Management had taken "the requisite 'hard look' at the

12  environmental consequences [certain land management plans would have] on condors[.]"

13  Order Sept. 30, 2011 at 23, *CBD v. BLM* (Dkt. 134).

14       NRA and SCI's intervention in this case is based in part on the fact that the relief CBD

15  Plaintiffs seek here once again conflicts with federal law intended to protect hunting:

16  50 C.F.R. § 17.84(j)(2)(i).  If the relief sought is granted, it will significantly limit the types

17  of ammunition hunters, including NRA and SCI members, use to hunt in this area, and will

18  impact the experience and success they will have with their hunting in the Kaibab NF.  This

19  will burden the longstanding tradition of hunting in northern Arizona.  NRA and SCI have

20  both a current interest in and a decades-long record of opposing unjustified impingements on

21  hunting and ammunition choice both nationally and specifically in Arizona.  *See* Cox Decl.

22  ¶5; Goodenow Decl. ¶¶ 9-10.

23              **III.    FACTUAL BACKGROUND**

24  **A.    General Background Regarding NRA and Its Advocacy Activities**

25       NRA is a tax-exempt corporation under 26 U.S.C. § 501(c)(4), incorporated in New

26  York in 1871, and its principal offices are in Fairfax, Virginia.  Cox Decl. ¶ 2.  NRA's

27  membership includes approximately four million individuals, with many members in Arizona

28  alone.  *Id.*  One of NRA's primary purposes is "to promote and defend hunting as a shooting

---

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   sport and as a viable and necessary method of fostering the propagation, growth,

2   conservation, and wise use of our renewable wildlife resources." *Id*. ¶ 3.  NRA has

3   represented the interests of hunters by sponsoring pro-hunting legislation and referenda, as

4   well as challenging unreasonable anti-hunting laws and regulations. *See id*. ¶¶ 4-8.

5       NRA is especially knowledgeable regarding one subject implicitly raised by CBD

6   Plaintiffs' lawsuit: the deficiencies in the scientific analyses supporting the theory that

7   condors are being poisoned as a result of ingesting hunter-shot lead.  Recce Decl. ¶¶ 11-13.

8   As recently as August 8, 2012, scientific experts, researchers, and attorneys working with

9   NRA submitted evidence to and testified before the California Fish and Game Commission

10  (the "Commission"), rebutting presentations supposedly demonstrating a nexus between

11  hunters' use of lead ammunition and lead poisoning of condors. *Id*. ¶ 13.  Based in large part

12  on NRA's efforts, a proposed expansion of the lead ammunition ban currently applicable to

13  a large portion of California's hunting grounds met severe resistance.  *Id*.

14  ¶¶ 11-13.  In response to NRA's rebuttal, the Commission formed a special committee,

15  whereby all stakeholders, including the NRA, will have access to the relevant data to evaluate

16  the alleged relationship between lead and condor health issues, including an evaluation of all

17  potential  sources of lead in the environment.  Video of Commission meeting of August 8,

18  2012, 04:57:20-5:14:36, *available at http://www.cal-span.org/cgi-bin/media.pl?folder=CFG*.

19  **B.      General Background Regarding SCI and Its Advocacy Activities**

20       SCI is a non-profit corporation incorporated in the State of Arizona, operating under

21  § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in

22  Tucson, Arizona.  Goodenow Decl. ¶ 3.  Its membership includes approximately 52,000

23  individuals from the United States and many countries around the world. *Id*. ¶ 4.  It has tens

24  of thousands of members throughout the country who hunt innumerable species, and many

25  hunt within the Kaibab NF. *Id*. ¶ 7-8.  Its missions are the conservation of wildlife, protection

26  of the hunter, and education of the public concerning hunting and its use as a conservation

27  tool.  *Id*. ¶ 5.  The conservation mission of SCI is carried out through its sister organization,

28  Safari Club International Foundation ("SCIF").  SCIF's missions include funding and

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1  managing worldwide programs dedicated to wildlife conservation, and providing outdoor

2  education and humanitarian services.  *Id*. ¶ 6.  In addition to litigation efforts generally

3  regarding hunting, conservation, federal lands, and endangered species,[3] SCI has commented

4  to the Commission on condors and lead ammunition.  *Id*. ¶¶ 9-10.

