Kevin M. Cassidy (*pro hac vice*)
Oregon Bar No. 025296
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
(781) 659-1696
cassidy@lclark.edu

Allison LaPlante (*pro hac vice*)
Oregon Bar No. 023614
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97211
(503) 768-6894
laplante@lclark.edu

Adam Keats (*pro hac vice*)
California Bar No. 191157
CENTER FOR BIOLOGICAL DIVERSITY
351 California St., Suite 600
San Francisco, CA 94104
(415) 436-9682 x304
akeats@biologicaldiversity.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; and GRAND CANYON WILDLANDS COUNCIL, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES FOREST SERVICE, <br><br> Defendant. | Case No: 3:12-cv-08176-SMM <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FOREST SERVICE'S MOTION TO DISMISS** |

COME NOW Plaintiffs Center for Biological Diversity, Sierra Club and Grand

Canyon Wildlands Council (collectively "Plaintiffs"), and file this Response in

1

Opposition to the United States Forest Service's ("Forest Service") Motion to Dismiss (Doc. 46).

## INTRODUCTION

As the landowner and manager of the Kaibab National Forest (KNF), the Forest Service has control over and is actively involved in activities that occur there, including waste disposal.  As detailed in the Complaint, that control and involvement form the basis of Plaintiffs' claim for liability under Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B).  The Forest Service's attempt to disavow, without ever actually denying, its Congressionally-delegated authority in an attempt to avoid liability is unavailing and this Court should reject Defendant's 12(b)(6) challenge.

Supreme Court and Ninth Circuit precedent have resoundingly held that a party's allegations need only put a defendant on notice of its claims to enable the defendant to defend itself effectively.  There is no mystery lurking behind Plaintiffs' Complaint: the Forest Service is liable under section 7002(a)(1)(B) of RCRA for contributing, through its management of the KNF, to the disposal of solid waste, in the form of spent lead ammunition, that may present an imminent and substantial endangerment.  *See, e.g.*, Compl. ¶¶ 45, 46.  The Complaint also alleges sufficient facts such that this Court may conclude the Defendant is liable for the alleged endangerment.

With regard to standing, Plaintiffs' members allege particularized injuries, causally linked to the Forest Service's management practices in the KNF, which would be redressed by a favorable court decision.  The Complaint and attached declarations

2

establish that Plaintiffs' members suffer injuries to their aesthetic and recreational

enjoyment of the KNF because of the poisoning of wildlife from spent lead ammunition.

These injuries are "fairly traceable" to the Forest Service because, as the landowner and

sole guardian of lands held in the public trust, it has control over activities occurring on

National Forest System (NFS) lands.  The power to require the use of non-lead

ammunition, or otherwise abate the endangerment caused by spent lead ammunition in

the environment, is in full accord with established precedent recognizing Forest Service

authority over National Forests.  Finally, it is likely that the injury complained of—

endangerment to wildlife on the KNF—will be redressed by a court decision ordering

the Forest Service, as the responsible landowner, to address the cause of the

endangerment.

## ARGUMENT

### I.    Plaintiffs Have Standing

To satisfy the requirements of Article III, a plaintiff must demonstrate: (1) an

injury in fact, (2) that is causally connected to the conduct complained of, and (3) may

be redressed by a favorable court decision.  *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560–61 (1992) (citations omitted).  Defendant argues that Plaintiffs' Complaint

"fails to satisfy . . . any of the three elements."  Motion to Dismiss (MTD) at 8.  In

reaching its conclusion, Defendant ignores or mischaracterizes the Complaint's

allegations, and misapplies the law on standing.

As an initial matter, general factual allegations of injury suffice at the motion to

dismiss stage.  *See Oregon v. Legal Serv. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009)

(quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).  This is in accord with the Supreme Court's holding that a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Warth v. Seldin,* 422 U.S. 490, 501 (1975).  Moreover, courts are not confined to the initial complaint in evaluating standing for purposes of a motion to dismiss.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Plaintiffs have alleged sufficient facts in the Complaint to survive a standing challenge at this early stage.  Should the Court wish to see further particularized evidence, however, Plaintiffs provide the sworn declarations of five organizational members[1] and incorporate the statements therein by reference.[2]  Plaintiffs' allegations and factual evidence are more than adequate to defeat Defendant's Motion to Dismiss for want of standing.

---

[1] *See* Declaration of Robin Silver ("Silver Dec.") (attached as Exhibit 1); Declaration of Taylor McKinnon ("McKinnon Dec.") (attached as Exhibit 2); Declaration of Tom Martin ("Martin Dec.") (attached as Exhibit 3); Declaration of Thomas Hulen ("Hulen Dec.") (attached as Exhibit 4); Declaration of Kim Crumbo ("Crumbo Dec.") (attached as Exhibit 5).  In providing these declarations in response to a motion to dismiss, Plaintiffs do not waive their right to submit, as necessary, additional evidence of standing at the summary judgment stage.

[2] An organization has standing if it can show that at least one member would have standing individually, the interests sought to be protected are germane to the purposes of the organization, and the case does not require the participation of individual members. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977).  As discussed below, each Plaintiff organization has members with standing to sue on their own.  The Plaintiff organizations can sue on behalf of these members because their purposes are germane to the interests sought to be protected in this lawsuit. *See* Declaration of Peter Galvin (attached as Exhibit 6); Declaration of Aaron Isherwood (attached as Exhibit 7); Crumbo Dec. ¶¶ 4–9.  Finally, this suit, which seeks only declaratory and injunctive relief, may be successfully accomplished without the participation of Plaintiffs' individual members as parties.  *See Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.,* 78 F.3d 1360, 1367 (9th Cir. 1996).

