**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-12-8176-PCT-SMM |
| Plaintiffs, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| United States Forest Service, | |
| Defendant. | |

Before the Court is the Motion to Dismiss filed by Defendant United States Forest Service ("Defendant"). (Doc. 46.) Plaintiffs have responded, Defendant has replied, and the matter is fully briefed. (Doc. 67; Doc. 80.) After considering the parties' briefing and having determined that oral argument is unnecessary,[1] the Court will grant Defendant's motion.

## BACKGROUND

The Center for Biological Diversity, the Sierra Club and the Grand Canyon Wildlands Council (collectively, "Plaintiffs") are non-profit organizations dedicated to conservation of native species and ecosystems.[2] (Doc. 1. at ¶ 9.) Defendant is a federal agency within the United States Department of Agriculture. (Id. at ¶ 8.) Defendant is charged with the management of the Kaibab National Forest ("KNF"), located in Northen Arizona. (Id.)

---

[1] The parties' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court takes all well-pleaded factual allegations in Plaintiffs' Complaint (Doc. 1.) as true for the purposes of this Motion to Dismiss. Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998).

1  Plaintiffs' members recreate in the KNF and Grand Canyon National Park. (Id. at ¶ 11.)
2  KNF is also a popular hunting area for large game. (Id. at ¶ 33.)

3        Lead, including the lead used in ammunition, is a toxic substance with potentially
4  deadly consequences when ingested. (Id. at ¶ 25.) Plaintiffs contend that Defendant's failure
5  to use its authority to regulate the use and disposal of lead ammunition in the KNF endangers
6  the environment. (Id. at ¶ 13.) Plaintiffs also contend that the ingestion of this discarded lead
7  ammunition by California condors in the KNF has contributed to the decline of this species
8  as well as others that are especially susceptible to lead poisoning. (Id. at ¶ 37.) The
9  California condor is a near-extinct avian species, with only 73 free-flying birds in Northern
10 Arizona and Southern Utah. (Id. at ¶ 36.) Lead poisoning is the leading cause of mortality
11 in these birds. (Id. at ¶ 37.)

12       On September 5, 2012, Plaintiffs brought this citizen suit against Defendant under the
13 Resource Conservation and Recovery Act ("RCRA"). (Doc. 1.) The RCRA provides that any
14 person may commence a civil action:

15       against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment
16       to the Constitution, and including any past or present generator, past or present transporter, or past or present operator or generator of a treatment, storage, or
17       disposal facility, who has contributed to or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or
18       hazardous waste which may present an imminent and substantial endangerment to health or the environment.
19

20 42 U.S.C. § 6972(a)(1)(B). The RCRA further provides that any citizen suit shall be brought
21 in the district court for the district in which the violation or harm occurred. 42 U.S.C. §
22 6972(a). Plaintiffs specifically allege that Defendant, by failing to exercise its authority as
23 manager of the KNF, has contributed to or is contributing to the past or present disposal of
24 solid or hazardous waste, which may endanger the environment. (Doc. 1. at ¶ 45.)

25       Defendant moves to dismiss this suit for lack of Article III standing pursuant to Fed.
26 R. Civ. P. 12(b)(1), or alternatively for failure to state a claim pursuant to Fed. R. Civ. P.
27 12(b)(6). (Doc. 46.)
28

**LEGAL STANDARD**

**I. RCRA**

By declaration of Congress, it is national policy of the United States that the generation of waste is to be reduced or eliminated, and that waste that is generated should be treated, stored, or disposed of so as to minimize future and present threats to human health and the environment. 42 U.S.C.A. § 6902(b). To forward this policy, Congress passed the RCRA, 42 U.S.C. §§ 6901 *et seq*. The RCRA is a comprehensive environmental statute that establishes a "cradle-to-grave" regulatory scheme whereby solid waste is governed from initial treatment through storage and disposal. Meghrig v. KFC W., Inc., 516 U.S. 479, 483 (1996); Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1313 (2d Cir. 1993).

**II. Article III Jurisdiction**

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A party may file a motion asserting that a district court lacks jurisdiction over the subject matter under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). A claim can be challenged under Rule 12(b)(1) both facially and factually. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge occurs when the defendant contests the adequacy of the allegations in the pleading. See id. A factual challenge occurs when a defendant objects to the factual merits of the asserted federal jurisdiction. See id. When reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the plaintiff's complaint is construed liberally, with allegations and reasonable inferences to be drawn in plaintiff's favor. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court may also raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal. United States v. Moreno-Morillo, 334 F.3d 819, 830 (9th Cir. 2003); see also Fed. R. Civ. P. 12(h)(3).

