C. D. Michel - Cal. B.N. 144258
(pro hac vice granted)
W. Lee Smith – Cal. B.N. 196115
(pro hac vice application forthcoming)
Scott M. Franklin - Cal. B.N. 240254
(pro hac vice granted)
MICHEL & ASSOCIATES, PC
180 E. Ocean Boulevard, Suite No. 200
Long Beach, CA 90802
Facsimile:     562-216-4445
Emails:        cmichel@michellawyers.com
               lsmith@michellawyers.com
               sfranklin@michellawyers.com
Telephone:     562-216-4444

Douglas S. Burdin, D.C. B.N. 434107
(pro hac vice granted)
Anna M. Seidman, D.C. B.N. 417091
(pro hac vice granted)
Safari Club International
501 2nd Street, NE
Washington, D. C. 20002
Facsimile:     202-543-1205
Emails:        dburdin@safariclub.org
               aseidman@safariclub.org
Telephone:     202-543-8733

Attorneys for Proposed Defendant-Intervenors National Rifle Association of America and Safari Club International

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| Center for Biological Diversity, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> United States Forest Service, <br><br> Defendant, and <br><br> National Rifle Association of America and Safari Club International, <br><br> Proposed Defendant-Intervenors. | CASE NO. 3:12-cv-08176-PCT-SMM <br><br> NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE BY THE NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, DECLARATIONS IN SUPPORT <br><br> ORAL ARGUMENT REQUESTED |

TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

Proposed Defendant-Intervenors National Rifle Association of America ("NRA") and Safari Club International ("SCI") (collectively "NRA and SCI") move for an order granting leave to intervene in this action under 42 U.S.C. § 6972(b)(2)(E), and as of right under Federal Rule of Civil Procedure 24(a); or permissively under Rule 24(b); or alternatively as amici curiae.  NRA and SCI request oral argument pursuant to L.R.Civ. 7.2(f), as this case is one of broad public importance.  Plaintiff Center for Biological Diversity, *et al.* (collectively the "CBD Plaintiffs") intend to oppose NRA and SCI's intervention, while the Defendant United States Forest Service (the "Service") takes no position as to the proposed intervention.

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

**I.   INTRODUCTION**

In this case, CBD Plaintiffs seek to force the Service to prohibit the use of lead ammunition in the Kaibab National Forest ("Kaibab NF").  NRA and SCI have members who have long hunted and plan to hunt in the Kaibab NF using lead ammunition.  The requested relief would harm NRA's, SCI's, and their members' interests.  The existing parties do not represent NRA and SCI's interests.  As explained below, NRA and SCI meet the requirements for intervention under 42 U.S.C. § 6972(b)(2)(E) and intervention as of right under Rule 24(a), as well as the requirements for permissive intervention under Rule 24(b).  In the three years prior to the filing of the complaint in 2012, NRA and SCI have sought and obtained permission to participate in three lawsuits brought by CBD regarding lead-based ammunition ("lead ammunition").[1]

---

[1]   Order Granting [NRA] Mot. Intervene Jan. 30, 2010 at 8-9 & Order Granting [SCI] Motion for Amicus, *Ctr. for Biological Diversity v. Bureau of Land Mgmt. (CBD v.*

2

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

## II. PROCEDURAL HISTORY AND PREVIOUS RELATED CASE

CBD Plaintiffs seek a ban of hunting with lead ammunition in the Kaibab NF, which is managed by the Service. Compl. ¶¶ 3, 47 (Dkt. 1). CBD Plaintiffs rely on the Resource Conservation and Recovery Act ("RCRA") in requesting that the Court issue an order: (1) finding the "Service has contributed and is contributing to the past or present disposal of any solid or hazardous waste which may present an imminent and substantial endangerment," and (2) enjoining the furtherance of the alleged endangerment, *i.e.*, the use of lead ammunition in the Kaibab NF. *Id*. ¶ 47. The alleged endangerment CBD Plaintiffs focus on is the supposed threat to California condors ("condors"). *Id*. ¶ 10.

