Kevin M. Cassidy (*pro hac vice*)
Oregon Bar No. 025296
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
(781) 659-1696
cassidy@lclark.edu

Allison LaPlante (*pro hac vice*)
Oregon Bar No. 023614
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97211
(503) 768-6894
laplante@lclark.edu

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; and GRAND CANYON WILDLANDS COUNCIL,<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | Case No: 3:12-cv-08176-SMM<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO INTERVENE BY THE NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL**<br><br>**(ORAL ARGUMENT REQUESTED)** |

COME NOW Plaintiffs Center for Biological Diversity, Sierra Club, and Grand Canyon Wildlands Council (collectively "Plaintiffs"), and file this Response in Opposition to the National Rifle Association's and Safari Club International's (collectively "NRA") Motion for Leave to Intervene (Doc. 95, herein after "NRA Mot.") and supporting documents. Plaintiffs oppose the NRA's motion because the NRA has

1

not satisfied all of the requirements for intervention as of right. Specifically, the NRA has not shown that it has a legally protectable interest in hunting with lead ammunition. Additionally, even if the NRA did have a legally protectable interest, it has failed to show that the United States Forest Service ("Defendant" or "Forest Service") will not adequately represent that interest in the liability phase of the litigation. Further, because one of the NRA's main objectives—challenging the scientific bases for the widely accepted and well-established threat that spent lead ammunition poses to California condors and other wildlife—will unduly delay the proceedings, the Court should reject the NRA's request for permissive intervention. Accordingly, the Court should deny the NRA's motion to intervene, or, alternatively, limit the NRA's participation to the remedy phase of the litigation.

**I.      The NRA has Not Met the Requirements for Intervention as of Right**

Applicants to intervene as of right must demonstrate that four requirements are met:

> (1) the motion must be timely[1]; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th

---

[1] Plaintiffs do not contest the NRA's motion on timeliness grounds.

Cir. 2004). Courts "are guided primarily by practical and equitable considerations" and "generally interpret [intervention] requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Nonetheless, courts retain broad discretion in determining when and how applicants for intervention may participate in the litigation. *See* Fed. R. Civ. P. 24 advisory committee note (1966) (intervention "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"); *see also Donnelly*, 159 F.3d at 409–10 (examining appropriateness of intervention separately for liability and remedial phases of case); *Trident Seafoods Corp. v. Bryson*, No. C12–134 MJP, 2012 WL 1884657, at *6 (W.D. Wash. 2012) (limiting intervention to the remedy phase only) (*Trident Seafoods I*).

Here, the NRA has failed to assert a legally protectable interest. Even if the Court were to find that the NRA possesses a legally protectable interest in hunting with lead ammunition on the Kaibab National Forest ("KNF"), the Forest Service would adequately represent its interest during the liability phase of this case. Therefore, in the interest of practicality and equity, the NRA should be limited to only intervening in the remedy phase of the case, if at all.

**A.   The NRA Asserts No Legally Protectable Interest in Hunting with Lead Ammunition that Will be Impaired or Impeded by this Litigation**

The NRA bears the burden of demonstrating that it has a "significantly protectable" interest in the property or transaction that is the subject of the action. *Lockyer*, 450 F.3d at 440. In order to meet this requirement, a proposed intervenor must

3

show that its "interest is protectable under some law, and that there is a relationship between [its] legally protected interest and the claims at issue." *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011). Here, the NRA asserts an interest to hunt *with lead ammunition* on the KNF, *see* NRA Mot. at 9, but it fails to cite or provide any law or authority protecting the right of its members to do so.

In an attempt to manufacture a legally protected interest, the NRA argues that "Arizona law generally allows hunting with lead ammunition." *Id.* But its only citation for the legal protection of this "right" is a law that *restricts* hunting with lead ammunition. *Id.* (citing Ariz. Admin. Code § R12-4-304). The existence of one regulation that prohibits lead ammunition for a specific type of hunting does not create a generally protected right to hunt with lead ammunition on the KNF. If anything, the NRA's reliance on Arizona's restriction shows that the "right" to hunt precisely how one chooses is far from inviolate.

