FENNEMORE CRAIG, P.C.
Norman D. James (No. 06901)
Rhett A. Billingsley (No. 023890)
2394 E. Camelback Road
Suite 600
Phoenix, AZ  85016-2394
Telephone:  (602) 916-5000
Email:  njames@fclaw.com
        rbilling@fclaw.com

Attorneys for National Shooting Sports
Foundation, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity; Sierra Club; and Grand Canyon Wildlands Council, | No. CV-12-8176-PCT-SMM |
| Plaintiffs, | **NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE** |
| v. | |
| United States Forest Service, | |
| Defendant, | |
| and | |
| National Shooting Sports Foundation, | |
| Applicant for Intervention. | |

Plaintiffs oppose the Motion to Intervene of National Shooting Sports Foundation, Inc. ("NSSF") (Doc. 90, "NSSF Motion to Intervene"), contending that NSSF and its members lack significantly protectable interests that would be impaired if Plaintiffs were to prevail and that the United States Forest Service (the "Forest Service") will adequately represent the interests of NSSF and its members.  Both of these arguments are wrong.  As set forth in both NSSF's Motion to Intervene and the Declaration of Lawrence Keane (Doc. 91, "Keane Decl."), NSSF clearly meets the standard for intervention of right pursuant to Rule 24(a)(2).  Alternatively, NSSF should be granted permissive intervention under Rule 24(b).

I.      **NSSF MEETS THE STANDARD FOR INTERVENTION AS OF RIGHT UNDER RULE 24(A)(2).[1]**

    A.      **Plaintiffs Mischaracterize the Nature of NSSF's Interest in This Case.**

Plaintiffs spend the first several pages of their response mischaracterizing NSSF's arguments and interests and confusing the issues in this case.[2]  Plaintiffs have sued the Forest Service under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA").[3]  This provision authorizes persons to commence civil actions "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."[4] Pursuant to this provision, Plaintiffs allege that the Forest Service has substantially endangered certain wildlife by failing to ban traditional lead-based ammunition.[5]  This claim focuses on hunting on the Kaibab National Forest.  But it could apply to any national forest or any other federal land, as well as State and private land.

To prevail on this claim, Plaintiffs must establish that hunters are disposing of a solid or hazardous waste by discharging their firearms and failing to retrieve their bullets. Thus, the Forest Service's liability as a "contributor" under the RCRA citizen suit provision depends on this Court first determining that hunting with traditional ammunition constitutes the "disposal" of a "solid waste" or a "hazardous waste."[6]  If there is no regulated "disposal," Plaintiffs' suit fails.

However, the Forest Service can avoid liability if the agency is not a "contributor"—regardless of whether hunting with traditional ammunition is determined

---

[1] Plaintiffs do not contest the timeliness of NSSR's motion to intervene.  Consequently, this element of the test for intervention is not addressed below.

[2] *See* Plaintiffs' Response in Opposition to [NSSF's] Motion for Leave to Intervene ("Response") at 4-6.

[3] 42 U.S.C. § 6972(a)(1)(B)

[4] *Id.*

[5] *See generally* Plaintiffs' Complaint (Doc. 1).

[6] *Id.*  The terms "disposal," "hazardous waste," and "solid waste" are terms defined under RCRA.  *See* 42 U.S.C. § 6903((3), (5), (27).

to constitute a "disposal" under RCRA.  Consequently, the Forest Service may not challenge the first element of Plaintiffs' claim—that hunting constitutes the disposal of a solid or hazardous waste.

The bottom line, therefore, is that the Plaintiffs are requesting relief against the Forest Service that would ban the use of traditional ammunition within the Kaibab National Forest.  This alone would have a direct impact on the interests of NSSF and its members, which, as explained by Mr. Keane, manufacture, distribute, and sell 90 percent of domestically-produced traditional ammunition, as well as firearms and shooting and hunting-related goods and services.[7]  But the precedent that this case could establish is much broader in scope.  Indeed, the issue of whether hunting constitutes the disposal of a solid or hazardous waste under RCRA has nationwide significance, and how this issue is decided will affect the interests of NSSF and its members on a national scale.