5  **C.   Hunting in the Kaibab NF**

6  Without doubt, hunting is a popular recreational activity in Arizona, including in the

7  Kaibab NF and surrounding areas.[4]  Hunting permits for big game are issued in Arizona to

8  hunters who participate in a drawing.[5]  Many of the people who seek these tags, as well as the

9  guides who assist hunters, are members of NRA, SCI, or both.  *See* Geiler Decl. ¶¶ 2-3;

10  Martin Decl. ¶¶ 2-3; Rainey Decl. ¶¶ 3,15; Rusing Decl. ¶¶ 3-4, 14; Britt Decl. ¶¶ 2-3, 15;

11  Taylor Decl. ¶¶ 3-4, 19, 30.  NRA and SCI members have hunted in the Kaibab NF using lead

12  ammunition and have definite plans to return to the Kaibab NF to hunt various species using

13  lead ammunition.  Rainey Decl. ¶¶ 3, 10-11, 15; Rusing Decl.  ¶¶ 2-3, 11, 13-14; Britt Decl.

14  ¶¶ 2-3, 8-9, 15; Taylor Decl. ¶¶ 3-4, 29-30.

15  Lead ammunition is traditionally used for hunting because, as to that particular use,

16  hunters generally consider it to be abundant, economical, and ballistically proven when

17  compared to non-lead ammunition.  *See* Geiler Decl. ¶¶ 5-6; Martin Decl. ¶¶ 5, 7; Rainey

18  Decl. ¶¶ 12, 14; Rusing Decl. ¶¶ 12; Britt Decl. ¶¶ 10, 13-14; Taylor Decl. ¶¶  20-29.

19  Moreover, it is at best, extremely difficult to procure non-lead ammunition in Arizona in

20  calibers for hunting small game and turkey, both of which are often hunted in the Kaibab NF.

21  Britt Decl. ¶ 12.  A ban on the use of lead ammunition in the Kaibab NF will diminish the

22  hunting experience of NRA and SCI members.  Martin Decl. ¶¶ 5, 7; Rainey Decl. ¶ 16;

23  Rusing Decl. ¶ 15; Britt Decl. ¶¶ 16-17; Taylor Decl. ¶ 31.

24  [3]  *See, e.g., N.J. Animal Rights Alliance v. N.J. Dept. of Envtl. Prot.*, 934 A.2d 52

25  (N.J. Super. Ct. App. Div. 2007) (black bear hunting); *In re Polar Bear Endangered Species Act Listing and 4(d) Rule Litig.*, 818 F. Supp. 2d 240 (D.D.C. 2011).

26  [4]  *See generally* Arizona Game and Fish Department, *Hunt Arizona, Survey, Harvest and Hunt Data for Big and Small Game* (2012), *available at*

27  http://www.azgfd.gov/regs/HuntArizona2012.pdf (listing statistics related to permits and

28  the number of animals obtained in Arizona's Game Management Units).

[5]  *Id.* at 1 (noting that big-game hunting permits are issued via a drawing in Arizona).

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1

# IV.    ARGUMENT

2

**A.    NRA and SCI Are Entitled to Intervene as a Matter of Right**

3

NRA and SCI are entitled to intervene as a matter of right because of their members'

4

strong interests in continuing to hunt with lead ammunition in the Kaibab NF.  Under RCRA:

5
6
7
8

> [i]n any action under subsection (a)(1)(B) of this section in a court of the United States, any person may intervene as a matter of right when the applicant claims an interest relating to the subject of the action and he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the Administrator or the State shows that the applicant's interest is adequately represented by existing parties.

9

42 U.S.C. § 6972(b)(2)(E).  Similarly, Rule 24(a) provides that:

10
11
12

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

13

As the standards under RCRA and Rule 24(a) are nearly identical, the NRA and SCI will rely

14

on the abundant cases interpreting Rule 24.