4

### A.      Plaintiffs' Allegations of Injury in Fact Are Sufficient

Plaintiffs have alleged sufficient injury in the Complaint to overcome a motion to dismiss.  *See* Compl. ¶¶ 11, 12, 14, 15.  The law recognizes the Plaintiffs' members' desire to observe animals as "undeniably a cognizable interest for purposes of standing."  *Defenders*, 504 U.S. at 562–563.  Additionally, "reasonable concern" of harm to the Plaintiffs' interests is a sufficient injury.  *Covington v. Jefferson Cnty.*, 358 F.3d 626, 639 (9th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)).

Defendant first argues that Plaintiffs have not established the injury element of standing because Plaintiffs' allegations of use are only at a "regional level" and that Plaintiffs offer "no concrete plans to return to and recreate on the [KNF] itself."  MTD at 9.  This is not so.

First, the Complaint alleges injury to the Plaintiffs' interests in the KNF, as well as the region generally.  Compl. ¶ 11.  Specifically, the Complaint alleges:

> Plaintiffs, their members and their families have hiked, backpacked, camped, taken river trips, bird-watched, and recreated in areas of northern Arizona known to be important habitat for a variety of wildlife known to be adversely affected by spent lead ammunition in the environment, including in the Kaibab National Forest and Grand Canyon National Park.

*Id*.  The Complaint also alleges ongoing use of these areas, including the KNF (*see id*.), and explicitly describes the recreational and aesthetic interests at stake for the Plaintiffs' members: "the opportunity to view, photograph, study, and experience wildlife in their natural habitat."  *Id*. ¶ 12.  The Ninth Circuit recognizes this type of "[r]epeated recreational use itself, accompanied by a credible allegation of desired future use, can

5

be sufficient, even if relatively infrequent, to demonstrate that environmental degradation of the area is injurious to that person." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

Second, Plaintiffs' declarations flesh out the details of their members' past use of and intent to visit the KNF in the future, demonstrating a clear connection to the KNF. *See, e.g.*, Crumbo Dec. ¶ 12 (stating plans to return to KNF this year and in the future); McKinnon Dec. ¶ 5 (trip planned to KNF in February or March 2013); Hulen Dec. ¶¶ 5, 8 (describing regular visits to KNF and plans to return this year).

Further, the harm resulting from lead contamination in the KNF extends beyond the boundaries of the KNF. As Defendant acknowledges, standing requires establishing injury to the plaintiff, not the environment. MTD at 9. Here, the injury alleged is harm to the aesthetic and recreational interests of the Plaintiffs who derive benefits from condors and other wildlife exposed to lead within the KNF. Accordingly, those Plaintiff members that visit, recreate, hunt, and otherwise enjoy those areas *adjacent to the KNF*, where condors and other wildlife also range, have suffered injuries. As alleged in the Complaint, Plaintiff members are concerned that "lead contamination on Forest Service lands in Arizona presents serious threats to wildlife, both within [the KNF] as well as on adjacent public lands, such as Grand Canyon National Park." Compl. ¶¶ 11, 16; *see also* Martin Dec. ¶ 8–14 (describing observations of wildlife in areas adjacent to KNF, including Grand Canyon National Park and Vermillion Cliffs, where wildlife from the KNF is also known to range); Silver Dec. ¶ 12 (same); Hulen Dec. ¶ 8 (describing observation of condors in Grand Canyon National Park).

Courts have recognized that the area of a plaintiff's injury may extend beyond the location of the injury to the animal Plaintiff enjoys observing.  The D.C. District Court put it best in the context of birds: "Because [ ] birds fly from island to island, if birds are killed on [one island], the number of birds that [the Plaintiff] will be able to view at any given time on the nearby islands will be diminished.  This is sufficient injury to support standing."  *Ctr. for Biological Diversity v. Pirie*, 191 F. Supp. 2d 161, 172–73 (D.D.C. 2002), *vacated on other grounds sub nom.*, *Ctr. for Biological Diversity v. England*, Nos. 02-5163, 02-5180, 2003 WL 179848 (D.C. Cir. Jan. 23, 2003); *see also Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230, n.4 (1986) (holding an injury was sufficient when the "whale watching and studying of their members will be adversely affected by continued whale harvesting" by Japan); *Laidlaw*, 528 U.S. at 181–82 (recognizing the broad "affected area" in which plaintiffs may establish injury).  Defendant does not dispute that condors, and other wildlife, do not limit their travel to the borders of the KNF.  *See* Compl. ¶ 36 (describing the population of condors in Arizona and Utah as the "Southwest population").  Plaintiffs' Complaint and declarations establish their members' clear past, present and future connection to areas affected by wildlife's exposure to lead in the KNF, including connections to the KNF itself.

Finally, Defendant argues that Plaintiffs' members' concerns about lead contamination are not a sufficiently concrete and particularized injury.  MTD at 9. Tellingly, Defendant cites no case law in support of its attack on Plaintiffs' allegations of concern.  And indeed, the Ninth Circuit has unequivocally found that reasonable

concern is sufficient in this very context: "the relevant inquiry here is not whether there

has been a breach of RCRA by [Defendants], but whether Appellees' actions have

caused 'reasonable concern' of injury to the [Plaintiffs]." *Covington*, 358 F.3d at 639

(quoting *Laidlaw*, 528 U.S. at 183).  Plaintiffs' concerns are reasonably based on "many

scientific studies and reports documenting the threat to human health and wildlife posed

by spent lead ammunition in the environment, as well as documenting the actual harm

to condors and other wildlife attributed to lead poisoning from spent lead ammunition."