Federal Court jurisdiction is limited to "cases" and "controversies." U.S. CONST., art.

1  III, § 2. To satisfy Article III jurisdiction, at a minimum, the party asserting standing must
2  prove 1) an injury that is concrete and particularized, 2) that the injury is traceable to the act
3  or omission complained of, and 3) that it is likely that the injury will be redressed by a
4  favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An
5  organization has standing if it can demonstrate that one member would have standing
6  individually to sue in their own right, the interests it seeks to protect are germane to the
7  purpose of the organization, and neither the claim asserted nor the relief sought requires
8  participation of the individual members. Hunt v. Wash. State Apple Adver. Comm'n, 432
9  U.S. 333, 342-43 (1977).

## DISCUSSION

### I. Injury

12  The diminished ability to view and experience animals in their natural habitat is a
13  judicially cognizable injury. Defenders of Wildlife, 504 U.S. at 562. A plaintiff can
14  sufficiently establish injury when a defendant's actions cause reasonable concern of injury.
15  Covington v. Jefferson Cnty., 358 F.3d 626, 639 (9th Cir. 2004). "It is within the trial court's
16  power to allow or require the plaintiff to supply, by amendment to the complaint or by
17  affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."
18  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting Warth v. Seldin, 422
19  U.S.490, 501 (1975)). Moreover, at the pleading stage, general allegations of an injury are
20  sufficient. Defenders of Wildlife, 504 U.S. at 561.

21  Plaintiffs have provided at least one sworn declaration from a member of each Plaintiff
22  organization detailing continued recreational use of the KNF area for the purposes of
23  observing and experiencing wildlife. (Doc. 67-1 at ¶¶ 7-9; Doc. 67-2 at ¶¶ 3-4; Doc. 67-3 at
24  ¶ 7; Doc. 67-5 at ¶¶ 10-12.) These members also aver concrete plans to return to the KNF in
25  the future as well as concern regarding the loss of the condor. (Doc. 67-1 at ¶ 9; Doc. 67-2
26  at ¶ 5; Doc. 67-3 at ¶ 7; Doc. 67-5 at ¶ 12.) The Court finds that these affidavits are sufficient
27  to establish the injury-in-fact of each individual and thus each organization for the purposes
28  of Article III standing.

**II. Causation**

The plaintiff's injury-in-fact must be "fairly traceable" to the alleged activity of the defendant. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). An injury is fairly traceable to the conduct complained of when a causal chain exists but is not hypothetical or tenuous. Nat'l Audubon Soc'y v. Davis, 307 F.3d 835, 849 (9th Cir. 2002). However, when that line of causation consists of numerous third parties whose independent decisions have a cumulative impact on the injuries, the line of causation may be deemed to be too weak. Maya, 658 F.3d 1060, 1070. Causation may be found when an actor is charged with oversight but is not solely responsible for correcting the action that contributes to a plaintiff's injury. See Covington, 358 F.3d 626, 639, *impliedly overruled on other grounds by* Summers v. Earth Island Inst., 555 U.S. 488, 129 (2008). The Chief of the Forest Service may issue regulations prohibiting acts for the purpose of protecting threatened, endangered, rare, unique, or vanishing species of plants, animals, birds or fish, or special biological communities. 36 C.F.R. § 261.70(a)(4).

Defendant argues that the regulation of hunting is administered by the state and therefore it is the independent actions of third parties – the State of Arizona and the hunters that use lead ammunition – that are the cause of Plaintiffs' injuries. The Court disagrees. Defendant has authority to regulate activities in the National Forests. This broad authority includes the right to issue regulations that restrict actions that threaten endangered species of animals, such as the California condor. Defendant opts not to exercise this authority and instead allows the use and disposal of lead on the land which it administers. Although Defendant may choose not to ban certain types of ammunition in deference to Arizona's regulation of hunting, it is not thereby automatically relieved of its affirmative duty to stop the disposal of environmental contaminants in the KNF.

Lead is widely known to be toxic to humans and animals. (Doc. 1 at ¶ 45.) The substance is ingested by the California condor and other species when they feed on the remains of either animals shot with lead ammunition and then not retrieved, or the remains of animals that have been field dressed. (Id. at ¶¶ 28-29.) "But for" Defendant's decision to

allow toxic lead ammunition to be disposed of in the KNF, there would be no lead waste that could be consumed, and local animal species would not suffer from lead poisoning and contribute to Plaintiffs' aesthetic injury. Although there are multiple links in this causal chain, none are tenuous. Thus, the Court finds that Plaintiffs have adequately proven the element of causation.