This lawsuit is CBD's second attempt at using condor protection as the putative basis for obtaining a ban on hunting with lead ammunition in northwestern Arizona. The 2009 action, *CBD v. BLM,* was very similar to this action: both are grounded in an allegation that a federal agency responsible for managing federal land in northwestern Arizona violated environmental laws by failing to take the actions CBD believes are necessary to protect condors. *Id*.; *see* First Am. Compl., *CBD v. BLM* (Dkt. 21).

NRA and SCI based their intervention in the present case in part on the fact that the relief CBD Plaintiffs seek here once again conflicts with federal law intended to protect hunting: 50 C.F.R. § 17.84(j)(2)(i). Granting this relief will significantly limit the types of ammunition hunters, including NRA and SCI members, can use to hunt in

---

*BLM)*, Case No. 3:09-cv-08011-PGR (D. Ariz.) (Dkt. 58 & 73, respectively); Minute Order Granting [NRA and SCI's] Mot. Intervene April 28, 2011, *Ctr. for Biological Diversity v. Jackson (CBD v. Jackson)*, Case No. 1:10-cv-02007-EGS (D.D.C.); Minute Order Granting [NRA and SCI's] Mot. Intervene July 31, 2012, *Trumpeter Swan Society v. Envtl. Protection Agency (TSS v. EPA)*, Case No. 1:12-cv-00929-EGS (D.D.C.). CBD was a co-plaintiff in *TSS v. EPA.*

3

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

this area. Such limitations will adversely impact the experience and success the hunters will have in the Kaibab NF. NRA and SCI have both a current interest in and a decades-long record of opposing unjustified impingements on hunting and ammunition choice both nationally and specifically in Arizona. *See* Decl. of Chris W. Cox ("Cox Decl.") ¶¶ 6-9; Decl. of Rew Goodenow ("Goodenow Decl.") ¶¶ 9-10.[2]

## III. FACTUAL BACKGROUND

### A. General Background Regarding NRA and Its Advocacy Activities

NRA is a tax-exempt corporation under § 501(c)(4) of the Internal Revenue Code, incorporated in New York in 1871, and its principal offices are in Fairfax, Virginia. Cox Decl. ¶ 3. NRA's membership includes approximately five million individuals, with many members in Arizona alone. *Id.* ¶ 5. One of NRA's primary purposes is "to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth, conservation, and wise use of our renewable wildlife resources." *Id.* ¶ 4. NRA has represented the interests of hunters by sponsoring pro-hunting legislation and referenda, as well as challenging unreasonable anti-hunting laws and regulations. *See id.* ¶¶ 6-9.

### B. General Background Regarding SCI and Its Advocacy Activities

SCI is a non-profit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona. Goodenow Decl. ¶ 3. Its membership includes approximately 50,000 individuals from the United States and many countries around the world. *Id.* ¶ 4. It has tens of thousands of members throughout the country who hunt

---

[2] All cited declarations are filed concurrently with this Motion.

innumerable species, and many hunt within the Kaibab NF. *Id*. ¶ 7-8. Its missions are the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool. *Id*. ¶ 5. The conservation mission of SCI is carried out in part through its sister organization, Safari Club International Foundation ("SCIF"). SCIF's missions include funding and directing worldwide programs dedicated to wildlife conservation and outdoor education. *Id*. ¶ 6.

### C. Hunting in the Kaibab NF

Without a doubt, hunting is a popular recreational activity in Arizona, including in the Kaibab NF and surrounding areas.[3] Hunting permits for big game are issued in Arizona to hunters who participate in a drawing.[4] Many of the people who seek these tags, as well as the guides who assist hunters, are members of NRA, SCI, or both. *See* Decl. of Todd Geiler ("Geiler Decl.") ¶¶ 2-3; Decl. of Don Martin ("Martin Decl.") ¶¶ 2-3; Decl. of Jack Leslie Rainey ("Rainey Decl.") ¶¶ 3, 15; Decl. of Michael John Rusing ("Rusing Decl.") ¶¶ 3-4, 14; Decl. of Thomas Lee Britt ("Britt Decl.") ¶¶ 2-3, 15. NRA and SCI members have hunted in the Kaibab NF using lead ammunition and have definite plans to return to the Kaibab NF to hunt various species using lead ammunition. Rainey Decl. ¶¶ 3, 10-11, 15; Rusing Decl. ¶¶ 2-3, 11, 13-14; Britt Decl. ¶¶ 2-3, 8-9, 15.