The NRA also cites to a Forest Service website that declares that hunting is allowed in the KNF, and several Arizona administrative rules that place limitations on hunting, in an attempt to imply that a current lack of express prohibition on lead ammunition indicates a "legally protectable" interest sufficient for intervention as of right. NRA Mot. at 9. This characterization of hunting rights in the KNF misrepresents the law and fails to meet the requisite burden for intervention. Courts have denied intervention where proposed intervenors failed to "identify the law that protects their

4

interests." *Idaho Rivers United v. Probert*, No. 3:16-cv-00102-CWD, slip op. at 6 (D. Idaho, Apr. 19, 2016).[2] The fact that the law might not expressly prohibit an interest, does not make that interest *protectable by law.* While a person's interest in hunting, generally, might be protected by law, that does not mean that the person has a legally protected right to hunt with his or her preferred ammunition.

Additionally, the NRA has failed to assert a "relationship between the legally protected interest and the claims at issue." *Sierra Club*, 995 F.2d at 1484. At the liability phase of the proceedings, the only issue is whether the Forest Service has contributed to an imminent and substantial endangerment to wildlife on the KNF. The NRA's members' alleged interest in hunting with lead ammunition has no relationship to the Forest Service's liability under RCRA, and the NRA has failed to identify how the resolution of that issue implicates any of its stated interests. *See, e.g., Trident Seafoods Corp v. Bryson*, No. 2:12-cv-0134-MJP, 2012 WL 1642214, at *3 (W.D. Wash., May 10, 2012) (finding that the proposed intervenors' interest did "not relate to the [plaintiffs' claims]") (*Trident Seafoods II*); *Idaho Rivers United*, slip op. at 6 (finding proposed intervenors failed to "demonstrate how their contractual interests [were] protectable in relation to the [p]laintiffs' challenges to whether the Federal Defendants" abided by federal statutory requirements); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("Here, [proposed intervenor] claims no direct interest in whether the [defendant] is found to have violated the Clean Water Act; its interest is

---

[2] For the Court's convenience, Plaintiffs have attached a copy of this opinion as Exhibit 1.

5

limited to how this action's financial consequences might eventually affect its members' own pocketbooks. Such an interest is too tangential to the core issues of this enforcement case to establish a right to intervene."). Thus, because the NRA cannot demonstrate a legally protectable interest related to Plaintiffs' claim, the Court should deny the NRA's motion altogether.

But even if the NRA could demonstrate that it has a legally protectable interest related to the sole discrete claim against the Forest Service in this case, the NRA's ability to protect its interest will not be impaired or impeded at the *liability* phase in the proceedings. To justify intervention as of right, the NRA has the burden to show that this litigation "may as a practical matter impair or impede" its ability to protect its interests. Fed. R. Civ. P. 24(a)(2). Here, the NRA's interests are only implicated at the remedy phase, assuming the Forest Service is found liable. *See, e.g.*, *Trident Seafoods I*, 2012 WL 1884657, at *6, (limiting intervention to the remedy phase only).[3] The NRA asserts that Plaintiffs' requested relief in this case would have a "significant and practical impact on NRA and SCI members and their ability to hunt in the manner that has occurred for generations." NRA Mot. at 11–12. But the NRA acknowledges explicitly that any impairment its members might face would be to the type of ammunition they may use; not to their right to continue hunting in the KNF. *See* NRA Mot. at 8

---

[3] The Western District of Washington limited an intervenor's participation exclusively to the remedy phase in *Trident Seafoods I* when catchers of rockfish sought to protect their market share of rockfish in an action against the federal government. 2012 WL 1884657 at *4. The court limited their intervention to the remedy phase because their interest was "only at stake if Plaintiffs prevail[ed] on the legal claims," and therefore they "lack[ed] a significantly protectable interest at the merit stage." *Id.* at *3.