A recent en banc Ninth Circuit opinion, *Wilderness Society v. U.S. Forest Service*, emphasized that Federal Rule of Civil Procedure 24(a)(2) should be construed broadly in favor of proposed intervenors.[8]  The court stated:

> [The] intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as "significantly protectable" under Rule 24(a)(2). . . . Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." . . . Furthermore, a prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." . . .[9]

NSSF has clearly met this relaxed standard in light of the potential ramifications of this suit on NSSF's members.  Plaintiffs' Response provides no contrary authority.  Instead, they have improperly attempted to marginalize the interests of NSSF's members and the obvious impairment of those interests if they were to prevail.

---

[7] *See* Keane Decl. at ¶¶ 6, 8.

[8] 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (citing and discussing numerous cases).

[9] *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481, 1484 (9th Cir. 1993), *California ex rel Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)) (citations omitted).

1

## B.     NSSF Has a Protectable Interest.

2      NSSF has a protectable interest in the subject matter of Plaintiffs' RCRA claim

3   because the use of traditional ammunition—the vast majority of which is manufactured by

4   NSSF's members[10]—is the object of the Complaint.[11]   As explained above, the alleged

5   "endangerment" is being caused by the use of traditional ammunition, which, according to

6   Plaintiffs, results in a "disposal" subject to RCRA.   Given the elements of Plaintiffs'

7   claim, and contrary to Plaintiffs' Response, *Fund for Animals v. Norton*[12] is

8   indistinguishable from this case and supports intervention.

9      In *Fund for Animals*, the plaintiff sued to enjoin the Secretary of the Interior and

10   the Fish and Wildlife Service from issuing permits for the importation of hunted

11   Mongolian sheep, and the Mongolian government sought to intervene on the side of the

12   federal defendants.[13]   Finding that the Mongolian government had an interest relating to

13   the property and transaction which was the subject matter of the plaintiff's claim for

14   relief, the court permitted Mongolia's intervention.[14]

15      Plaintiffs argue that the relevant "property" here is the Kaibab National Forest and

16   that the relevant "transaction" is "the Forest Service's failure to abate known

17   endangerment on its property."[15]   This argument conflicts with *Fund for Animals* itself,

18   which reasoned that the relevant "property" in that case was Mongolia's sheep and that

19   the relevant "transaction" was "the FWS's decision to permit the importation of those

20   sheep from Mongolia."[16]   Here, the relevant "property" is the ammunition manufactured,

21   distributed and/or sold by NSSF's members, and the relevant "transaction" is the Forest

22

23   [10]  *See* Keane Decl. at ¶ 8 ("Approximately 95% of the domestically manufactured
     ammunition is traditional ammunition made with lead bullets or shot, and over 90% of
24   that domestically manufactured traditional ammunition is manufactured by NSSF
     members.").

25   [11] *See* Complaint (Doc. 1) at ¶¶ 45-47.
     [12] 322 F.3d 728, 730-31 (D.C. Cir. 2003).
26   [13] *Id.* at 730-31.
     [14] *Id.* at 735-37 (holding that the other Rule 24(a)(2) factors were also met).
27   [15] *See* Response at 8.
     [16] *See Fund for Animals*, 322 F.3d at 735.
28

Service's decision to allow the use of that ammunition in the national forest. Additionally, just as in *Fund for Animals,* the fact that the proposed intervenor (here NSSF, in *Fund for Animals* the Mongolian government) would not itself be personally subject to the regulation sought by the Complaint does not change the analysis.[17]

NSSF also has a direct interest in the economic vitality and legal rights of its membership, which includes the manufacturers of the bulk of the traditional ammunition at issue in this case as well as thousands of distributors, firearms retailers, shooting ranges, and sportsman's organizations who variously distribute, sell, and use that ammunition.[18]  Plaintiffs cite *Trident Seafoods Corp. v. Bryson*, a district court case, for the proposition that such "generalized" interest "is inadequate to support intervention."[19] *Trident Seafoods* is clearly distinguishable, however.