15

For cases brought under Rule 24, the Ninth Circuit has established a four prong test to

16

determine whether intervention as a matter of right is warranted:

17
18
19
20

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

21

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (citation

22

omitted).   The Ninth Circuit "construe[s] Rule 24(a) liberally in favor of potential

23

intervenors." *Id.*  Because NRA and SCI meet the requirements of each prong of the test,

24

intervention should be granted as a matter of right, just as it was in *CBD v. BLM*.

25

**1.    NRA and SCI's Motion to Intervene Is Timely**

26

NRA and SCI's motion to intervene is timely under the three-factor standard used by

27

courts in this Circuit: "(1) the stage of the proceeding at which an applicant seeks to intervene;

28

(2) the prejudice to other parties; and (3) the reason for and length of the delay." *United*

7

1   *States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). This case

2   was filed less than three months ago and the Service's initial response is not due until at least

3   November 30, 2012. Order Granting Ext. of Time Oct. 29, 2012 (Dkt. 19).

4       Because the Court has not set trial dates or discovery deadlines or otherwise

5   established any substantive deadlines, intervention will not prejudice any party. *See Idaho*

6   *Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding intervenor's

7   application was timely as it "was filed at a very early stage, before any hearings or rulings on

8   substantive matters"). In a case that could affect the rights and activities of third parties, the

9   plaintiffs have to expect that those third parties might attempt to intervene. Early intervention,

10   proposed herein, does not prejudice CBD Plaintiffs and does not involve any significant delay.

11   Thus, as to all three factors, the Motion is timely.

12       **2.    NRA and SCI Have Significant Protectable Interests in This Action**

13       NRA, SCI, and their members have protectable interests in continuing to hunt in the

14   Kaibab NF using lead ammunition–interests that are at risk in this case. "The movant must

15   . . . demonstrate a 'significantly protectable interest' in the lawsuit to merit intervention[; t]o

16   demonstrate this interest, a prospective intervenor must establish that (1) 'the interest

17   [asserted] is protectable under some law,' and (2) there is a 'relationship between the legally

18   protected interest and the claims at issue.'" Order Granting Mot. Intervene at 5, *CBD v. BLM*,

19   (Dkt. 58) (citations omitted); *accord Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)

20   (citation omitted).

21       **a.    NRA and SCI Assert Interests Protected by Law**

22       As to the first factor, the ability to hunt in the Kaibab NF using lead ammunition is

23   protected by Federal and State law, in particular the State of Arizona's game laws. *See, e.g.,*

24   Ariz. Admin. Code § R12-4-304. A proposed intervenor need not establish any "specific legal

25   or equitable interest" to satisfy Rule 24(a). Order Granting Mot. Intervene at 5, *CBD v. BLM*

26   (Dkt. 58) (citing *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d

27   1266 (9th Cir. 1995)). Courts make a "practical, threshold inquiry" into an applicant's

28   interest, bearing in mind that the test "is primarily a practical guide to disposing of lawsuits

by involving as many apparently concerned persons as is compatible with efficiency and due process." *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted).

NRA and SCI members seek to hunt with lead ammunition in the Kaibab NF. *See supra* Section III.C. Hunting in allowed in the Kaibab NF, as regulated by state law.[6] State law allows hunting of numerous species and sets limitations, such as seasons, bag limits, and methods of take. *See e.g.*, Ariz. Admin. Code § R12-4-318 (seasons for lawfully taking game); § R12-4-120 (bag limits for big game); § R12-4-304 (lawful methods for taking wild game). While Arizona does have a voluntary non-lead ammunition program,[7] Arizona law generally allows hunting with lead ammunition.[8] *See* Ariz. Admin. Code § R12-4-304 (listing lawful methods of take in Arizona, and excluding lead ammunition only as to waterfowl hunting). Thus, the interest described above is significant and protected by law.