Compl. ¶ 15; *see also id*. ¶ 14 (concern about lead contamination in KNF and toxic

pollutants entering the environment).[3]  The Forest Service does not seriously dispute,

nor can it, the body of scientific evidence linking spent lead ammunition to poisoning in

condors, among other wildlife.  Therefore, Plaintiffs' members have established a

concrete and particularized injury to their cognizable interests in observing,

photographing, experiencing, and enjoying wildlife in their natural habitat.

**B.    Plaintiffs Have Sufficiently Alleged Causation and Redressability**

Plaintiffs' injury must be "fairly traceable" to the challenged activity, and not

"th[e] result [of] the independent action of some third party not before the court."

*Defenders*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*,

426 U.S. 26, 41–42 (1976)).  Here, Plaintiffs' injuries—decreased recreational and

aesthetic enjoyment of the KNF and surrounding areas due to endangerment of wildlife

---

[3] *See also, e.g.*, Martin Dec. ¶ 10 (personally observing a condor being treated for
lead poisoning); McKinnon Dec. ¶ 10 (describing concern due to awareness of impacts
of lead poisoning on condors); Silver Dec. ¶ 15 (same); Crumbo Dec. ¶¶ 18-19
(describing deep sense of responsibility relating to suffering of wildlife exposed to
lead); Hulen Dec. ¶¶ 7, 11 (describing scientific evidence of lead's harm to wildlife and
concern of losing condor species to preventable lead poisoning).

on the KNF—are directly traceable to Defendant's contribution to that endangerment through its management of the KNF and can be redressed by the relief sought in the Complaint.

Plaintiffs must establish by a preponderance of the evidence that its theory of causation is "plausib[le]." *Natural Res. Def. Council v. Sw. Marine, Inc*., 236 F.3d 985, 995 (9th Cir. 2000). For example, in *Nat'l Audubon Soc'y v. Davis*, the Ninth Circuit held causation was established to challenge a regulation that prohibited certain types of game traps because "[r]emoval of the traps lead to a larger population of predators, which in turn decreases the number of birds and other protected wildlife." 307 F.3d 835, 849 (9th Cir. 2002). The Ninth Circuit explained that a "chain of causation [may have] more than one link, but [may not be] hypothetical or tenuous." *Id*.

Defendant argues, without citing to authority, that Plaintiffs' chain of causation does not meet standing requirements because the Forest Service defers, as a matter or "longstanding federal land management policy," regulation of hunting on its National Forest lands to the states. MTD at 10. However, the choice generally to defer to the State neither relieves Defendant of its potential liability under RCRA as a landowner, nor severs the causal link between endangerment on Forest Service land and Plaintiffs' injury. Compl. ¶¶ 16, 45; *infra* pp 12–17. The Forest Service attempts to create a chain where none exists. With respect to hunters who use lead ammunition, they must comply with Forest Service land management decisions in order to use the KNF. And as explained in detail below, the Forest Service control and authority over waste disposal activities on National Forest land trumps the state of Arizona's regulations

allowing the use of lead ammunition.  At bottom, the causal chain analysis centers not

on the number of persons involved, but rather, whether their "independent decisions"

sever the causal connection to Plaintiffs' injury.  *See Maya*, 658 F.3d at 1070 (finding a

causal connection based on the indirect effect of the defendants' actions on third

parties).  Here, there are no "independent decisions" being made on the KNF; Plaintiffs'

injuries are directly traceable to Forest Service decisions to manage the KNF in such a

way as to allow spent lead ammunition to be disposed there.

Plaintiffs also meet the test for redressability.  It must be "likely" that the injury

complained of will be redressed by a favorable court decision.  *Cent. Delta Water*

*Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).  The Complaint's request

for this Court to enjoin the Forest Service from contributing to endangerment within the

KNF sufficiently establishes redressability.  Compl. ¶ 47; *see also Interfaith Comm.*

*Org. v. Honeywell Intern., Inc.*, 399 F.3d 248, 257 (3d Cir. 2005) (finding in RCRA

7002(a)(1)(B) case, injunctive relief "will materially reduce [Plaintiffs'] reasonable

concerns about . . . endangerments"); *see also* 42 U.S.C. 6972(a)(2) (describing the

district court's discretion to order injunctive relief against any person, including the

United States, in RCRA endangerment cases).  In *Salmon Spawning & Recovery*

*Alliance v. Gutierrez*, the Ninth Circuit held because the "remedy rests in the hands of

federal officials," it was redressable.  545 F.3d 1220, 1229 (9th Cir. 2008) (finding "a

court order requiring the agencies to reinitiate consultation [under the ESA] would

remedy the harm asserted").  That is the case here as well.

Any uncertainty regarding the precise method by which Defendant or this Court

will ultimately seek to address the alleged endangerment does not eliminate redressability under Article III standing.  The Ninth Circuit does not require a precise showing where the substance of potential regulations that might be ordered by the court remains unknown.  *Natural Res. Def. Council v. Envtl. Prot. Agency,* 542 F.3d 1235, 1245–46 (9th Cir. 2008) (plaintiffs seeking order requiring EPA to promulgate regulations to address storm water discharge).  To do so "would mean that *no* plaintiff would have standing to bring such a suit, as one cannot demonstrate the efficacy of regulations that have yet to be issued."  *Id.* (citations omitted).  Defendant's contention that a potential process of promulgating regulations[4] affects redressability for Article III purposes is unfounded in Ninth Circuit law.