### III. Redressability

It must be likely rather than speculative that the relief sought, if granted, will redress the injury. Defenders of Wildlife, 504 U.S. at 559. The Administrative Procedure Act ("APA") empowers a court only to compel an agency to perform a non-discretionary act. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (citing Attorney General's Manual on the Administrative Procedure Act 108 (1947)). In the event that the court could compel an agency to exercise discretionary authority, it could not dictate the manner of action. See Norton, 542 U.S. at 65. National Forests must cooperate with state game officials in the planning and orderly removal of game in accordance with state laws. 36 C.F.R. § 241.2. In issuing regulations concerning protection of endangered species, *inter alia*, the Forest Service must follow the APA. 36 C.F.R. § 261.70(c). When engaged in rule-making pursuant to the APA, an agency must accept and consider written data, views, and arguments presented by interested persons. 5 U.S.C.A. § 553(c).

Defendant argues that to redress Plaintiffs' alleged injury, it would have to preempt longstanding deference to the state in matters of hunting and wildlife regulation. It contends that what little authority it does have regarding hunting is limited to public safety and adherence to applicable law. Defendant further argues that because it must engage in rule making within the parameters of the APA, a process that would necessarily involve consultation with the Arizona Game and Fish Department in addition to compliance with the National Environmental Policy Act, redressability is speculative at best. The Court agrees. First, Plaintiffs wish the Court to order Defendant to perform a discretionary duty, an agency action which the Court is not empowered to compel. See Norton, 542 U.S. at 64. Second, even if Defendant could be ordered to initiate the rule making process necessary to prevent the

1 disposal of lead within the KNF, the outcome would be uncertain because Defendant would
2 be required to consult with Arizona, accept public comments, balance competing interests,
3 and consider a no action alternative.  It is therefore speculative at best whether a favorable
4 ruling would be likely to redress Plaintiffs injury.

5       The Court also notes that the behavior and feeding habits of the California condor and
6 other avian species make it unlikely that even if Defendant were to ban lead from being
7 discarded within the KNF, the condor would no longer suffer from the lead poisoning that
8 causes Plaintiffs' alleged aesthetic injury.  The California condor is know for long distance
9 travel. (Doc. 22-2 at 14.)  Their longer trips consist of arching loops that reach from eastern
10 Nevada, through southwestern Arizona, to the New Mexico border.  (Id.)  They are also
11 known to fly into Utah in pursuit of carrion.  (Id.)  The condors could easily fly and
12 subsequently feed outside the borders of the KNF and therefore outside of the area managed
13 by Defendant.  Plaintiffs give no indication that any of these other states ban the use of lead
14 ammunition.  Because of the extensive range of the California condor, it is likely that those
15 birds that inhabit KNF will travel to those areas in search of carrion and ingest lead
16 ammunition in the same manner as lead ingested within KNF borders.  Thus, redressability
17 is speculative.

18       Plaintiffs have failed to establish sufficient likelihood of redressability. Consequently,
19 the Court lacks Article III jurisdiction in this case and will grant Defendant's Motion to
20 Dismiss. (Doc. 46.)  Because the Court finds dismissal is appropriate based on jurisdictional
21 grounds, the Court does not reach Defendant's additional argument for dismissal for failure
22 to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

23 **CONCLUSION**

24       Accordingly, for the foregoing reasons,

25       **IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss. (Doc. 46.)

26       **IT IS FURTHER ORDERED dismissing without prejudice** all of Plaintiffs' claims
27 in this suit.

28       **IT IS FURTHER ORDERED denying** as moot State of Arizona's Motion to

1 Intervene for the Limited Purpose of Filing a Motion to Dismiss.  (Doc. 21.)

2 **IT IS FURTHER ORDERED denying** as moot National Rifle Association of
3 America's Motion to Intervene.  (Doc. 28.)

4 **IT IS FURTHER ORDERED denying** as moot National Shooting Sports Foundation
5 Inc.'s Motion to Intervene. (Doc. 54.)

6 **IT IS FURTHER ORDERED directing** the Clerk of the Court to terminate this
7 action.

8 DATED this 1ˢᵗ day of July, 2013.

*/s/ Stephen M. McNamee*
Stephen M. McNamee
Senior United States District Judge