Lead ammunition is traditionally used for hunting because, as to that particular use, hunters generally consider it to be abundant, economical, and ballistically proven when compared to non-lead ammunition. *See* Geiler Decl. ¶¶ 5-6; Martin Decl. ¶¶ 5, 7;

---

[3] *See generally* Hunt Arizona, 2015, Survey, Harvest and Hunt Data for Big and Small Game, https://www.azgfd.com/PortalImages/files/hunting/HuntAZ/HuntAZbook2015Rev2.pdf (last visited April 6, 2016).
[4] *Id.* at 1 (noting that big-game hunting permits are issued via a drawing in Arizona).

5
**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

Rainey Decl. ¶¶ 12, 14; Rusing Decl. ¶¶ 12; Britt Decl. ¶¶ 10, 13-14. Moreover, it is, at best, difficult to procure non-lead ammunition in Arizona in calibers for hunting small game and turkey, both of which are often hunted in the Kaibab NF. Britt Decl. ¶ 12. A ban on the use of lead ammunition in the Kaibab NF will diminish the hunting experience of NRA and SCI members. *E.g.,* Martin Decl. ¶¶ 5, 7; Rainey Decl. ¶ 16; Rusing Decl. ¶ 15; Britt Decl. ¶¶ 16-17.

## IV. ARGUMENT

### A. NRA and SCI Are Entitled to Intervene as a Matter of Right

NRA and SCI are entitled to intervene as a matter of right because of their members' strong interests in continuing to hunt with lead ammunition in the Kaibab NF. Under RCRA:

> [i]n any action under subsection (a)(1)(B) of this section in a court of the United States, any person may intervene as a matter of right when the applicant claims an interest relating to the subject of the action and he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the Administrator or the State shows that the applicant's interest is adequately represented by existing parties.

42 U.S.C. § 6972(b)(2)(E). Similarly, Rule 24(a) provides that:

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As the standards under RCRA and Rule 24(a) are nearly identical, NRA and SCI will rely on the abundant cases interpreting Rule 24.

For cases brought under Rule 24, the Ninth Circuit has established a four prong test to determine whether intervention as a matter of right is warranted:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (citation omitted). The Ninth Circuit "construe[s] Rule 24(a) liberally in favor of potential intervenors." *Id.* Because NRA and SCI meet the requirements of each prong of the test, intervention should be granted as a matter of right, just as it was in *CBD v. BLM*.

### 1. NRA and SCI's Motion to Intervene Is Timely

NRA and SCI's motion to intervene is timely under the three-factor standard used by courts in this Circuit: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). Timeliness is a threshold question addressed to the sound discretion of the district court. *Yniguez v. Arizona,* 939 F.2d 727, 731 (9th Cir. 1991). "Court must consider all of the circumstances in the particular case when making the determination and timeliness is to be construed broadly in favor of the party seeking intervention." *Silver v. Babbitt*, 166 F.R.D. 418, 424 (D. Ariz. 1994) *aff'd,* 68 F.3d 481 (9th Cir. 1995). In addition, the court should be more lenient when intervention is sought as a matter of right. *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984); *Silver*, 166 F.R.D. at 424.

NRA and SCI initially moved to intervene for the first time shortly after the plaintiffs filed their complaint in September 2012, prior to the time that the Service's initial response to the complaint was due. Dkt. 28 (filed Nov. 21, 2012), Dkt. 46 (motion to dismiss filed Dec. 14, 2012). On July 2, 2013, this Court dismissed the

plaintiffs' complaint and denied as moot NRA and SCI's motion to intervene.  Dkt. 81.

The Ninth Circuit only recently remanded the case back to this Court, and the Court has not set trial dates or discovery deadlines or otherwise established any substantive deadlines.  Therefore, intervention at this time will not prejudice any party. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding intervenor's application was timely as it "was filed at a very early stage, before any hearings or rulings on substantive matters").  NRA and SCI have filed prior to the scheduling conference set for April 18, 2016.  Due to the early intervention attempted here and prompt efforts to move again for intervention, allowing intervention will not prejudice the parties or cause delay.  Thus, as to all three factors, the Motion is timely.