6

(characterizing its interest as "continuing to hunt in the [KNF] using lead ammunition"). These are questions that pertain only to the manner in which the Forest Service would comply with any remedy order this Court might issue.

Ultimately, the NRA fails to assert a legally protectable interest. Its characterization of restrictions to lead ammunition as preventing hunters from using "the ammunition considered to be abundant, economical, and effective" has nothing to do with whether those hunters have a legally protected right to use lead ammunition on the KNF. *Id*. at 12. Any interest the NRA may have is unrelated to the liability phase of the proceedings where the only issue concerns whether the Forest Service is liable for contributing to an endangerment in the KNF. Because courts retain broad discretion in determining how and when applicants for intervention may participate, *see Donnelly*, 159 F.3d at 409–10, this Court should limit NRA's participation, if granted at all, to the remedy phase.

**B.    The NRA Has Failed to Show that the Forest Service Will Not Adequately Represent Its Interests During the Liability Phase of the Litigation**

An applicant for intervention also bears the burden of demonstrating that existing parties will not adequately represent its interests. A presumption of adequate representation exists when "an applicant for intervention and an existing party have the same *ultimate* objective." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (emphasis added) (internal quotation marks omitted). Additionally, in the "absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v.*

7

*Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotation marks omitted). Because the NRA and the Forest Service share the same "ultimate" objective—a finding that the Forest Service has not contributed to an imminent and substantial endangerment to the environment—this Court should presume that the Forest Service will adequately represent the NRA's interests in the liability phase of this case. In light of this presumption, the NRA has failed to make the "very compelling showing" necessary to demonstrate inadequate representation. *Id.*

The NRA argues that no presumption should apply because the NRA and the Forest Service "have different objectives." NRA Mot. at 13. But the NRA then admits that one of its objectives overlaps with the objective of the Forest Service. *See id.* (discussing the NRA's and the Forest Service's objective to secure a finding from the Court that lead ammunition use on the KNF does not create an "imminent and substantial endangerment"). That the NRA has a further objective—to preserve its "members' ability to continue to use lead ammunition", *id.*—is of no import at the liability phase of the litigation, because the objective will only be implicated if the Court finds the Forest Service liable. Thus, if the Forest Service achieves its "ultimate objective," then the NRA's objectives will necessarily have been achieved as well: the Court will have found that the Forest Service is not contributing to an imminent and substantial endangerment to the environment, and the NRA's members will be able to continue using lead ammunition on the KNF.[4] In light of the presumption of adequate

---

[4] The NRA makes a passing reference to the language in 42 U.S.C. § 6972(b)(2)(E), suggesting that it supplants any otherwise applicable adequate representation

representation, the NRA has failed to make a compelling showing that the Forest Service will not adequately represent its interests at the liability phase.

Even absent this presumption, the NRA has not made the "minimal" showing necessary to meet its burden of establishing inadequate representation at the liability phase. The Ninth Circuit considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Arakaki*, 324 F.3d at 1086. None of these three factors weighs in favor of NRA intervention at the liability phase.

### 1. The Only Argument the NRA Has Identified that the Forest Service is Unlikely to Make Regarding Liability Is Meritless

The NRA claims that the Forest Service's representation of its interests will be inadequate because "it seems at least possible that the Service will not challenge CBD Plaintiffs' proffered evidence and basic underlying theory that hunter-shot lead projectiles pose a particular threat to condors." NRA Mot. at 14–15. Indeed, the government has consistently taken the position that lead ammunition poses a major threat to condor populations for more than a decade. *See infra* Part I.B.2. This is

---

presumption. The NRA cites to no authority, however, nor are Plaintiffs aware of any, that suggests this provision renders inapplicable the body of case law discussed herein. Moreover, the NRA's reading of the statute is strained; its terms apply only to the EPA Administrator and the State, neither of which is a party to this case. *See id.* (denying intervention when "the Administrator or the State" shows adequate representation of interest). Indeed, Congress included this provision to ensure that members of the public who live near an endangerment would be able to intervene in a state or EPA-initiated action. *See* S. Rep. No. 98-284, at 15 (1983). That is not the posture of this case.