First, Plaintiffs cite that case as "finding proposed interveners' interests insufficient at [the] merits stage when based on maintaining market share."[20]  NSSF's interests in this case do not relate to maintaining the "market share" of any particular member.  As Mr. Keane explains, NSSF's members include more than 13,000 federally-licensed firearms manufacturers, distributors, and retailers; companies manufacturing, distributing, and selling shooting and hunting-related goods and services; sportsmen's organizations; public and private shooting ranges; and gun clubs.[21]  Thus, NSSF not only represents virtually the entire firearms and ammunition industry, but its members have varied interests in that industry and in the use of traditional ammunition.

Second, this is not a case in which NSSF's interests are only implicated in the

---

[17] *See id.* at 735; *compare* Response at 7.  It should be noted, however, that under Plaintiffs' endangerment theory, an NSSF member using traditional ammunition may be liable for the "disposal" of a solid or hazardous waste.  The Forest Service's liability is derivative, i.e., the agency is allegedly "contributing" to the "disposal."  *See* 42 U.S.C. § 6972(a)(1)(B).

[18] *See* Keane Decl. at ¶ 6, 8.

[19] *See* Response at 8 (citing *Trident Seafoods Corp. v. Bryson*, 2012 WL 1884657, *3-4 (W.D. Wash. May 23, 2012)).

[20] *See* Response at 8-9.

[21] *See* Keane Decl. at ¶ 6.

remedy stage.  Although NSSF has an interest in averting any remedy requiring the Forest Service to ban the use of traditional ammunition, its interest in avoiding an endangerment finding, which must be proven as a part of Plaintiffs' prima facie case, is even more important.  As explained above, the Forest Service's liability for endangerment depends on this Court determining that hunting with traditional ammunition constitutes the "disposal" of a solid or hazardous waste within the meaning of RCRA.  NSSF has a significant interest in preventing the creation of a precedent that could be used in future RCRA citizen suits attacking the use of traditional ammunition and, moreover, may alter federal policy on a national scale.

### C.   NSSF's Ability to Protect Its Interests Will Be Impaired by Resolution of Plaintiffs' Endangerment Claim in NSSF's Absence.

The impairment element of the test for intervention of right "follows from the factors" related to NSSF's protectable interest.[22]  Because NSSF has a protectable interest in the subject matter of Plaintiffs' suit—the use of traditional ammunition—and in the economic well-being of its members, and because an endangerment finding would impair these interests, this element is satisfied.[23]

Plaintiffs argue that the precedential value of an endangerment finding in this case is not a sufficient basis for finding impairment, citing *Dilks v. Aloha Airlines*.[24]  *Dilks*, however, is inapposite.  In that case, the pilots' union sought to intervene as a defendant where an airline pilot sued his airline for wrongful discharge.[25]  The pilot's complaint alleged that arbitrating his case as required under the collective bargaining agreement

---

[22] *Sierra Club*, 995 F.2d at 1486, *abrogated on other grounds by Wilderness Society*, *supra* n. 7.

[23] Plaintiffs argue that an endangerment finding would not impair any interest NSSF has in the Kaibab National Forest.  *See* Response at 10.  However, as *Fund for Animals* indicates, the relevant "property" interest is the interest of NSSF and its members in the use of _traditional ammunition,_ which is alleged cause of the endangerment and, therefore, is the subject matter of Plaintiffs' suit.  The Kaibab National Forest is the location of the alleged endangerment.

[24] *See* Response at 10 (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)).

[25] *See Dilks,* 642 F.2d at 1156.

would be futile because the union had breached its duty to fairly represent him.[26]   In seeking to intervene, the union urged "that it may have potential liability for damages if it is found to have breached its obligation of fair dealing."[27]   The court found this fear "speculative" because the plaintiff had pledged not to sue the union.[28]   *Dilks,* therefore, held only that fear of being sued for damages was too "speculative" to justify intervention where the plaintiff had pledged not to sue.[29]   Here, NSSF's members' interests are such that they may be impaired regardless of whether NSSF itself is actually sued or whether Plaintiffs pledge not to sue NSSF and its members.