NRA and SCI's nationwide advocacy for hunters' rights also establishes their "interest" in this litigation. As described *supra* in Sections III.A and III.B, NRA and SCI each have organizational missions to preserve the tradition of hunting, and to protect it from unreasonable and unnecessary restrictions. *See* Cox Decl. ¶¶ 3-5; Goodenow Decl. ¶ 5. Hunting permits for the Kaibab NF are sought by literally thousands of hunters yearly.[9] Based on the large number of hunters applying for permits to hunt in the Kaibab NF, many of whom are NRA and SCI members, it is clear that hunting in the Kaibab NF is immensely popular and a legitimate interest that NRA and SCI have the right to protect.[10] *See* Geiler Decl. ¶¶ 2-3;

---

[6] *See, e.g.*, United States Forest Service, *North Kaibab Ranger District,* http://www.fs.usda.gov/recarea/kaibab/recreation/recarea/?recid=11697&actid=54 (last visited Nov. 9, 2012) ("Big Game Hunting is regulated by . . . Arizona and allowed on the Kaibab [NF] during open seasons with applicable permits.").

[7] See Phil T. Seng, *Non-Lead Ammunition Program Hunter Survey* 2 (2006), http://www.azgfd.gov/w_c/documents/AmmoSurveyFINALReport2-23-06_001.pdf.

[8] While many hunters, including some NRA and SCI members, choose to participate in the voluntary program, others, including some declarants in this case, choose to continue to use lead ammunition for a variety of reasons.

[9] *See Hunt Arizona Survey, Harvest and Hunt Data for Big and Small Game, supra* note 4 at 23 (for the 2011 season, and as to just deer tags for Game Management Unit 12A, a total of 7,556 first-choice permits were sought).

[10] *See generally* Jonathan Silberman, PhD., *Economic Data on Fishing and Hunting*

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   Britt Decl. ¶¶ 2-3; 15; Taylor Decl. ¶¶ 3-4, 30.  NRA and SCI members who hold current

2   permits have a vested right to hunt in the Kaibab NF with lead ammunition.  NRA and SCI

3   intend to protect such rights if the Motion is granted.

4        Furthermore, NRA and SCI have a long history of advocacy related to protecting and

5   preserving the rights of hunters to continue to enjoy areas that have traditionally been open

6   to hunting.  *See* Cox Decl. ¶¶ 4-8; Goodenow Decl. ¶¶ 5, 9-10.  NRA and SCI each have an

7   established record of advocating against restrictions on hunting based on scientifically

8   unsupported claims of alleged environmental harm.  *See* Cox Decl. ¶¶ 5, 8; Goodenow Decl.

9   ¶ 10.  In fact, during the last thirty-five years, NRA and SCI have intervened in many lawsuits

10  potentially affecting the interests of hunters.[11]

11       Because the main goal of CBD Plaintiffs' lawsuit is to eliminate the use of lead

12  ammunition in the Kaibab NF, and because NRA and SCI have an interest in preventing such

13  limitation as part of their missions to protect hunters' rights and opportunities, NRA and SCI

14  possess interests that are sufficient to satisfy the requirements of Rule 24(a).

15

16   **b.    There Is a Relationship Between NRA and SCI's Legally Protected Interests and CBD Plaintiffs' Claims**

17       As is clear from the above discussion, the second element of the "significant

18  protectable interest" test, "a 'relationship' between its legally protected interest and the

19  plaintiff's claims[,]" is easily met here.  *Donnelly*, 159 F.3d at 409 (citation omitted).  "The

20  relationship requirement is met if the resolution of the plaintiff's claims actually will affect

21

22  *for the State of Arizona and for Each Arizona County, available at*
    http://www.azgfd.gov/pdfs/w_c/FISHING_HUNTING%20Report.pdf.

23  [11]  In addition to the cases cited *supra* in note 2, NRA or SCI, or both, have

24  intervened in the following hunting-related actions: *Fund for Animals v. Frizzell*, 530
    F.2d 982 (D.C. Cir. 1975) (NRA; the setting of certain hunting seasons by FWS);

25  *Greater Yellowstone Coalition, Inc., v. Servheen*, 665 F.3d 1015 (9th Cir. 2011) (SCI;
    Yellowstone area grizzly bear delisting); *Defenders of Wildlife v. Hall*, 565 F. Supp 2d

26  1160 (D. Mt. 2008) (NRA and SCI; removal of the northern Rocky Mountain gray wolf
    from protected status under ESA); *Wilderness Watch v. U.S. Fish & Wildlife Serv.*,

27  07-1185-PHX-MHM, 2008 U.S. Dist. LEXIS 70548 (D. Az. Sept. 8, 2008) (NRA and
    SCI; agency actions related to the creation of water developments that provide

28  supplemental water to wildlife), *rev'd on other grounds*, 629 F.3d 1024 (9th Cir. 2010).