## II.     Plaintiffs Have Adequately Alleged a Claim for Relief Under RCRA

This Court should reject Defendant's 12(b)(6) motion for three reasons.  First, the pleading requirements under Rule 8 simply require a short and plain statement that itself creates a plausible claim for relief, which Plaintiffs' Complaint supplies here.  Second, despite the incomplete picture painted by Defendant's brief, the Forest Service has considerable authority to regulate for the protection of wildlife on public lands.  Third, Plaintiffs have sufficiently alleged that the Forest Service has contributed and is contributing to the disposal of solid waste on the KNF that may present an imminent and substantial endangerment to health or the environment.

---

[4] The one case Defendant cites, *American Public Transit Ass'n v. Lewis*, 655 F.2d 1272 (D.C. Cir. 1981), is inapposite.  Plaintiffs do not dispute the general proposition that federal agencies are given opportunities to exercise discretion.  But, this case simply has nothing to do with standing or the Court's authority to craft a remedy to abate an imminent and substantial endangerment under RCRA.

**A.      Plaintiffs' Complaint Satisfies Rule 8's Lenient Standards**

The text of Rule 8(a)(2) makes clear that a "short and plain" statement can itself establish a plausible claim for relief.  *See* Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) dismissal, a complaint need not contain "detailed factual allegations." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048–49 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint need only plead "'enough facts to state a claim to relief that is plausible on its face.'"  *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though recent Supreme Court decisions have moved courts away from pure notice pleading, Defendant attempts to raise the Rule 8 pleading requirements well beyond what the Supreme Court contemplated, as reinforced more recently by the Ninth Circuit.

First, Plaintiffs allege a valid legal claim in their Complaint.  Rule 8 does not require a plaintiff to lay out in the complaint every nuance of the legal theories that it will pursue in the case, but instead only requires a "cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–1122 (9th Cir. 2008).  The Ninth Circuit has made clear that this is "not an onerous burden." *Id.* at 1122 (quotation omitted).  A complaint need only contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Here Plaintiffs gave the Forest Service ample notice of the legal theory upon which the Complaint rests.  Compl. ¶3.

Second, Plaintiffs' factual allegations are sufficient.  A complaint states

sufficient facts "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (citations omitted).  The bar to allege a plausible claim "is not akin to a 'probability requirement,'" but merely requires the plaintiff to establish "more than a sheer possibility that the defendant has acted unlawfully." *Id*.  What constitutes a "plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).  Defendant emphasizes that "in the entirety of the 'Facts' section of [Plaintiffs' Complaint], Plaintiffs make only two assertions regarding the Service: 1) that the agency manages the [KNF], and 2) that the agency does not prohibit or restrict the use of lead ammunition[.]"  MTD at 14.  But, Plaintiffs are not required to plead any additional facts, as these alone support *more than a plausible* claim under RCRA's imminent and substantial endangerment provision.  *See infra, Section III.C.*

**B.     The Forest Service Has Control Over Waste Disposal on the KNF**

The Forest Service improperly attempts to abrogate its broad authority granted by Congress over public lands.  First, the relevant statutes and implementing regulations, as well as decades of case law, reinforce the preeminence of the Forest Service in the management of public lands.  Second, contrary to Defendant's argument, the Federal Land Policy and Management Act (FLPMA) has no effect on the Forest Service's obligation to comply with provisions of applicable law, such as RCRA.  Finally, as the landowner "at the time of the [waste] disposal," the Forest Service has

the requisite "measure of control" over that disposal on the KNF to support contributor liability under RCRA.  *See Hinds*, 654 F.3d at 852.

### 1.    Defendant Paints an Incomplete Picture of its Broad Authority

Defendant's brief ignores the broad basis for the Forest Service's authority to manage the KNF and focuses only on the few exemplary regulations Plaintiffs cited in the Complaint.  MTD at 14.  A more thorough analysis of the legal basis for the Forest Service's authority reveals a significant "measure of control," and in fact, complete control over activities in the KNF, that easily satisfies the test established in *Hinds* for contributor liability under RCRA.

The Supreme Court in *Kleppe v. New Mexico* established that Congress has "complete power" over public lands, including "the power to regulate and protect the wildlife living there."  426 U.S. 529, 540–41 (1976).  Accordingly, Congress has enacted numerous statutes conferring the Forest Service with authority over public lands and resources.  Compl. ¶ 22.  For example, pursuant to the Organic Administration Act of 1897 (16 U.S.C. §§ 473-82, 551), the Forest Service may regulate the use of public lands to improve and protect those areas.  *United States v. Weiss*, 642 F.2d 296, 298 (9th Cir. 1981) ("The authority of the Secretary [of Agriculture] to regulate activity on national forest land pursuant to [16 U.S.C. § 551] has been upheld in a variety of . . . instances.").  The Forest Service Manual[5] explicitly recognizes the basic authority

---

[5] *See* United States Forest Service, Forest Service Manual § 1013.01a (May 6, 1992), available at http://www.fs.fed.us/im/directives/fsm/1000/1013-1016_ zero_ code.txt ("The basic authority of the Secretary to issue regulations regarding occupancy and use of the National Forest System is the Organic Administration Act") (citing 16 U.S.C. § 551) (last accessed Feb. 4, 2013).

granted by the Organic Act.[6]  The Multiple-Use Sustained Yield Act (MUSYA) likewise permits the Forest Service to balance different uses on public lands, including outdoor recreation and wildlife purposes.  *See, e.g.*, 16 U.S.C. § 528 ("It is the policy of Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes.").  Courts have construed the Forest Service's broad authority to permit it to regulate "NFS lands for multiple uses . . . such as 'outdoor recreation,' 'watershed,' and 'wildlife and fish purposes.'"  *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1235 (10th Cir. 2011).