### 2. NRA and SCI Have Significant Protectable Interests in This Action

NRA, SCI, and their members have protectable interests in continuing to hunt in the Kaibab NF using lead ammunition, which interests are at risk in this case.  "The movant must, however, demonstrate a 'significantly protectable interest' in the lawsuit to merit intervention. … To demonstrate this interest, a prospective intervenor must establish that (1) 'the interest [asserted] is protectable under some law,' and (2) there is a 'relationship between the legally protected interest and the claims at issue.'" *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgt.,* 266 F.R.D. 369, 373 (D. Ariz. 2010) (bracket in original) (citation omitted); *accord Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted).

8

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

### a.     NRA and SCI Assert Interests Protected by Law

As to the first factor, the ability to hunt in the Kaibab NF using lead ammunition is protected by Federal and State law, in particular the State of Arizona's game laws. Courts make a practical, threshold inquiry into an applicant's interest, bearing in mind that the test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted).

NRA and SCI members seek to hunt with lead ammunition in the Kaibab NF. *See supra* Section III.C.   Hunting is allowed in the Kaibab NF, as regulated by state law.[5]   State law allows hunting of numerous species and sets limitations, such as seasons, bag limits, and methods of take.   *See e.g.*, Ariz. Admin. Code § R12-4-318 (seasons for lawfully taking game); § R12-4-120 (bag limits for big game); § R12-4-304 (lawful methods for taking wild game).   Arizona law generally allows hunting with lead ammunition.   *See* Ariz. Admin. Code § R12-4-304 (excluding lead ammunition only as to waterfowl hunting).   The interest described above is significant and protected by law.

NRA and SCI's nationwide advocacy for hunters' rights also establishes their "interest" in this litigation.   NRA and SCI each have an organizational mission to preserve the tradition of hunting, and to protect it from unreasonable and unnecessary restrictions.   *See* Cox Decl. ¶¶ 4, 6-9; Goodenow Decl. ¶ 5.   Hunting permits for the Kaibab NF are sought by literally thousands of hunters yearly, many of whom are NRA

---

[5] *See, e.g.*, United States Forest Service, *North Kaibab Ranger District,* http://www.fs.usda.gov/recarea/kaibab/recreation/hunting/recarea/?recid=11697&actid=545 (last visited April 6, 2016) ("Big Game Hunting is regulated by . . . Arizona and allowed on the Kaibab [NF] during open seasons with applicable permits.").

9
NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

and SCI members.[6] Hunting in the Kaibab NF is immensely popular and a legitimate interest that NRA and SCI seek to protect.[7] *See* Geiler Decl. ¶¶ 2-3; Britt Decl. ¶¶ 2-3; 15.

Furthermore, NRA and SCI have a long history of advocacy related to protecting and preserving the rights of hunters to continue to enjoy areas that have traditionally been open to hunting. *See* Cox Decl. ¶¶ 6-9; Goodenow Decl. ¶¶ 5, 9-10. NRA and SCI each have an established record of advocating against restrictions on hunting based on scientifically unsupported claims of alleged environmental harm. *See* Cox Decl. ¶¶ 6-9; Goodenow Decl. ¶ 10. Because the main goal of CBD Plaintiffs' lawsuit is to eliminate the use of lead ammunition in the Kaibab NF, and because NRA and SCI have an interest in preventing such limitation as part of their missions to protect hunters' rights and opportunities, NRA and SCI possess interests sufficient to satisfy Rule 24(a).

    **b. A Relationship Exists Between NRA and SCI's Legally Protected Interests, and CBD Plaintiffs' Claims**

As demonstrated in the above discussion, NRA and SCI also meet the second element of the "significant protectable interest" test – "a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409 (citation omitted). "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *United States v. City of Los Angeles, Cal.*, 288 F.3d

---

[6] *See, e.g.,* Hunt Arizona, 2015, Survey, Harvest and Hunt Data for Big and Small Game, at 2, https://www.azgfd.com/PortalImages/files/hunting/HuntAZ/HuntAZbook2015Rev2.pdf (last visited April 6, 2016) (discussing number of hunters seeking deer tag).

[7] *See generally* Jonathan Silberman, PhD., *Economic Data on Fishing and Hunting for the State of Arizona and for Each Arizona County, available at* http://www.azgfd.gov/pdfs/w_c/FISHING_HUNTING%20Report.pdf (last visited April 11, 2016).