9

understandable, as overwhelming evidence demonstrates the imminent risk that spent lead ammunition poses to wildlife, and specifically to condors in the KNF since their reintroduction.

In support of its argument that the Forest Service does not adequately represent its interests, the NRA relies heavily on *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 266 F.R.D 369 (D. Ariz. 2010). In that case, the court granted the NRA's motion to intervene as a defendant in a National Environmental Policy Act ("NEPA") case concerning lead poisoning in condors. *Id.* at 374–75. The court found that the government would not adequately represent the NRA's interests because the NRA contended "that the current Defendants ha[d] a different position as to the link between lead ammunition use and the mortality rate of California condors" and the NRA "intend[ed] to argue that the administrative record and relevant scientific data do not support . . . the prevalence of lead-related condor mortalities." *Id.* at 374. As the case progressed, however, the court resolved the matter at summary judgment in favor of defendants *without even addressing* the NRA's summary judgment motion because its "substantive arguments largely duplicate[d] BLM's." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 09-CV-8011-PCT-PGR, 2011 WL 4551175, at *1 n.2 (D. Ariz. Sep. 30, 2011).

Indeed, in its summary judgment briefing, the NRA made arguments about procedural defects in the Plaintiffs' case and the government's compliance with NEPA, but failed to cite one scientific study or make any arguments challenging the link between lead ammunition use and condor mortality. *See generally* NRA Mot. for

10

Summary Judgment, *Ctr. for Biological Diversity*, 2011 WL 4551175. In sum, the NRA fought its way into court under a pretense of challenging Plaintiffs' irrefutable scientific evidence of lead poisoning in condors, then contributed nothing of substance before being ignored in the court's final order. This Court should not allow it to repeat the same charade in this case. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) ("[T]he interest test directs courts to make a 'practical, threshold inquiry,' and 'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (internal quotation marks omitted).

Further, simply because a party may be unlikely to make a meritless argument does not mean that the court should let in any party willing to make that meritless argument. In *Arakaki*, the court denied intervention because there was "no conflict that prevent[ed] the State and its agency defendants from raising" the argument the intervenors proposed. 324 F.3d at 1087. Similarly, there is no conflict preventing the Forest Service from making the NRA's proposed argument in this case. The Forest Service is certainly *capable* of making the argument; the fact that it may be *unwilling* to do so speaks more to the weakness of the argument than it does the adequacy of representation of NRA's interests. Numerous courts have found that "simply because [proposed intervenor] would make slightly different arguments . . . does not amount to a 'compelling showing' of inadequacy, [nor] offer[] a 'necessary element' to the litigation." *Idaho Bldg. & Constr. Trades Council v. Wasden*, No. 1:11-cv-0253-BLW, 2011 WL 5154286, at *3 (D. Idaho, Oct. 28, 2011) (finding that the government

11

adequately represented construction companies' interest in defending a statute from preemption); *see also Earth Island Inst. v. Evans*, 136 Fed. Appx. 34, 36 (9th Cir. 2005) ("Neither the [proposed intervenors'] different motives to litigate, nor an anticipated difference in litigation strategy, constitutes an otherwise-neglected necessary element."); *Doe v. Harris*, No. C12–5713 TEH, 2013 WL 140053, at *1 (N.D. Cal., Jan. 10, 2013) ("[M]inor differences in litigation strategy do not demonstrate the compelling showing necessary to overcome the presumption that the Attorney General will adequately represent [proposed intervenors'] interests."). All told, the NRA has failed to make a compelling showing of inadequacy based on its belief that the Forest Service will not challenge the science behind lead poisoning.