Plaintiffs also rely on *Greene v. United States*, in which the Ninth Circuit found that an Indian tribe's concerns over how federal recognition of another tribe might impact a separate line of cases addressing treaty fishing rights was too attenuated to support intervention.[30]   Similarly, Plaintiffs cite *Northern California River Watch v. Fluor Corp.*, for the proposition that speculative *stare decisis* effects are insufficient to support intervention.[31]   Again, the facts were much different as the proposed intervenor (which was allowed to intervene) was concerned that the plaintiff's suit would impair its own suit against Fluor for recovery of property clean-up costs and damages under different statutes.[32]   The court held that the intervenor "has not established that there is a risk that the ruling of the federal district court in this case would have any stare decisis effect on its interest in cost recovery or property damages."[33]

The facts in the *Greene* and *Fluor* cases stand in stark contrast to the potential precedential impact of this case on the use of traditional ammunition.   As explained,

---

[26] *Id.*
[27] *Id.* at 1157.
[28] *See id.*
[29] *See id.*
[30] Response at 6 (citing *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993)).
[31] Response at 6 (citing *N. Cal. River Watch v. Fluor Corp.*, 2014 WL 3385287 (N.D. Cal. July 9, 2014)).
[32] 2014 WL 3385287 at *17-*18.
[33] *Id.* at *17.

Plaintiffs' suit hinges on whether hunting with traditional ammunition results in the "disposal" of a solid or hazardous waste within the meaning of RCRA.  Furthermore, although cited in *Greene*, Plaintiffs fail to acknowledge the Ninth Circuit's decision in *United States v. Oregon*, which stated that "a *stare decisis* effect is an important consideration in determining the extent to which an applicant's interest may be impaired."[34]

Finally, Plaintiffs express disbelief at the statements of Mr. Keane, NSSF's Senior Vice President, Assistant Secretary, and General Counsel.[35]  For starters, Plaintiffs are not entitled to contest the factual validity of Mr. Keane's Declaration.[36]  Furthermore, Plaintiffs' assertion that the traditional ammunition manufacturing industry has "survived" a ban on the use of lead shot for waterfowl hunting is a red herring.  The relevant inquiry under Rule 24(a)(2) is whether the interests of NSSF and its members may be impaired by an endangerment finding in this case, not whether the ammunition industry can "survive" an endangerment finding.[37]

### D.   NSSF's Interests May Not Be Adequately Represented.

In arguing that NSSF's interests are adequately represented by the Forest Service, Plaintiffs assert that "[a] presumption of adequate representation exists when an applicant for intervention and an existing party have the same ultimate objective."[38]   But this

---

[34] *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (citing *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986) ("The prospect of *stare decisis* may, under certain circumstances, supply the requisite practical impairment warranting intervention as of right."), *vacated and remanded on other grounds sub nom. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987), and *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981)); *see also Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (citing and following *Oregon* and discussing numerous cases), *abrogated on other grounds by Wilderness Society*, *supra* n.7.

[35] *See* Response at 11.

[36] *See Sw. Ctr. for Biological Diversity v. Berg¸* 268 F.3d 810, 819-20 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.").

[37] *See* FED. R. CIV. P. 24(a)(2).

[38] *See* Response at 12 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

presumption does not apply to federal agencies, which are "required to represent a broader view than the more narrow, parochial interests of" an individual intervenor.[39]

NSSF represents the interests of ammunition manufacturers, distributors, and consumers,[40] while the Forest Service is a federal agency charged with administering the National Forest System, which includes a much broader spectrum of interests than those of NSSF and its members. "Inadequate representation is most likely to be found when the applicant assert[s] a personal interest that does not belong to the general public."[41] Because the interests of the Forest Service are necessarily much broader than those of NSSF, no presumption of adequate representation applies. Even if that presumption did apply, it would be overcome by the fact that NSSF's "ultimate objective" is to protect its members' interests, which include makers, sellers and users of traditional ammunition, from the adverse impacts identified in paragraphs 9 to 12 of the Keane Declaration. The Forest Service certainly does not share that objective.[42]

The fact that the Forest Service and NSSF may both share the objective of defeating Plaintiffs' claim at the liability stage is not a basis for finding that NSSF's interests are adequately represented. First, if that were the case, no applicant could ever successfully intervene on the side of a defendant, since an applicant seeking to join a case on the side of the defendant necessarily stands in opposition to a finding of liability. Second, the mere fact that "both entities occupy the same posture in the litigation" does not necessarily mean that "the government's representation of the public interest . . . [is]

---

[39] *See Forest Conserv. Council*, 66 F.3d at 1499 (citing and discussing numerous cases).