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   the applicant." *United States v. City of Los Angeles*, 288 F.3d at 398 (quotation marks and

2   citation omitted).  This rule is not to be applied rigidly: "a party has a sufficient interest for

3   intervention purposes if it will suffer a practical impairment of its interests as a result of the

4   pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441.

5         CBD Plaintiffs contend hunting with lead ammunition is resulting an "imminent and

6   substantial endangerment to health or the environment[,]" and accordingly, that hunting with

7   lead ammunition in the Kaibab NF should be enjoined.  *See* Compl. ¶¶ 3-4 (Dkt. 1).  If this

8   action is successful, hunting likely will be restricted—e.g., a ban on hunters using lead

9   ammunition in the Kaibab NF.  Without question, such a result would "practically impair" the

10  interests in hunting asserted by NRA and SCI.  Therefore, there is a direct relationship

11  between NRA and SCI's interests and CBD Plaintiffs' claims.

12

13        **3.**    **The Relief CBD Plaintiffs Seek May Impair NRA and SCI's Interest in Protecting the Established Tradition of Hunting in the Kaibab NF**

14        As explained above, there is a clear relationship between NRA and SCI's interests and

15  CBD Plaintiffs' claim, which is patently adverse to NRA and SCI's interests.  Under the third

16  prong of the Rule 24(a) intervention inquiry, a party must demonstrate the litigation "may as

17  a practical matter impair or impede" the applicant's ability to protect an interest.  Fed. R. Civ.

18  P. 24(a)(2); *see California ex rel. Lockyer*, 450 F.3d at 440.  When analyzing this issue, courts

19  are guided by the Advisory Committee Notes for the 1966 Amendments to Rule 24(a), which

20  explain: "[i]f an absentee would be substantially affected in a practical sense by the

21  determination made in an action, he should, as a general rule, be entitled to intervene." *Sw.*

22  *Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (relying on Advisory

23  Committee Notes).

24        If CBD Plaintiffs obtain the relief they seek in this action, i.e., a lead ammunition ban

25  applicable to hunting in the Kaibab NF, it will obviously have a practical impact on NRA and

26  SCI members and their ability to hunt in the manner that has occurred for generations.

27  Similarly, it is possible that CBD Plaintiffs could obtain a settlement whereby the Service

28  agrees to some level of restriction on lead ammunition use, which will adversely affect the

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   interests of NRA and SCI members.  That is, such an injunction or settlement would deprive

2   Kaibab NF hunters of the ammunition considered to be abundant, economical, and effective.

3   Because non-lead ammunition can damage some firearms, a lead ammunition ban would make

4   it impossible for some hunters to use the firearms that they prefer and that they find most

5   effective.

6       And to the extent non-lead ammunition is not generally available in the calibers used

7   for hunting small game and turkey (both of which are popular game in the Kaibab NF, see

8   *supra* Section III.C), ammunition regulations excluding the use of lead ammunition would

9   preclude the hunting of such animals in the Kaibab NF by hunters who cannot afford or locate

10  non-lead ammunition.  *See, e.g.*, Britt Decl. ¶ 12.

11      The resolution of this case in favor of CBD Plaintiffs, by judicial determination or

12  settlement, will impair and impede NRA and SCI's attempts to protect their interests in

13  promoting hunting in general, and their members' specific interests in hunting with lead

14  ammunition in the Kaibab NF.  Thus, NRA and SCI meet the requirements of the third prong

15  of the Rule 24(a) intervention analysis.

16      **4.    NRA and SCI's Interests Are Not Fully Represented by the Service**

17      In light of NRA and SCI's specific interests in continuing the hunting with lead

18  ammunition in the Kaibab NF, the existing parties do not adequately represent NRA and SCI's

19  interests.  Rule 24(a)'s final prong requires an applicant for intervention as a matter of right

20  to show that its interests are "inadequately represented by the parties to the action."