The Forest Service's regulations at 36 C.F.R. § 261.50–.58 establish that the Forest Service does and can prohibit hunting on NFS land, although Plaintiffs do not seek such a prohibition here.  Compl. ¶ 23.  For example, 36 C.F.R. § 261.58(v) specifically permits the Forest Service to prohibit by order "[h]unting or fishing."  Defendant attempts to dodge liability by citing potentially applicable processes the agency may need to follow.  Those provisions, however, have no bearing on the Forest Service's authority.  Moreover, the fact that the agency has to comply with administrative procedural requirements does not discharge its vested statutory authority.

---

[6] This Court may take judicial notice of agency manuals, such as the Forest Service Manual, where it is not the subject of reasonable dispute.  Fed. R. Evid. 201(b) (establishing that judicial notice is appropriate for facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.,* 379 F. Supp. 2d 1071, 1090 (N.D. Cal. 2005), *rev'd on other grounds*, 681 F.3d 1006 (9th Cir. 2012) (judicial notice in APA case of the Forest Service Manual); *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824 (9th Cir. 2011) (taking "judicial notice of certain extrinsic materials," including agency manuals, basis statements, and former federal regulations).

Defendant's exclusive focus on the few exemplary regulations cited in Plaintiffs' Complaint does not undermine Plaintiffs' legal theory: because the Forest Service manages and controls the KNF, it manages and controls the disposal of solid waste, including spent lead ammunition, on the land.

Defendant also raises the procedural requirements of NEPA. MTD at 15. While the Forest Service must conduct a NEPA analysis for a major federal action substantially affecting the quality of the human environment, the Forest Service Handbook[7] and applicable regulations governing NEPA analysis provide that "[o]rders issued pursuant to 36 CFR part 261—Prohibitions to provide short-term resource protection" are *categorical exclusions* and are not subject to NEPA. 36 C.F.R. § 220.6(d)(1). One example of such an order is "[c]losing a road to protect bighorn sheep during lambing season." 36 C.F.R. § 220.6(d)(1)(i). A short-term ban on lead ammunition during the hunting seasons to protect wildlife, for example, is certainly within the bounds of these regulations. Moreover, even if the Forest Service needed to conduct a NEPA analysis, Defendant fails to explain why this negates its authority to manage the lands in such a way to prevent an endangerment.

Further, while an order issued pursuant to 36 C.F.R. § 261.50–.58 must be "consistent with the land management plans," contrary to Defendant's assertion (MTD at 15) there is no reference, let alone an affirmative obligation, to consult with the State

---

[7] Forest Service Handbook 1909.15, National Environmental Policy Act Handbook Chapter 30 – Categorical Exclusion From Documentation, *available at* http://www.fs.fed.us/emc/nepa/nepa_procedures/index.htm (last accessed Feb. 4, 2013).

of Arizona.  16 U.S.C. § 1604(i).  As explained by the Draft Kaibab Forest Plan,[8] the

Forest Service is the "responsible official" that must make a consistency determination.[9]

Defendant also notes the Administrative Procedure Act (APA) is applicable to

some Forest Service actions.  MTD at 14–15.  Plaintiffs agree; the APA generally

applies to any final agency action.  *See Sackett v. Envtl. Prot. Agency*, 132 S. Ct. 1367,

1371–72 (2012).  But again, like compliance with NEPA, compliance with APA

procedural requirements has no bearing on the Forest Service's land management

practices in the KNF that allow the disposal of solid waste and undermine the protection

of wildlife.  *See* 36 C.F.R. § 261.70(a)(4).

Indeed, courts have long confirmed the Forest Service's broad authority over

forest lands.  As early as 1928, the Supreme Court not only affirmed the Forest

Service's authority to manage NFS lands, but squarely permitted the Forest Service to

mitigate the serious injury caused by the dramatic upsurge in the deer population on the

KNF, the very same federal lands at issue in this case.  *United States v. Hunt*, 278 U.S.

96, 99–100 (1928).  The State of Arizona arrested federal officials exercising their

authority to protect public lands under the theory that hunting was solely under state

domain.  *Id*. at 100.  The Court disagreed, holding that the "power of the United States

---

[8] United States Forest Service, Kaibab National Forest Draft Forest Plan, at 4, *available at* http://prdp2fs.ess.usda.gov/detail/kaibab/landmanagement /planning/?cid=STELPRDB5106605 (last visited Jan. 27, 2013).