391, 398 (9th Cir. 2002) (citing *Donnelly*, 159 F.3d at 410). This rule is not to be applied rigidly: "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441.

CBD Plaintiffs contend hunting with lead ammunition is resulting in an "imminent and substantial endangerment to health or the environment[,]" and accordingly, that hunting with lead ammunition in the Kaibab NF should be enjoined. *See* Compl. ¶¶ 3-4 (Dkt. 1). If this action is successful, hunting likely will be restricted by a ban or other limits on hunters using lead ammunition in the Kaibab NF. Such a result would "practically impair" the interests in hunting asserted by NRA and SCI's members. A direct relationship exists between NRA and SCI's interests and CBD Plaintiffs' claims.

### 3. The Relief CBD Plaintiffs Seek May Impair NRA and SCI's Interest in Protecting Hunting in the Kaibab NF

As explained above, NRA and SCI's interests are directly related to CBD Plaintiffs' claim. Under the third prong of the Rule 24(a) intervention inquiry, a party must demonstrate the litigation "may as a practical matter impair or impede" the applicant's ability to protect an interest. Fed. R. Civ. P. 24(a)(2); *see California ex rel. Lockyer*, 450 F.3d at 440. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (relying on Advisory Committee Notes). The relief CBD Plaintiffs seek – a lead ammunition ban applicable to hunting in the Kaibab NF – will have a significant and practical impact on NRA and SCI members and their ability to hunt in the manner that

has occurred for generations. Similarly, a settlement whereby the Service agrees to some level of restriction on lead ammunition use also would adversely affect the interests of NRA and SCI members. Such an injunction or settlement would deprive Kaibab NF hunters of the ammunition considered to be abundant, economical, and effective. NRA and SCI meet the requirements of the third prong of the Rule 24(a) intervention analysis.

### 4.   NRA and SCI's Interests Are Not Adequately Represented by the Service

In light of NRA and SCI's specific interests in continuing to hunt with lead ammunition in the Kaibab NF, the existing parties do not adequately represent NRA and SCI's interests. Rule 24(a)'s final prong requires an applicant for intervention as a matter of right to show that its interests are "inadequately represented by the parties to the action." *California ex rel. Lockyer*, 450 F.3d at 440. The Supreme Court has characterized this showing as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The following three factors are considered to determine if the existing parties adequately represent the interests of a proposed intervenor:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. … As previously stated by the Ninth Circuit, "[t]he most important factor in determining the adequacy of representation is how the interest [of the proposed intervenor] compares with the interests of existing parties."

*Ctr. for Biological Diversity.,* 266 F.R.D. at 374 (citation omitted). The court in *CBD v. BLM* held that NRA proved its interests were not adequately represented by the defendants in that case, noting that "NRA is focused on the hunting aspect and protecting

its members' rights and all hunters' rights to hunt with lead ammunition[, and that] is not the objective of the current Defendants."  *Id*. at 374.

### a.  No Presumption or Assumption of Adequacy Arises Here

This case does not present an instance where a presumption or assumption of adequate representation arises.   This presumption can arise in the context of a proposed intervention when: (1) "an applicant for intervention and an existing party have the same ultimate objective[,]" and (2) the proposed intervenor and a governmental entity are on the same side.  *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003).

Here NRA and SCI, and the Service have different objectives.   NRA and SCI's main objectives in intervening are preserving their members' ability to continue to use lead ammunition and obtaining a ruling indicating that the normal use of lead ammunition in the Kaibab NF does not create: (1) an "imminent and substantial endangerment to health or the environment" under 42 U.S.C. § 6972(a)(1)(B), or (2) a legal basis to limit lead ammunition use because of alleged health concerns related to members of the experimental condor population released in Arizona.   The Service's main objective, on the other hand, is presumably to avoid a finding of liability against it and preserve its ability to manage its lands without potential RCRA liability.