### 2. The NRA's Motion Ignores the Relevant Legal Standard in this Case

While the NRA purportedly intends to argue "that the best scientific evidence available *does not* sufficiently establish a nexus between condor illness and hunters' use of lead ammunition," NRA Mot. at 14 (emphasis in original), the NRA's motion fails to discuss the well-established legal standard for the "imminent and substantial endangerment" element of Plaintiffs' RCRA claim—a critical factor in the overall evaluation of whether intervention is appropriate. The Ninth Circuit has concluded that "a finding that an activity may present an imminent and substantial harm does not require actual harm." *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994); *see also Dague v. City of Burlington*, 935 F.2d 1343, 1355 (2d Cir. 1991) *rev'd in part on other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992) (finding Congress' use of the

12

word "may" was intended "to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate *any risk* posed by toxic wastes") (emphasis in original). Even if the NRA could make a meritorious argument that lead does not cause actual harm to condors or the environment, success on that argument would be insufficient to defeat a finding that the Forest Service's activities *may present* an endangerment.

When viewed in the context of RCRA's endangerment standard, it is clear that the scientific evidence available will be more than sufficient to show that lead ammunition may present an imminent and substantial endangerment. Plaintiffs are unaware of any peer-reviewed scientific articles or opinions that dispute the existence of the spent lead ammunition threat to condors in the KNF, and the NRA has not cited to any such studies. To the contrary, the scientific evidence in Plaintiffs' favor is abundant.

Years of data from tracking and measuring blood lead levels of condors in Arizona is more than sufficient to meet the relatively low threshold to show the disposal of spent lead ammunition in the KNF "may present" an imminent and substantial endangerment under RCRA. The U.S. Fish and Wildlife Service created the Southwest Condor Review Team ("SCRT") to study and monitor condors' health and progress toward self-sustainability following their reintroduction into their historic range. The SCRT conducts comprehensive reviews of the reintroduction program every five years, the most recent of which was released in May 2012 ("2012 Review"). *See* A REVIEW OF THE THIRD FIVE YEARS IF THE CALIFORNIA CONDOR REINTRODUCTION PROGRAM IN THE SOUTHWEST (2007–2011) (attached as Exhibit 2). The 2012 Review by the SCRT

concluded, "the most significant issue raised in the second program review [in 2007], exposure to lead contamination, continues to affect both individual birds and the southwest population." *Id*. at 4. The 2012 Review also confirmed the conclusion of the 2007 Review that lead exposure remains "the leading cause of condor mortality in th[e] area." *Id.* at 19. In addition, 63 percent of wild condors tested in 2011 were found to have blood lead levels indicative of lead exposure. *Id.* The SCRT recognized primary sources of lead contamination to condors in Arizona are "shotgun pellets and rifle bullet fragments in animal carcasses." *Id.* at 17. Further, SCRT data linked blood lead levels in condors to hunting on the Kaibab Plateau. *Id.* at 13 ("Like the previous five years of the condor release program in Arizona, lead poisoning cases occur predominantly in the fall and winter months and are associated with the big-game hunting seasons.").

Not surprisingly, the SCRT's conclusion that lead poisoning from spent ammunition is the leading threat to condors is widely shared. For example, the U.S. Department of the Interior stated:

> *Numerous scientific studies have reached a consensus*: lead poisoning is the biggest threat facing the successful recovery of the California condor. . . . [L]ead poisoning through ingestion of spent lead bullets and shell shot has been demonstrated as being a serious factor for many other wildlife species too, including our national symbol the bald eagle . . . golden eagles, hawks, ravens, turkey vultures, and grizzly bears.[5]

The State of Arizona also found that lead toxicity is the leading cause of mortality for condors in Arizona:

---

[5] *Lead Bullet Risks for Wildlife & Humans*, National Park Service, https://www.nps.gov/pinn/learn/nature/leadinfo.htm (emphasis added) (last visited April 27, 2016) (attached as Exhibit 3).