[40] *See* Keane Decl. at ¶ 6.

[41] *Forest Conserv. Council*, 66 F.3d at 1499 (citing 3B MOORE'S FEDERAL PRACTICE, ¶ 24.07[4] at 24-78 (2d ed. 1995); CHARLES WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1909 at 317, 346 (2d ed. 1986)).

[42] Plaintiffs also argue that "it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *See* Response at 12 (citing *Lockyer*, 450 F.3d at 443). NSSF is unsure whether Plaintiffs are referring to the presence of the State of Arizona as an intervenor in this suit. If Plaintiffs are arguing that the State will adequately represent NSSF's interests, the State has not yet moved to intervene and has not committed to do so. Further, the State does not share the same interests as the NSSF and its members for the same reasons that the Forest Service does not share such interests.

1    identical to the individual parochial interest of a particular group."[43]   While the United

2    States has indicated that it intends to file a motion to dismiss, it is not clear whether the

3    Forest Service will vigorously defend Plaintiffs' claims if its motion is denied.   As

4    explained, the Forest Service's liability is derivative, i.e., it allegedly contributed to the

5    endangerment caused by the disposal.   Thus, there is no assurance that the Forest Service

6    will adequately protect the interests of NSSF's members in the use of traditional

7    ammunition.

8        For these reasons, as well as those reasons set forth in NSSF's Motion to Intervene,

9    NSSF has plainly met its minimal burden[44] of showing that the Forest Service's

10    representation of the varying interests of NSSF and its members "may be inadequate."

11    Because the elements of Rule 24(a)(2) are met, intervention as of right should be granted.

12    **II.**      **IN THE ALTERNATIVE, NSSF SHOULD BE GRANTED PERMISSIVE**
13            **INTERVENTION.**

14        Plaintiffs' Response does not dispute that NSSF's defenses to its claims have

15    questions of law and fact in common with the main action.   Instead, Plaintiffs assert that

16    NSSF's intervention would needlessly delay the proceedings.[45]   On this point, Plaintiffs

17    cite *Tripp v. Executive Office of the President*, which is not factually analogous due to the

18    pendency of parallel lawsuits at different stages.[46] The only argument Plaintiffs make in

19    support of their assertion that NSSF's intervention would needlessly delay the litigation is

20    that NSSF may want to participate in discovery.   However, a party's desire to participate

21    in discovery and to assist in the development of facts that will be important to the Court's

22    resolution of the case can hardly be considered a "needless" or "undue" delay.

23

24    _____

[43] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011)
25    (citation omitted; internal quotation marks omitted).

[44] *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) ("The
26    requirement of the Rule is satisfied if the applicant shows that representation of his
interest 'may be' inadequate; and the burden of making that showing should be treated as
27    minimal.")

[45] *See* Response at 14-15.
28    [46] *Tripp v. Executive Office of the President*, 194 F.R.D. 344 (D.D.C. 2000).

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1   Accordingly, NSSF should be granted permissive intervention if this Court denies

2   intervention of right.

3   **III.    CONCLUSION AND RELIEF REQUESTED**

4          In light of the foregoing, NSSF respectfully requests that this Court grant its

5   Motion to Intervene as of right.  Alternatively, NSSF requests it be granted permissive

6   intervention.

7          In addition, Plaintiffs' request that NSSF and the proposed NRA and SCI

8   intervenors file joint briefs should be denied.  Unlike the intervenors in *Trident Seafoods*,

9   on which Plaintiffs rely, NRA and SCI seek to intervene on behalf of different interests

10  than does NSSF, whose members manufacture more than 90 percent of the traditional

11  ammunition made in the United States.  These companies provide approximately 287,986

12  jobs in the U.S., and have an overall annual economic impact of almost $49 billion.[47]

13  Thus, the interests of NSSR differ from the other proposed intervenors, and they cannot be

14  presumed to present the same arguments as NSSF.[48]  Plaintiffs have made no attempt to

15  show otherwise.  In this regard, NSSF does not intend to simply repeat arguments made

16  by other defendants, as Plaintiffs' request presumes.  Therefore, Plaintiffs' request should

17  be denied.