21  *California ex rel. Lockyer*, 450 F.3d at 440.  The Supreme Court has characterized this

22  showing as "minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

23  (1972).  The following three factors are considered to determine if the existing parties

24  adequately represent the interests of a proposed intervenor:

25          (1) whether the interest of a present party is such that it will undoubtedly make
            all of a proposed intervenor's arguments; (2) whether the present party is
26          capable and willing to make such arguments; and (3) whether a proposed
            intervenor would offer any necessary elements to the proceedings that other
27          parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.
            2003).  As previously stated by the Ninth Circuit, "[t]he most important factor
28          in determining the adequacy of representation is how the interest [of the
            proposed intervenor] compares with the interests of existing parties."

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1  Order Granting Mot. Intervene at 7, *CBD v. BLM* (Dkt. 58) (citation omitted).  The court in

2  *CBD v. BLM* held that NRA proved its interests were not adequately represented by the

3  defendants in that case, noting that "NRA is focused on the hunting aspect and protecting its

4  members' rights and all hunters' rights to hunt with lead ammunition[, and that] is not the

5  objective of the current Defendants."  *Id*. at 8.

6                    **a.    No Presumption or Assumption of Adequacy Arises Here**

7           NRA and SCI must first clarify that this is not an instance when a presumption or

8  assumption of adequate representation arises.  This presumption can arise in the context of

9  a proposed intervention when: (1) "an applicant for intervention and an existing party have

10  the same ultimate objective[,]" and (2) the proposed intervenor and a governmental entity are

11  "on the same side."  *Arakaki*, 324 F.3d at 1086 (citation omitted).

12          The presumption does not arise here because NRA and SCI on the one hand, and the

13  Service on the other, have different objectives.   NRA and SCI's main objectives in

14  intervening are preserving their members' ability to continue to use lead ammunition and

15  obtaining a ruling indicating that the normal use of lead ammunition in the Kaibab NF does

16  not create: (1) an "imminent and substantial endangerment to health or the environment"

17  under RCRA, and (2) a legal basis to limit lead ammunition use because of alleged health

18  concerns related to members of the experimental population of condors released in Arizona.

19  The Service's main objective, on the other hand, is presumably avoiding a finding of liability

20  against it under RCRA and preserving its ability to continue to regulate uses of its lands

21  without potential RCRA liability.

22          Though the presumption may arise in other types of cases where a government entity

23  is "on the same side" as a proposed intervenor, that presumption does not arise when that

24  entity is "required to represent a broader view than the more narrow, parochial interests" of

25  a proposed intervenor. *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1499

26  (9th Cir. 1995), *abrogated by Wilderness Soc. v. U.S. Forest Serv*., 630 F.3d 1173 (9th Cir.

27  2011) (abrogation as to NEPA issue only).  The Service is charged with representing the

28  general public, which includes a broad spectrum of land users, including non-hunters, some

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1    of whom may advocate restricting or eliminating the use of lead ammunition in the Kaibab

2    NF.  NRA and SCI, in contrast, represent a narrower and more focused interest in this case:

3    maintaining the status quo for hunting.  Accordingly, the presumption does not arise.

4              That no presumption arises herein is further confirmed by the fact that the Service takes

5    no position as to the proposed intervention.  RCRA's intervention provision only recognizes

6    the presumption at issue if proven by a governmental entity. 42 U.S.C. § 6972(b)(2)(E) (the

7    Court shall grant intervention as of right where all other requirements are met "unless the

8    Administrator or the State shows that the applicant's interest is adequately represented by

9    existing parties").  Because the "adequate representation" presumption can only arise in

10   RCRA cases when raised and shown by a governmental party, and because the Service has

11   chosen not to raise that argument, no presumption arises against NRA and SCI's intervention.

12              **b.     All Relevant Factors Indicate NRA and SCI's Interests Are Not
                        Adequately Represented by the Service**

13

14              **i.      The interest of the Service is not such that it will undoubtedly
                        make all of NRA and SCI's arguments**

15             Under the first of the three factors, NRA and SCI are inadequately represented in this

16   Action unless existing parties "*will undoubtedly make all*" of NRA and SCI's arguments.

17   *Arakaki*, 324 F.3d at 1086 (emphasis added).  NRA and SCI intend to argue, among other

18   things, that the best scientific evidence available *does not* sufficiently establish a nexus

19   between condor illness and hunters' use of lead ammunition, in the Kaibab NF or otherwise.

20   If necessary, NRA and SCI are prepared to disprove CBD Plaintiffs' scientific assertions upon

21   which the alleged endangerment is based.

22             In contrast, though the Service will presumably challenge the conclusion that hunting

23   with lead ammunition results in a violation of RCRA, it seems likely the Service will not

24   challenge CBD Plaintiffs' proffered evidence and basic underlying theory that hunter-shot

25   lead projectiles pose a particular threat to condors.[12]  Indeed, prior to the introduction of

26   California condors into Arizona in 1996, the United States Fish and Wildlife Service

27   ──────────────
     [12] *See* U.S. Department of Agriculture, *Wildlife Specialist Report: Forest Plan Revision*

28   *DEIS* 45, available at

     http://prdp2fs.ess.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5367252.pdf.

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

1   ("FWS"), which works with the Service on condor preservation issues,[13] stated it *expected*

2   some of the introduced condors would die as a result of ingesting lead present in hunter-shot

3   carrion.   *See Endangered and Threatened Wildlife and Plants: Establishment of a*

4   *Nonessential Experimental Population of California Condors in Northern Arizona*, 61 Fed.

5   Reg. 54,044, 54,055 (Oct. 16, 1996) (codified in part at 50 C.F.R. § 17).  FWS stated that the

6   loss "would presumably be more than compensated by natural and captive reproduction." *Id*.

7           NRA is currently in the process of obtaining and reviewing all California condor

8   necropsies, avian lead poisoning research, and relevant administrative records.  Recce Decl.

9   ¶¶ 7-10.  Thus far, NRA has found evidence that suggests that lead poisoning may not be the

10  leading cause of death of condors released in Arizona.  *Id.* ¶¶ 11-13.  Thus, to the extent

11  necessary, NRA and SCI plan to argue that the relevant scientific data do not support CBD

12  Plaintiffs' assertion regarding the prevalence of lead-related condor mortalities, an assertion

13  plainly contrary to the gravamen of CBD Plaintiffs' claim herein.

14          Based on the fact that the Service has apparently adopted CBD Plaintiffs' theory that

15  hunter-shot lead ammunition is the main threat to condor survival, it is doubtful the Service

16  will make NRA and SCI's arguments that run contrary to that theory.

17

18          **ii.     The Service's interests are not such that it is "capable and willing"
                        to make all NRA and SCI's arguments**

19          When evaluating whether a present party to litigation will represent the interests of

20  a proposed intervenor, a court must determine if the present party is capable and willing to

21  make the same arguments as the proposed intervenor.  *Arakaki*, 324 F.3d at 1086.  Because

22  the Service's responsibilities are to a broad class of divergent interests (see *supra* Section

23  IV.A.4.a herein), it is not "capable and willing" to make the narrow arguments NRA and SCI

24  will make to maintain the status quo for hunting in the Kaibab NF.  Thus, this factor weighs

25  in favor of finding the Service's representation deficient vis-à-vis NRA and SCI's interests.

26

27  [13]  Both FWS and the Service are part of the California Condor Recovery
      Program.  See U.S. Fish & Wildlife Service, *California Condor Recovery Program*,
28    http://www.fws.gov/hoppermountain/CACORecoveryProgram/CACondorRecoveryProg
      ram.html (last visited Nov. 12, 2012).

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

               **iii.**      **NRA and SCI will offer necessary elements to the proceedings that the Service may neglect**

Finally, in relation to the third factor, NRA and SCI have expertise in the subject matter of this lawsuit as to condors. The experts, consultants, and attorneys working with NRA in particular have compiled and analyzed relevant scientific data and related material to effectively define the scientific deficiencies that underlay the contested conclusion that condors are dying from the ingestion of hunter-shot lead. *See* Recce Decl. ¶¶ 11-13. NRA and SCI are unaware of the Service having this particular expertise. Thus, the Service may not be able to defend against CBD Plaintiffs' hunting-related allegations as comprehensively and zealously as NRA and SCI will.

In summary, NRA and SCI's interests, defenses, and background are not in accord with the Service's. Because the Service will likely not represent NRA and SCI's interests, this prong, like the others discussed above, has been met. Therefore, NRA and SCI meet the requirements for intervention as of right, and requests the Court grant this Motion.

**B.**    **Permissive Intervention Under Rule 24(b)**

If intervene is not granted to NRA and SCI as a matter of right, NRA and SCI request that the Court grant them permissive intervention under Rule 24(b). Rule 24(b)(1)(B) allows for intervention based on judicial discretion in instances where the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact." Under Rule 24(b) "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

NRA and SCI meet all of the prerequisites for permissive intervention. As expressed throughout this Memorandum, NRA and SCI seek to protect hunting as it exists today in the Kaibab NF. NRA and SCI's defenses arise directly in response to the allegations in the Complaint. As a result, NRA and SCI's defenses share substantial questions of law and fact with the issues raised by this action. And as discussed at Section IV.A.1 *supra*, this Motion is timely and will not prejudice the rights of the existing parties.

///

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

Because NRA and SCI's interests are not represented by existing parties, NRA and SCI's participation will contribute to an equitable resolution of this case and "contribute to a full development of the underlying issues in the suit." *Or. Envt'l Council v. Or. Dep't of Envt'l Quality*, 775 F. Supp. 353, 359 (D. Or. 1991).  Accordingly, if this Court denies intervention pursuant to Rule 24(a), intervention is nonetheless proper under Rule 24(b).

## V.      CONCLUSION

For the foregoing reasons, NRA and SCI satisfy the requirements for intervention as of right as well as permissive intervention.  NRA and SCI's Motion is timely and supports the interests that NRA and SCI and their members have in maintaining the status quo for hunting in the Kaibab NF.  As the Service does not hunt and is not a user of the Kaibab NF, it likely will not address the impact that CBD Plaintiffs' claims may have on those who hunt in the Kaibab NF.  In addition, the Service is bound to consider multiple competing interests, whereas NRA and SCI have much more narrow interests to protect.

In light of the foregoing, NRA and SCI respectfully request this Court grant NRA and SCI's Motion to Intervene as of Right.  Alternatively, NRA and SCI request they be granted permissive intervention.  Finally, if the Court does not grant intervention, NRA and SCI request the Court allow NRA and SCI to participate herein as amici curiae.

Respectfully submitted this 21st day of November, 2012.

**MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
C.D. Michel, *Attorneys for Proposed Defendant -Intervenor National Rifle Association of America*

**SAFARI CLUB INTERNATIONAL**

/s/ Douglas S. Burdin
Douglas S. Burdin and Anna M. Seidman, *Attorneys for Proposed Defendant- Intervenor Safari Club International*

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2012, I electronically transmitted the   Notice of Motion and Motion for Leave to Intervene, Memorandum of Points and Authorities in Support Thereof, and Declarations in Support Thereof to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Adam F. Keats
Center for Biological Diversity
351 California St., Ste 600
San Francisco, CA 94104
415-436-9682
Fax: 415-436-9683
Email: akeats@biologicaldiversity.org

Attorney for Plaintiffs


Dustin J. Maghamfar
US Dept of Justice - Environmental &
Natural Resources
P.O. Box 7611
Washington, DC 20044
202-514-1806
Fax: 202-514-8865
Email: dustin.maghamfar@usdoj.gov

Attorney for Defendant, United States
Forest Service

Kevin M. Cassidy
Pacific Environmental Advocacy Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
781-659-1696
Email: cassidy@lclark.edu

Attorney for Plaintiffs


James Frederick Odenkirk
Office of the Attorney General
1275 W Washington
Phoenix, AZ 85007-2997
602-542-7787
Fax: 602-542-7798
Email: james.odenkirk@azag.gov

Attorney for Defendant Intervenor, State
of Arizona




/s/C.D. Michel
C.D. Michel

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**