[9] Indeed, the Kaibab National Forest Draft Forest Plan prioritizes the creation and maintenance of "natural communities and habitats," with a specific focus on reestablishing "naturally occurring species which have been affected by anthropogenic activities," such as "the California condor."  *Id*. at 45.  Accordingly, the Forest Service cannot dispute that action taken to protect wildlife from needless poisoning due to exposure to spent lead ammunition would be consistent with the Plan.

to thus protect its lands and property does not admit of doubt . . . the game laws or any other statute of the state." *Id.*

*Hunt* represented the cornerstone right recognized by courts upholding the federal government's authority to protect lands in the public trust.[10]   Since *Hunt*, courts have continued to uphold the Forest Service's authority to regulate many activities on public lands.  *See, e.g., California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 582 (1987) (recognizing the Forest Service's authority to regulate surface mining on NFS lands).  Most recently, the Ninth Circuit considered the scope of the Forest Service's authority under the Organic Administration Act to restrict motor vehicle use related to mining activities.  *Pub. Lands for the People, Inc. v. U.S. Dept. of Agric.*, 697 F.3d 1192, 1197 (9th Cir. 2012).  The court reasoned, "the Forest Service's extensive statutory authority dooms this challenge."  *Id*.  Thus, notwithstanding the narrow picture painted by Defendant's brief in this case, the Forest Service has the power to control the use of lead ammunition on its land, and hence the endangerment Plaintiffs seek to abate.

**2.    FLPMA Does Not Diminish the Forest Service's Authority to Protect Public Lands**

Defendant attempts to equate Plaintiffs' request for relief, Compl. ¶ 47, with a request for a complete ban on hunting in conflict with FLPMA.  MTD at 11.  First, Plaintiffs do not seek a ban on hunting.  Second, the relief actually sought by Plaintiffs in this case, the proper management of spent lead ammunition on public lands, is contemplated by FLPMA and supported by relevant case law.

---

[10] *See* James C. Foster, *The Deer of Kaibab Federal-State Conflict in Arizona*, 12 J. of the Southwest 3, 255–68 (1970) (explaining that *Hunt* "established the first precedents for federal control over wildlife on its own lands").

FLPMA places an affirmative duty on the Secretary of Interior to protect the public lands. 43 U.S.C. § 1732(b) ("the Secretary shall . . . take any action necessary to prevent unnecessary or undue degradation of the lands"). Defendant cites section 302(b) of FLPMA for the proposition that the Forest Service cannot permit hunting or encroach upon state management of wildlife. *Id.*; MTD at 16. Yet there are exceptions to the state's general authority over "management of fish and resident wildlife." *Id.* ("[T]he Secretary concerned may designate areas of public land and of lands in the [NFS] where, and establish periods when, no hunting or fishing will be permitted for reasons of public safety, administration, or *compliance with provisions of applicable law.*") (emphasis added). Thus, FLPMA authorizes the regulation of hunting on NFS lands to ensure *compliance* with RCRA.

Courts have upheld the Forest Service's authority to regulate hunting under FLPMA. For example, in *Meister v. U.S. Department of Agriculture*, the Sixth Circuit held the Forest Service abused its discretion and violated NEPA by failing to consider a proposed ban on gun hunting and snowmobiling in specific portions of national forests. 623 F.3d 363, 379 (6th Cir. 2010). The Forest Service argued, as Defendant attempts to here, that "Congressional policy favors leaving the entire Forest open to hunting." *Id.* at 378. Looking to section 302(b) of FLPMA, the court concluded that the Forest Service has the authority to prohibit hunting. *Id.* at 378. The court also looked to the Forest Service's own guidelines, which require compliance with state hunting and fishing laws to the extent those laws do not conflict with (1) Federal law, (2) the "land and resource management responsibilities of the Forest Service[,] or . . . [3] are inconsistent with

direction in forest plans."[11]  *Id.* at 379 (quotation omitted).  The court grounded its reasoning in the fact that there was "no lawful policy that *ties the Service's hands in this regard.*"  *Id.* (emphasis added).  The authority affirmed in *Meister* is closely analogous to the authority the Forest Service attempts to disavow in this case—the ability to regulate hunting activities where they affect the environment.

This Court recently distinguished the Sixth Circuit's reasoning in *Meister* as inapplicable to the Bureau of Land Management's (BLM) authority to regulate hunting on public lands, but in doing so, it *confirmed* the Forest Service's authority to so regulate.  *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 09-CV-8011-PCT-PGR, 2011 WL 4551175, at *1 (D. Ariz. 2011).  The Court distinguished *Meister* "because BLM is not subject to the same regulations as the Forest Service, which *permit federal regulation of hunting in certain circumstances.*"  *Id.* at *11 (emphasis added).  Defendant's interpretation of FLPMA is thus in conflict with precedent from this Court.

## C.  Plaintiffs Have Sufficiently Alleged the Forest Service's Liability Under Section 7002(a)(1)(B) of RCRA

Plaintiffs have adequately alleged that the Forest Service has contributed and is contributing to the disposal of solid waste on the KNF that may present an imminent and substantial endangerment.  First, RCRA plainly imposes potential liability on "any person, including the United States."  42 U.S.C. § 6972(a)(1)(B); *see also* MTD at 2.  Second, Defendant has a measure of control over the waste at the time of its disposal in the KNF; in fact, as described above, Defendant has complete control.  Third,

---

[11] As discussed above, any relief ordered by the Court requiring compliance with RCRA is in accord with the Kaibab National Forest Draft Forest Plan.  *See supra* note 9.

Defendant's argument relating to the State of Arizona's ability to regulate hunting has no bearing on the Forest Service's liability under RCRA.

### 1.    Defendant Is a Contributor Under RCRA

RCRA 7002(a)(1)(B) claims require plaintiffs to show a defendant has contributed or is contributing to the disposal of solid waste that may present an imminent and substantial endangerment.  Plaintiffs' legal theory, as set forth in the Complaint, alleges the Forest Service's liability as a contributor due to its ownership, management, control of and responsibility for the KNF.  *See, e.g.,* Compl. ¶¶ 8, 13, 21–24, 33–34, 45–46.  Defendant's 12(b)(6) motion contests the Forest Service's liability as a contributor, essentially arguing it is not actively involved in waste disposal that it knows is occurring on its own property.  As the plain language of the statute, case law, and federal guidance all make clear, Defendant's argument is wrong.

First, RCRA applies to "any person, including the United States."  42 U.S.C. § 6972(a)(1)(B).  Moreover, the statute explicitly contemplates "owners" as potentially liable parties.  *Id.*  (describing potentially liable parties as "owners *or* operators") (emphasis added).  Although RCRA does not define "contributing," as the government's motion acknowledges, the governing case in the Ninth Circuit on the meaning of "contributing" is *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 851 (9th Cir. 2011).  MTD at 13.  In *Hinds*, the Ninth Circuit established two bases for a party to be liable as a contributor:  either a party "had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds*, at 852.

In *Hinds*, the Ninth Circuit held that an equipment manufacturer was not liable because it was wholly disconnected from the waste disposal activities that created the RCRA endangerment.  *Id*.  But the court recognized that a defendant may be liable where it "'had authority to control . . . any waste disposal.'"  *Hinds*, 654 F.3d at 851–52 (quoting *United States v. Aceto*, 872 F.2d 1373, 1383 (8th Cir. 1989)).  Plaintiffs are not pursuing the legal theory rejected in *Hinds*, for example, by suing every potential gun or ammunition manufacturer for endangerment in the KNF.  Rather, Plaintiffs' theory, as set forth in the Complaint, is based on the well-established principle of landowner liability for solid waste disposal that may present an imminent and substantial endangerment. *Conn. Coastal Fisherman's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1316 (2d Cir. 1993) (holding a gun club liable for allowing lead shot disposal in contravention of RCRA); *see also Potomac Riverkeeper v. Nat'l Capital Skeet and Trap Club*, 388 F. Supp. 2d 582 (D. Md. 2005) (denying motion to dismiss against state official in his official capacity where state owned property where gun club operations were causing endangerment).

The United States itself has already addressed the issue in this case, in the context of Environmental Protection Agency (EPA) Section 7003 enforcement actions. Section 7002(a)(1)(B) of RCRA uses the same standard of liability as Section 7003, and thus is "similarly interpreted."  *Cox v. City of Dallas*, 256 F.3d 281, 294 n.22 (5th Cir. 2001).  In its *Guidance On The Use Of Section 7003* EPA explains that "the phrase 'has

contributed to or is contributing to' be broadly construed."[12]  EPA established that the "plain meaning of 'contributing to' is 'to have a share in any act or effect.'"  EPA explicitly recognized that "contributors" include "a person who *owned the land* on which a facility was located *during the time that solid waste leaked* from the facility." *Id*. at 18 (emphasis added).[13]  In this regard, the Forest Service is a liable landowner like any other party subject to RCRA.[14]

### 2.    Defendant Misapplies the *Hinds* Case

Defendant attempts to avoid the outcome the *Hinds* "measure of control" test produces in this case by, again, disavowing its broad authority over activities occurring on the KNF.  Incredibly, the Forest Service suggests that it has less control over waste disposal on National Forest land than private landowners do over their property.  MTD at 14.  Congress made no such distinction in RCRA, however.  Moreover, Plaintiffs are aware of no cases—and Defendant has cited to none—where a current property owner has escaped liability under RCRA for ongoing waste disposal on its property.

---

[12] Environmental Protection Agency, Guidance On The Use Of Section 7003, at 17, available at http://www.epa.gov/compliance/resources/policies/civil/rcra/rcrasect7003-rpt.mem.pdf (last accessed Feb. 4, 2013).

[13] Accordingly, several courts have found liability based on this interpretation of section 7002(a)(1)(B).  *See Remington Arms*, 989 F.2d at 1317; *Benjamin v. Douglas Ridge Rifle Club*, 673 F. Supp. 2d 1210, 1222 (D. Or. 2009) (reasoning that liability under RCRA can be established by allowing lead shot to accumulate on land).

[14] EPA's interpretation of "contributor" is persuasive authority, given that EPA is the agency empowered with administering the statute.  *See Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997) ("Were we to find RCRA ambiguous, we would defer to the EPA's interpretation so long as it is reasonable and supported by the language of the statute."); *Gonzales v. Oregon*, 546 U.S. 243, 254–61 (2006) (indicating that deference should be given to the agency with the relevant expertise).

RCRA's language should not be manipulated such that persons with control over land, and the authority to prevent waste disposal at the time the disposal is taking place, can dodge liability.  The cases cited in *Hinds* buttress this conclusion.  *See Aceto*, 872 F.2d at 1383 (an "explicit allegation of 'control'" is not required to establish liability under RCRA); *United States v. Valentine*, 885 F. Supp. 1506, 1512 (D. Wyo. 1995) (same); *Marathon Oil Co. v. Texas City Terminal Ky. Co.*, 164 F. Supp. 2d 914, 920–21 (S.D. Tex. 2001) (applying the broad standard from *Cox*, 250 F.3d at 292, that a party is liable if it had "a part or share in producing an effect").  Importantly, these cases, based on "some degree of control," do not make "active involvement" a condition precedent to establish liability.  *See Hinds*, 654 F.3d at 851–52; *accord United States v. Waste Indust.*, 734 F.2d 159, 164 (4th Cir. 1984) (interpreting Section 7003 and concluding "unlike the provisions of [RCRA's] subtitle C, [Section 7003] does not regulate conduct but regulates and mitigates endangerments").

Even if this court focuses on the "active involvement" language from *Hinds*, the Forest Service's management of the KNF goes beyond mere "passive conduct," and falls within the realm of active involvement in waste disposal.[15]  For example, the Forest Service issues special use permits that allow the disposal of spent lead ammunition in the KNF.  36 C.F.R. § 251.50–.65 (requiring a permit for commercial guiding and

---

[15] Defendant emphasizes the Ninth Circuit's citation of *Sycamore Industries Park Associates v. Ericsson, Inc.,* yet that case is distinguishable factually and does not address the current issue before the court.  In *Sycamore*, the Seventh Circuit addressed if there had been a "disposal" creating RCRA liability, 546 F.3d, 847, 853 (7th Cir. 2008),—yet here Defendant does not contest that spent lead ammunition has been disposed of on the KNF.  *Sycamore* did not address liability outside the context of property transactions and culpability for past versus current owners.

outfitting for hunting trips).  That *certain* types of hunting may not require a special use permit does not undermine the fact that the Forest Service does issue some commercial permits, and is therefore actively involved in, hunting on the KNF.  MTD at 16.  The bottom line is that the Forest Service has the authority over the KNF and ongoing waste disposal activities there, and therefore is both actively involved and has the requisite control under *Hinds*.

### 3.   Defendant's Liability Based on its Measure of Control is in Accord with RCRA and Relevant Case Law

While there are very few cases regarding government liability due to land management, several cases discuss government liability in terms of its ability to control waste disposal practices.  *See Foster v. United States*, 922 F. Supp. 642, 660 (D.D.C. 1996) (finding it could not "be said that the United States lacked actual control over the disposal of wastes from the neighboring military reservation or the Canal itself," but that disputed facts meant that the entry of summary judgment was inappropriate); *Smith v. Potter*, 187 F. Supp. 2d 93, 97 (S.D.N.Y. 2001) (analyzing whether a preliminary injunction against the United States Postal Service was warranted due to an anthrax threat, and explaining that "Congress sought to increase enforcement of this legislation by authorizing affected citizens to bring suit against any RCRA offender whose solid waste handling practices may pose 'an imminent and substantial endangerment to health or to the environment.'") (citing 42 U.S.C. § 6972(a)(1)(B)).

The case most directly on point is *Holy Cross Neighborhood Ass'n v. U.S. Army Corps of Engineers*.  No. Civ.A. 03-370, 2003 WL 22533671 (E.D. La. Nov. 3, 2003). There, a citizen suit was filed against the Army Corps of Engineers (Corps) under

RCRA § 7002(a)(1)(B).  *Id.* at *5.  One basis for liability was because of the Corps' "maintaining and having custody over the Industrial Canal."  *Id*.  The Corps sought dismissal of the RCRA claim under Rule 12(b)(6), arguing that the plaintiffs did not show "how the Corps has contributed to the handling, storage, treatment, transportation, or disposal of hazardous waste."  *Id.* at *8.  The court found the complaint adequate and that the plaintiffs satisfied the requirements in Rule 8(a) because the plaintiffs had put the "Corps on notice that the RCRA claim rests on the *management of* and plan to dredge the Industrial Canal."  *Id.* (emphasis added).

    *Holy Cross* establishes that governmental liability exists based on management and control over activities that affect natural resources.  Plaintiffs' allegations are thus based on a recognized and cognizable legal theory, warranting the rejection of Defendant's 12(b)(6) motion.  *See also Potomac Riverkeeper* 388 F. Supp. 2d 582 (state ownership of land where gun club operating sufficient to survive motion to dismiss).  In short, the fact that Plaintiffs have sued over a unique factual scenario not squarely addressed by a previous court does not mean it falls outside the liability standards established in *Hinds*.

    In summary, Defendant attempts to contest the validity of a legal theory that is grounded in the statute, supported by EPA guidance, and consistent with the Ninth Circuit's decision in *Hinds*.  Defendant is surely on "fair notice of what the claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (citations omitted).  Moreover, the State of Arizona's prerogative to regulate hunting practices is inapposite.  The weight of federal statutes granting the Forest Service

authority, the Forest Service's own regulations, and relevant case law interpreting the same demonstrate the Forest Service is the sole authority managing waste disposal activities in the KNF.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

Dated:  February 5, 2013                    */s/ Kevin Cassidy*

Kevin M. Cassidy
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
(781) 659-1696
cassidy@lclark.edu

Allison LaPlante
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97211
(503) 768-6894
laplante@lclark.edu

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, which will send notification of such filing to the following:

**Dustin Maghamfar**, United States Department of Justice, Attorney for Defendant United States Forest Service.

**James Odenkirk**, Attorney for the State of Arizona.

**C.D. Michel**
**Scott M. Franklin**, Attorneys for Proposed Intervener National Rifle
    Association.

**Douglas S. Burdin**
**Anna M. Seidman**, Attorneys for Proposed Intervener Safari Club International.

**James D. Norman**
**Jay L. Shapiro**, Attorneys for Proposed Intervener National Shooting Sports
    Foundation.

**Adam Keats**
**Allison LaPlante**, Attorney for Plaintiffs.

/s/ *Kevin Cassidy*