Though the presumption may arise in other types of cases where a government entity is "on the same side" as a proposed intervenor, that presumption does not arise when that entity is "required to represent a broader view than the more narrow, parochial interests" of a proposed intervenor.  *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated by Wilderness Soc. v. U.S. Forest Serv*.,

630 F.3d 1173 (9th Cir. 2011) (abrogation as to NEPA issue only). The Service is charged with representing the general public, which includes a broad spectrum of land users, including non-hunters, some of whom may advocate restricting or eliminating the use of lead ammunition in the Kaibab NF. NRA and SCI, in contrast, represent a narrower and more focused interest in this case: maintaining the status quo for hunting.

The Service taking no position on this proposed intervention further confirms that no presumption arises in this case. RCRA's intervention provision only recognizes the presumption at issue if proven by a governmental entity. 42 U.S.C. § 6972(b)(2)(E) (the Court shall grant intervention as of right where all other requirements are met "unless the Administrator or the State shows that the applicant's interest is adequately represented by existing parties."). Because the "adequate representation" presumption can only arise in RCRA cases when raised by a governmental party, and because the Service has chosen not to raise that argument, no presumption arises against NRA and SCI's intervention.

### b. All Relevant Factors Indicate NRA and SCI's Interests Are Not Adequately Represented by the Service

Under the first of the three factors, NRA and SCI are inadequately represented in this Action unless existing parties "*will undoubtedly make all*" of NRA and SCI's arguments. *Arakaki*, 324 F.3d at 1086 (emphasis added). NRA and SCI intend to argue, among other things, that the best scientific evidence available *does not* sufficiently establish a nexus between condor illness and hunters' use of lead ammunition, in the Kaibab NF or otherwise. If necessary, NRA and SCI are prepared to disprove CBD Plaintiffs' scientific assertions upon which the alleged endangerment is based.

In contrast, though the Service will presumably challenge the conclusion that hunting with lead ammunition results in a violation of RCRA, it seems at least possible

that the Service will not challenge CBD Plaintiffs' proffered evidence and basic underlying theory that hunter-shot lead projectiles pose a particular threat to condors.[8] Indeed, prior to the introduction of California condors into Arizona in 1996, the United States Fish and Wildlife Service ("FWS"), which works with the Service on condor preservation issues, stated it *expected* some of the introduced condors would die as a result of ingesting lead present in hunter-shot carrion. *See Endangered and Threatened Wildlife and Plants: Establishment of a Nonessential Experimental Population of California Condors in Northern Arizona*, 61 Fed. Reg. 54,044, 54,055 (Oct. 16, 1996). FWS stated that the loss "would presumably be more than compensated by natural and captive reproduction." *Id*. Because the Service apparently may not fully oppose CBD Plaintiffs' theory regarding hunter-shot lead ammunition, it is doubtful the Service will make NRA and SCI's arguments that run contrary to that theory.

A court also must determine if the present party is capable and willing to make the same arguments as the proposed intervenor. *Arakaki*, 324 F.3d at 1086. Because the Service's responsibilities are to a broad class of divergent interests (see *supra* Section IV.A.4.a), it is not "capable and willing" to make the narrow arguments NRA and SCI will make to maintain the status quo for hunting in the Kaibab NF. Thus, this factor weighs in favor of finding the Service does not adequately represent NRA and SCI's interests.

Finally, in relation to the third factor, NRA and SCI plan to argue scientific deficiencies that underlay the CBD Plaintiffs' conclusion that condors are dying from the

---

[8] *See, e.g.,* Wildlife Specialist Report, Motorized Travel Plan, Dixie National Forest (March 2009), at 19, http://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5220848.pdf (last visited April 6, 2016).

15

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**

ingestion of hunter-shot lead. Accordingly, the Service may not defend against CBD Plaintiffs' hunting-related allegations as comprehensively and zealously as NRA and SCI will. For all these reasons, NRA and SCI meet the requirements for intervention as of right, and requests the Court grant this Motion.

### B. Alternatively, the Court Should Grant Permissive Intervention Under Rule 24(b)

If the Court does not grant intervention as a matter of right, NRA and SCI request that the Court grant them permissive intervention. Rule 24(b)(1)(B) allows for intervention, in the Court's discretion, where the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact" and the motion is timely. "[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).[9]

NRA and SCI meet all of the prerequisites for permissive intervention. As expressed throughout this Memorandum, NRA and SCI seek to protect hunting as it exists today in the Kaibab NF. NRA and SCI's defenses arise directly in response to the allegations in the Complaint. *See generally* Proposed Answer filed with this Motion. As a result, NRA and SCI's defenses share substantial questions of law and fact with the

---

[9] In addition to the timeliness and common claim or defense requirements from the rule, in some circumstances the Ninth Circuit requires permissive intervenors to show independent grounds for jurisdiction. *See, e.g., League of United Latin Amer. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). But the Court more recently "clarif[ied] that the independent jurisdictional grounds requirement ***does not apply*** to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (emphasis added). Here, as in *Geithner,* "the district court is exercising federal-question jurisdiction" and NRA and SCI are not bringing "any counterclaims or cross-claims," so NRA and SCI are "not required to make any further showing that [their] intervention is supported by independent jurisdictional grounds." *Id.; see also Jackson v. Abercrombie*, 282 F.R.D. 507, 520 (D. Haw. 2012) (same).

issues raised by this action. And as discussed at Section IV.A.1 *supra*, this Motion is timely and will not prejudice the rights of the existing parties.

Because NRA and SCI's interests are not represented by existing parties, NRA and SCI's participation will contribute to an equitable resolution of this case and "contribute to a full development of the underlying issues in the suit." *Or. Envt'l Council v. Or. Dep't of Envt'l Quality*, 775 F. Supp. 353, 359 (D. Or. 1991). Accordingly, if this Court denies intervention pursuant to Rule 24(a), intervention is nonetheless proper under Rule 24(b).

### C.  As a Final Alternative, NRA and SCI Seek Amici Status.

Finally, if the Court does not grant intervention, NRA and SCI request the Court exercise its discretion to allow NRA and SCI to participate in this case as amici curiae. *See, e.g., Silver v. Babbitt*, 166 F.R.D. 418, 435 (D. Ariz. 1994) *aff'd,* 68 F.3d 481 (9th Cir. 1995) (granting amicus status to movant for intervention.

### V.  CONCLUSION

For the foregoing reasons, NRA and SCI satisfy the requirements for intervention as of right as well as permissive intervention. In light of the foregoing, NRA and SCI respectfully request this Court grant NRA and SCI's Motion to Intervene as of Right. Alternatively, NRA and SCI request they be granted permissive intervention. As a final alternative, NRA and SCI seek amici status.

Respectfully submitted this 14th day of April, 2016.

**MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
C.D. Michel, *Attorneys for Proposed Defendant -Intervenor National Rifle*

**SAFARI CLUB INTERNATIONAL**

/s/ Douglas S. Burdin
Douglas S. Burdin and Anna M. Seidman, *Attorneys for Proposed Defendant- Intervenor Safari Club International*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2016, I electronically transmitted the Notice of Motion and Motion for Leave to Intervene by the National Rifle Association of America and Safari Club International, Memorandum of Points and Authorities in Support, and Declarations in Support to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Adam F. Keats
Center for Biological Diversity
351 California St., Suite 600
San Francisco, CA 94104
415-436-9682
Fax: 415-436-9683
Email: akeats@biologicaldiversity.org

Attorney for Plaintiffs

Kevin M. Cassidy
Pacific Environmental Advocacy Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
781-659-1696
Email: cassidy@lclark.edu

Attorney for Plaintiffs

Dustin J. Maghamfar
U.S. Dept. of Justice - Environmental & Natural Resources
P.O. Box 7611
Washington, DC 20044
202-514-1806
Fax: 202-514-8865
Email: dustin.maghamfar@usdoj.gov

Attorney for Defendant, United States Forest Service

James Frederick Odenkirk
Office of the Attorney General
1275 W Washington
Phoenix, AZ 85007-2997
602-542-7787
Fax: 602-542-7798
Email: james.odenkirk@azag.gov

Attorney for Defendant Intervenor, State of Arizona

Norman D. James (No. 06901)
Rhett A. Billingsley (No. 023890)
FENNEMORE CRAIG, P.C.
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016-2394
(602) 916-5000
Email: njames@fclaw.com
rbilling@fclaw.com

Attorney for Intervenor Applicant
National Shooting Sports Foundation

/s/ Douglas S. Burdin
Douglas S. Burdin

19

**NRA/SCI'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**