> Lead toxicity has been identified as the leading cause of death in condors in Arizona's California condor reintroduction program, and high mortality rates are the primary obstacle to recovery of this species. . . . Biologists began testing for lead exposure in 1999. Each year, 45 to 95 percent of the condor population tests positively for lead exposure.[6]

Further, the source of lead exposure is clear to the State: spent lead ammunition from hunting. *Id*. Thus, in the six years since the NRA intervened in an earlier case about condors and lead, significant new scientific data have been added to the already robust collection of evidence demonstrating the risk to wildlife posed by spent lead ammunition in the environment. In light of this scientific consensus, and the low threshold required to establish that spent lead ammunition *may* present an imminent and substantial endangerment to condors and other wildlife, the NRA's argument that "the best scientific evidence available *does not* sufficiently establish a nexus between condor illness and hunters' use of lead ammunition," NRA Mot. at 14, is meritless. The possibility that the NRA might nonetheless make this argument does not justify a finding of inadequate representation.

## II. Permissive Intervention is Unwarranted and Should Be Denied

The Court should deny the NRA's request for permissive intervention because the NRA's participation in the liability phase of the case will "unduly delay [and] prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts deny motions for permissive intervention on these grounds where the proposed intervenor's arguments mirror the arguments of an existing party, and where an existing party will

---

[6] Condors and Lead, Ariz. Game & Fish Dep't, http://www.azgfd.gov/w_c/california_condor_lead.shtml (last visited April 27, 2016) (attached as Exhibit 4).

15

adequately represent the proposed intervenor's interests, due to concerns that allowing the intervenor to participate will complicate and delay the litigation. *See, e.g., WildEarth Guardians v. Salazar*, No. CV-09-00574-PHX-FJM, 2009 WL 4270039, at *3 (D. Ariz. Nov. 25, 2009); *Puget Soundkeeper Alliance v. U.S. Envtl. Prot. Agency*, No. C16–0293JLR, 2016 WL 1381840, at *4 (W.D. Wash. Apr. 6, 2016).

As discussed above, the NRA has not shown that the Forest Service will inadequately represent whatever interests the NRA may have in this case. The NRA's intervention in order to present information at odds with universally accepted scientific fact would only result in a needless delay of the proceedings. *See Tripp v. Exec. Office of the President*, 194 F.R.D. 344, 348 (D.D.C. 2000) (denying permissive intervention for same reasons justifying denial of intervention as of right and due to unreasonable frustration of the case). In cases seeking to enforce environmental laws, delays due to intervention are especially prejudicial to parties and the public because they stall resolution of important environmental issues. *See Alisal Water Corp.*, 370 F.3d at 923 ("[I]ntervention could complicate and delay long standing efforts by the United States to ensure safe drinking water."). This case, which is about an imminent and substantial endangerment to critically imperiled condors and other wildlife, has been pending since 2012. The NRA's participation, especially its intent to challenge undisputed science, will further delay the proceedings and prejudice Plaintiffs.

**III.     Conclusion**

For the foregoing reasons, the NRA's motion to intervene in this case should be denied. If this Court is inclined to grant the NRA's motion, its participation should be

limited to the remedy phase of the litigation. If the Court grants intervention for both NSSF and NRA at any phase of the litigation, Plaintiffs respectfully request that the Court order the intervenors to file joint briefs. *See Trident Seafoods I*, 2012 WL 1884657, at *5 (ordering joint briefs when "the Court observes [proposed interveners] filed their motions to intervene within weeks of each other and present similar arguments"). Finally, Plaintiffs do not oppose the NRA's request to file an amicus brief in this matter.

                                                                                  Respectfully submitted,

Dated: April 28, 2016               */s/ Allison LaPlante*

                                                    Allison LaPlante
                                                    Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, which will send notification of such filing to the following:

**Dustin Maghamfar**, Attorney for Defendant United States Forest Service

**James Odenkirk**, Attorney for the State of Arizona

**Carl Dawson Michel**, **W. Lee Smith, Scott M. Franklin**, **Douglas S. Burdin** **Anna M. Seidman**, Attorneys for Proposed Intervener National Rifle Association and Safari Club International.

**Norman D. James, Rhett A. Billingsly**, Attorneys for Proposed Intervener National Shooting Sports Foundation.

**Kevin Cassidy**, Attorney for Plaintiffs.

/s/ Allison LaPlante
Allison LaPlante