18          RESPECTFULLY SUBMITTED this 2nd day of May, 2016.

19                                              FENNEMORE CRAIG, P.C.

20

21                                              By   s/  Norman D. James
                                                Norman D. James
22                                              Rhett A. Billingsley
                                                Attorneys for National Shooting Sports
23                                              Foundation, Inc.

24

25  [47] Keane Decl. at ¶¶  6-8.

26  [48] In *Trident*, both applicants' interests were limited to the remedy phase of the case and
    were identical—maintaining their rockfish harvest quotas.  *See Trident*, 2012 WL
27  1884657 at *3,*5-*6.  By contrast, NSSF has a protectable interest in the merits of
    Plaintiffs' claim, i.e., whether hunting is a "disposal" of a solid or hazardous waste under
28  RCRA.  Further, NRA and SCI seek to intervene on behalf of interests different than those
    of NSSF's members. *See* NRA's Motion to Intervene (Doc. 28) at 8-11.

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on May 2, 2016, I electronically transmitted the foregoing
NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE to the Clerk's Office using
4   the ECF System for filing and transmittal of a Notice of Electronic Filing to the following
ECF registrants:

5

6   Adam F. Keats                                Kevin M. Cassidy
Center for Biological Diversity              Earthrise Law Center
7   351 California Street, Suite 600             Lewis & Clark Law School
San Francisco, CA  94104                     P.O. Box 445
8   415-436-9682                                 Norwell, MA  02061
Fax: 415-436-9683                            781-659-1696
9   Email: akeats@centerforfoodsafety.org        Email: cassidy@lclark.edu
Attorney for Plaintiffs                      Attorney for Plaintiffs

10

11  Dustin J. Maghamfar                          Allison LaPlante
U.S. Dept. of Justice - Environmental &      Earthrise Law Center - Portland OR
Natural Resources                            Lewis & Clark Law School
12  P.O. Box 7611                                10015 SW Terwilliger Blvd.
Washington, D.C.  20044                      Portland, OR  97219
13  202-514-1806                                 503-768-6894
Fax: 202-514-8865                            Fax:  503-768-6642
14  Email: dustin.maghamfar@usdoj.gov            Email: laplante@lclark.edu
Attorney  for  Defendant,  United  States    Attorney for Plaintiffs
15  Forest Service

16  James Frederick Odenkirk                     Anna Margo Seidman
Office of the Attorney General               Safari Club International
17  1275 W. Washington                           501 2nd St NE
Phoenix, AZ  85007-2997                      Washington, DC 20002
18  602-542-7787                                 202-543-8733
Fax:  602-542-7798                           Fax: 202-543-1205
19  Email:  james.odenkirk@azag.gov              Email: aseidman@safariclub.org
Attorney for State of Arizona                Attorney for Safari Club International

20

21  Douglas Scott Burdin                         Carl Dawson Michel
Safari Club International                     Michel & Associates PC
22  501 2nd St NE                                180 E Ocean Blvd., Ste 200
Washington, DC 20002                         Long Beach, CA 90802
23  202-543-8733                                 562-216-4444
Fax: 202-543-1205                            Fax: 562-216-4445
24  Email: dburdin@safariclub.org                Email:
Attorney for Safari Club International        cmichel@michelandassociates.com
Attorney for National Rifle Association

25

26

27

28

1

Scott M Franklin
Michel & Associates PC
180 E Ocean Blvd., Ste. 200
Long Beach, CA 90802
562-216-4444
Fax: 562-216-4445
Email: sfranklin@michellawyers.com
Attorney for National Rifle Association

2

3

4

5

6
                                                            s/Norman D. James

7

8

9
11569368.1/027975.0002

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX