C. D. Michel – Cal. B.N. 144258
W. Lee Smith – Cal. B.N. 196115(Pro hac vice forthcoming)
Scott M. Franklin – Cal. B.N. 240254
MICHEL & ASSOCIATES, PC
180 E. Ocean Boulevard, Suite No. 200
Long Beach, CA 90802
Telephone:   562-216-4444
Facsimile:    562-216-4445
Emails:        cmichel@michellawyers.com
                    lsmith@michellayers.com
                    sfranklin@michellawyers.com

Douglas S. Burdin, DC B.N. 434107
Anna M. Seidman, DC B.N. 417091
Safari Club International
501 Second Street, NE
Washington, D. C. 20002
Telephone:   202-543-8733
Facsimile:    202-543-1205
Emails:        dburdin@safariclub.org
                    aseidman@safariclub.org

Attorneys for Proposed Defendant-Intervenors

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**PRESCOTT DIVISION**

| | |
|---|---|
| Center for Biological Diversity, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>United States Forest Service,<br><br>    Defendant, and<br><br>National Rifle Association of America and Safari Club International,<br><br>    Proposed Defendant-Intervenors. | CASE NO. 3:12-cv-08176-PCT-SMM<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENORS NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE** |

Those who would be most affected by the likely outcome of a finding of liability in this case – a ban on lead ammunition in the Kaibab National Forest ("Kaibab NF") – represented by the National Rifle Association of America and Safari Club International (collectively "NRA/SCI"), moved to intervene in this action. Plaintiffs (collectively "CBD Plaintiffs") opposed, but offered no persuasive arguments why NRA/SCI should not participate. This Court should grant intervention as of right because, contrary to CBD

**1**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

Plaintiffs' arguments, (1) NRA/SCI have shown a protectable interests in hunting with lead ammunition, and (2) the United States Forest Service ("Service") will not adequately represent NRA/SCI's interests in this case.  CBD Plaintiffs do not dispute timeliness. Alternatively, if this Court denies intervention as of right, NRA/SCI established they qualify for permissive intervention or amicus status.

**I.     NRA/SCI Meet the Requirements for Intervention as of Right**

    **A.     NRA/SCI Possess a Significantly Protectable Interest in Hunting With Lead Ammunition That is at Risk in this Case**

In their Motion to Intervene ("Motion"), NRA/SCI demonstrated their members' interest in hunting with lead ammunition, which is protected by state and federal law. Motion at 9 (Arizona law), 3 (federal law), 5 (citing declarations asserting hunting with lead ammunition in Kaibab NF).  CBD Plaintiffs do not assert that Arizona law prohibits the use of lead ammunition, only that NRA/SCI have failed to "cite or provide any law or authority protecting the rights of its members . . . " to hunt with lead ammunition.  Opp'n at 4-7.  CBD Plaintiffs' theory is that NRA/SCI have not pointed to an Arizona law that says "you can hunt with lead ammunition," and therefore hunters have no "protectable" interest.  Under this theory, (1) hunters would not have the ability to hunt with ***any type of ammunition***, even non-lead ammunition; and (2) NRA/SCI members, and thousands of other hunters in Arizona, would be hunting contrary to the law.

The Court should reject CBD Plaintiffs' nonsensible theory.  The Administrative Code section cited by NRA/SCI authorizes the use of certain firearms to hunt big game. Motion at 9; Ariz. Admin. Code § R12-4-304(A)(3), (6) (bighorn sheep and elk can be hunted with, among others, centerfire rifles, muzzleloading rifles, "[a]ll other rifles using black powder or synthetic black powder," centerfire handguns, shotguns shooting slugs). By necessity, any ammunition that works in these firearms is authorized, unless specifically prohibited.[1]  For example, the section prohibits non-lead ammunition for

---

[1] A 2016 Arizona Fish and Game Department information packet states that non-lead ammunition to hunt bison on the Kaibab NF is "encouraged, but is not mandatory." https://www.azgfd.com/PortalImages/files/hunting/gmuFiles/2016%20Bison%20Hunter%20Packet.pdf

**2**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

waterfowl hunting. Ariz. Admin. Code § R12-4-304(B)(3)(e)(i); *see also id.* R12-4-303(A)(1)(b) (prohibiting tracer and armor-piercing ammunition). CBD Plaintiffs themselves allege another legal authorization to use lead ammunition on the Kaibab NF: "the Forest Service issues special use permits for hunting guides and outfitters whose clients *are able to use lead ammunition when hunting* on Forest Service land." Compl. ¶ 13, (Dkt. 1) (emphasis added). The Motion, and undisputed declarations, state that NRA/SCI members hunt in the Kaibab NF with lead ammunition, which Arizona and federal law allows. Motion at 5-6; Dkt. 96, 101, 102.

CBD Plaintiffs also fail to address the federal law cited by NRA/SCI that directly relates to CBD Plaintiffs' claims. Federal law protects hunters in Arizona under the Endangered Species Act from a non-negligent and incidental take of a California condor as a result of a lawful activity such as hunting. Motion at 3; 50 C.F.R. § 17.84(j)(2)(1). CBD Plaintiffs' attempt to use RCRA liability to preclude hunting with lead ammunition directly conflicts with this law. Because federal law addresses the potential impact of hunting on the reintroduction of the California condor and Arizona law authorizes hunting with lead ammunition on the Kaibab NF, NRA/SCI's hunting interests are well established and meet the threshold of a legally protected interest.

These protected interests in hunting with lead ammunition in Kaibab NF relate to CBD Plaintiffs' claims, which seek to end hunting with lead ammunition. Motion at 10-11. CBD Plaintiffs argue that "the NRA has failed to assert a 'relationship between the legally protect interest and the claims at issue.'" Opp'n at 5-7. If ending the use of lead ammunition (which is certainly related to NRA/SCI members' interests) is not a possible outcome of this lawsuit, then CBD Plaintiffs lack standing to bring this case. *See* Compl. ¶¶ 1, 10-14 (hinting at interests in experiencing condors and other wildlife allegedly harmed by lead ammunition). In fact, in opposing the National Shooting Sports Foundation's intervention in this case, CBD Plaintiffs admitted that NRA/SCI "at least showed that disposition of this action could potentially result in the inability of some of

---

at *6 (visited May 4, 2016). This means, of course, that lead ammunition is allowed.

**3**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

its members who hunt in the KNF to use their preferred choice ammunition or firearms when hunting in the KNF." CBD Opp'n to NSSF Mot. to Intervene at 9 n.5 (Dkt. 108); *see also* Compl. ¶¶ 14, 47(2) ("enjoin" Service regarding lead ammunition).

CBD Plaintiffs try to avoid the ramifications of their admissions by splitting the liability phase of the case from the remedy phase of the case, asserting that only the latter implicates NRA/SCI's interests. Opp'n at 5. Under this theory, few intervenors would have an interest in the whole case because the remedy issued by the court is what usually impairs any interest. Rule 24 requires "that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc). The "claims" involve the liability asserted, not just the remedy that the Court might adopt. The best way for NRA/SCI to protect their demonstrated interests in hunting in Kaibab NF with lead ammunition is to defend against CBD Plaintiffs' claims and defeat them at the outset. If that occurs, there will be no remedy phase. The requirement to file a complaint or answer with a Rule 24 motion further reveals that an intervenor participates as a full party, not one who is relegated to defending its interests only at the remedy phase.

CBD Plaintiffs try to rely on *Trident Seafoods Corp. v. Bryson*, No. C12-134 MJP, 2012 WL 1884657 (W.D. Wash. May 23, 2012) to support their position. Opp'n at 5-6. Even assuming this unpublished case's reasoning is persuasive, which it is not, that reasoning does not apply here. In *Trident Seafoods*, the court exercised its discretion under Rule 24 to condition intervention. 2012 WL 188465, at *3. The court did not cite any other case in which an intervenor applicant was denied an opportunity to protect its interests during the merits phase of the case (which would eliminate the need for the remedy phase), *see id.,* and no case has relied on *Trident Seafood.* The court found that the intervenors were one type of regulated entity (fish processors) under the statutory scheme and that type of entity had no interest in the claims asserted by a different type of regulated entity (fish catchers). *Id.* The court concluded, however, that at the remedy stage, it might fashion relief that would impair the proposed intervenors' interest and this

**4**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

possibility persuaded the court to allow intervention at the remedy phase. *Id.* at *4.

Here, in contrast, the lawsuit centers around lead ammunition and whether allowing its use violates RCRA. Members of NRA/SCI support the status quo and are the ones using the lead ammunition. Where a finding of liability will necessarily lead to a remedy that will impair the intervenor's interests, it makes no sense to force the intervenor to wait until the remedy phase to defend its interests. CBD Plaintiffs seek to force the Service to prohibit the use of lead ammunition in the Kaibab NF. Compl. ¶ 14, 47(2). If CBD Plaintiffs prevail at the liability phase and the Court finds that hunters' lead ammunition is an imminent and substantial endangerment to the condor, the remedy would undoubtedly involve the banning of all lead ammunition in the Kaibab NF. Thus, NRA/SCI's interest may be "impaired or impeded" at the liability phase of this matter. *Trident Seafood* is both unpersuasive and inapplicable.

NRA/SCI seek to defeat a ban on lead ammunition arising from a finding of Service liability by participating in the proceedings that will determine whether there is any basis for liability. CBD Plaintiffs try to rely on an outlier case to establish a rule that would preclude intervention at the liability phase for most cases. CBD Plaintiffs' argument fails, especially under the practical, threshold inquiry the Court must undertake to resolve this motion. *See Fresno Cty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). NRA/SCI possess legally protectable interests related to CBD Plaintiffs' claims.

**B.  The Service Does Not Adequately Represent NRA/SCI's Interests**

**1.  Any Presumption of Adequate Representation is Rebutted**

In response to NRA/SCI's demonstration of inadequate representation, CBD Plaintiffs assert that NRA/SCI cannot rebut the presumption of adequate representation, thus precluding intervention as of right. Opp'n at. 8. CBD Plaintiffs reach this incorrect conclusion by ignoring contrary on-point authority cited in the Motion: "the presumption does not arise when [an] entity is 'required to represent a broader view than the more narrow, parochial interests' of a proposed intervenor." Motion at 13-14 (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995)); *see also*

**5**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

1  *Arakaki v. Cayetano*, 324 F.3d 1078, 1087-88 (9th Cir. 2003) (citing *Forest Con.*, 66 F.3d
2  at 14499, among others).
3      CBD Plaintiffs cite three unpublished opinions that discuss differences in litigation
4  strategy not being sufficient, Opp'n at 11-12, but fail to address *Arakaki*'s discussion of
5  the "parochial interest" standard, which directly limits these holdings. *Arakaki*, 324 F.3d
6  at 1088. By ignoring the relevant case law, CBD Plaintiffs avoid discussing the fact the
7  NRA/SCI represent a much smaller and more homogenous group than the general public,
8  who are represented by the Service in this case. See *infra* Section B.2. Here, just like in
9  *Forest Con.*, the Service must represent the broad public interest. *Forest Con.*, 66 F.3d at
10 1499. CBD Plaintiffs do not, and cannot, argue that NRA/SCI's members are going to
11 have their interests and position at the forefront of the Service's defense of this action.
12 Even presuming the Service is "seeking to protect not only the interest of the public but
13 also the private interest of the petitioners in intervention, [such] task . . . is on its face
14 impossible." *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th
15 Cir. 1977); *see also WildEarth Guardians v. Nat'l Parks Serv.*, 604 F.3d 1192, 1200
16 (10th Cir. 2010) (SCI granted intervention because "where a government agency may be
17 placed in the position of defending both public and private interests, the burden of
18 showing inadequacy of representation is satisfied."). Here, the Service is not going to
19 represent the more parochial interests of NRA/SCI, so the presumption of adequate
20 representation does not arise in this instance.
21     CBD Plaintiffs claim "the NRA and the Forest Service share the same 'ultimate'
22 objective—a finding that the Forest Service has not contributed to an imminent and
23 substantial endangerment to the environment." Opp'n at 8. CBD Plaintiffs wrongly
24 contend, therefore, that the presumption of adequate representation precludes intervention
25 as of right. "[J]ust because [two] 'entities occupy the same posture in the litigation'"
26 does not necessarily mean "the government's representation of the public interest" is
27 "'identical to the individual parochial interest[.]'" *Citizens for Balanced Use v. Mont.*
28

6
REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

*Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (citation omitted).[2]

As stated in the Motion, NRA/SCI assert that the Service's objective in this case "is presumably to avoid a finding of liability against it and to preserve its ability to manage its lands without potential RCRA liability." Motion at 13.[3] CBD Plaintiffs contend, without explanation, that the objectives stated above are the same as NRA/SCI's objective of "a finding that the Forest Service has not contributed to an imminent and substantial endangerment to the environment" Opp'n at 8. They are not necessarily the same.

Both aspects of the Service's presumed objective could be met via a result that has direct negative impact on NRA/SCI's interests. For example, the Service could "avoid[] a finding of liability" *and* "continue to regulate uses of its lands without potential RCRA liability" by defending the case on other grounds (such as that lead ammunition use, although harmful, is not a "disposal" under RCRA) or settling with CBD Plaintiffs on terms that are adverse to NRA/SCI's interests. Motion at 13. In such a scenario, a settlement could require the Service to enact, participate in, or not object to the creation of a lead ammunition ban for the Kaibab NF. Both aspects of the Service's presumed objective could also substantively be met by a final judgment in the Service's favor that indicates *hunters*, and not the Service, "contributed" to the alleged violation. Clearly,

---

[2] In this case, the Forest Service was defending an interim order it issued regarding the scope of recreational use. 647 F.3d at 899. The Forest Service and the proposed intervenor intended to defend the interim order for different reasons. *Id*. The Forest Service believed the interim order was too broad, but issued it to comply with a court order. *Id*. The proposed intervenor believed the interim order was substantively correct. *Id*. The Ninth Circuit held the presumption of adequacy was not applicable, as each party's position "represents more than a mere difference in litigation strategy . . . but rather demonstrates the fundamentally differing points of view between Applicants and the Forest Service on the litigation as a whole." *Id*.

[3] Because the Forest Service has taken no position on NRA/SCI's proposed intervention or otherwise made a statement of how NRA/SCI's objectives compare to the Forest Service's, and because NRA/SCI's allegations are to be taken as true for the purpose of this Motion, NRA/SCI's presumptions as to what the Forest Service's objectives are should be considered correct. *See Sw. Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

that result *would not* meet NRA/SCI's objective, and yet it would satisfy the two aspects of the Service's presumed objective.[4]

Also, CBD Plaintiffs claim "the government has consistently taken the position that lead ammunition poses a major threat to condor populations for more than a decade." Opp'n at 9. If this assertion is true, then the Service, at least in part, will have to defend the case differently than NRA/SCI will. This differing defenses creates differing objectives and possible outcomes. One outcome of the case could lead to the creation of restrictions on lead-based ammunition in the Kaibab NF. Because NRA/SCI and the Service's "ultimate" objectives are not sufficiently similar, the presumption of adequate representation is not applicable.

### 2. NRA/SCI Have Made the "Minimal" Showing That the Service's Representation of NRA/SCI's Interests May Not Be Adequate

The three non-dispositive factors courts review in analyzing the representation factor support intervention here. Motion at 12. In claiming "[n]one of the three factors weigh in favor of NRA intervention at the liability phase," Opp'n at 9, CBD Plaintiffs misapply or transmogrify these factors.

#### a. CBD Plaintiffs' Opinion on the Merit of NRA/SCI's Arguments is Irrelevant

The first factor at issue is "whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments[.]" *Citizens*, 647 F.3d at 898 (citation omitted). At this stage, NRA/SCI are not required "to anticipate specific differences in trial strategy[; i]t is sufficient for [NRA/SCI] to show that, because of the difference in interests, it is likely that [the Service] will not advance the same arguments as [NRA/SCI]." *Berg*, 268 F.3d at 824. NRA/SCI provided a specific example: "[NRA/SCI] intend to argue . . . that the best scientific evidence available *does not* sufficiently establish a nexus between condor illness and hunters' use of lead ammunition, in the Kaibab NF or otherwise." Motion at 14 (italics in original). CBD

---

[4] The Forest Service also must consider the "big picture," including how to deal with this case in light of other lawsuits brought by CBD Plaintiffs and similar organizations.

**8**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

Plaintiffs' concede that the Service may be "unwilling" to make this argument due to what CBD Plaintiffs perceive to be the "weakness of the argument." Opp'n at 11; *see also id.* at 9 ("[T]he government has consistently taken [a position opposite to the one proffered by NRA/SCI] for more than a decade[.]"). Thus, the Service will not "undoubtedly make all of a proposed intervenor's arguments[.]" *Citizens*, 647 F.3d at 898 (citation omitted).

CBD Plaintiffs, nonetheless, argue an interpretation of this factor not stated in the relevant authority – that an argument the proposed intervenor will make that the existing parties will not make must be one that ***the party opposing the intervention finds to be meritorious***. *See* Opp'n at 12-15. This is not the law. *See, e.g., Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir. 1999) ("An application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face."). CBD Plaintiffs only make the premature assertion that they do not find merit in NRA/SCI's argument. About one-third of the Opposition inappropriately argues merits issues – in an attempt to argue that a so-called "scientific consensus" exists. CBD Plaintiffs fail to rebut that NRA/SCI have established that this factor supports intervention.

        **b.    CBD Plaintiffs' Attempt to Evade the "Capable and Willing" Factor Cuts in Favor of Intervention**

The second factor, "whether the present party is capable and willing to make such arguments[,]" also supports intervention here. *Citizens*, 647 F.3d at 898 (citation omitted). CBD Plaintiffs admit "[t]he Forest Service is certainly *capable* of making the argument; the fact that it may be *unwilling* to do so speaks more to weakness of the argument than it does to the adequacy of representation of NRA's interests." Opp'n at 11 (italics in original). CBD Plaintiffs' statement shows they recognize that the Service is likely unwilling to make NRA/SCI's arguments, meaning this factor favors intervention.[5]

---

[5] CBD Plaintiffs contend that "practical considerations" cut against intervention during the liability phase because, they believe (1) NRA/SCI dispute an issue that the Forest Service does not, and (2) NRA/SCI's "likelihood of prevailing . . . is extremely low[.]" Opp'n at 9. CBD Plaintiffs wrongly speculates that NRA/SCI's participation will result

### c. The "Necessary Element" Factor Supports Intervention Even if CBD Plaintiffs Do Not Value NRA/SCI's Contribution

Similarly, the final factor, "whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect[,]" *Citizens*, 647 F.3d at 898 (citation omitted), supports intervention. CBD Plaintiffs speculate that even if NRA/SCI make a material showing that "lead does not cause actual harm to condors or the environment, success on that argument would be insufficient to defeat a finding that the Forest Service's activities *may present* an endangerment." Opp'n at 13-14. Again, this contention goes to the merits of the case. It also makes no sense. If NRA/SCI can show that condors are not dying from the ingestion of hunter-shot lead (risk to condors is at the heart of CBD Plaintiffs' case (see Compl. ¶¶ 34-42)), then such information would necessarily tend to undermine, and potentially defeat, CBD Plaintiffs' case.

Finally, CBD Plaintiffs allege that NRA/SCI conducted a "charade" in intervening in the *CBD v. BLM* court. Opp'n at 10-11. But the NRA did not cite any scientific studies in summary judgment briefing in that case for two reasons. First, the issue before the court was whether the BLM was required to discuss the relationship between lead-based ammunition and condors when it drafted an Environmental Impact Statement. Br. for NRA at *1, *CBD v. BLM*, No. 09-cv-8011-PCT-PGR (D. Ariz. Dec. 10, 2010) (Dkt. 115). Accordingly, the NRA had no need to discuss any scientific studies. Second, when the court granted NRA intervention, it explained: "At oral arguments, the NRA submitted that it had no intention of introducing extra-record evidence unless and until the other parties did the same. The Court reminds all parties that this case is based upon the administrative record." *CBD v. BLM*, 266 F.R.D. 369, 375 n.1 (D. Ariz. 2010). In contrast, the case here is not limited to an administrative record and NRA/SCI may properly submit such evidence.

---

in unnecessary litigation. First, "likelihood of success" is not one of the relevant factors in determining adequacy of representation. Second, a disagreement with NRA/SCI by all parties supports allowing intervention. Third, if the elements are met, the Court "must" grant intervention. Fed. R. Civ. P. 24(a).

**10**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

All three factors weigh in favor of intervention as the Service's representation of NRA/SCI's interests will be insufficient. Thus, NRA/SCI have met the "minimal" burden of showing the inadequate representation element for a proposed intervenor. *Arakaki*, 324 F.3d at 1086. Because the Motion was timely and NRA/SCI have met the three other elements for intervention, the Court should grant intervention as of right.

## II. Permissive Intervention Will Give a Voice to Those Who Will Be Most Affected by the Outcome of this Case

In the Motion, NRA/SCI demonstrated why permissive intervention would be appropriate if the Court did not grant intervention as of right. Motion at 16-17. In response, CBD Plaintiffs baldly state that NRA/SCI's participation would unduly delay and prejudice the parties' rights. Opp'n at 15-16. CBD Plaintiffs discount the value of vigorous opposition during the Court's resolution of disputed factual and legal issues and again essentially ask the Court to resolve the merits in their favor. They dismissively conclude that no possible defense exists because the science is undisputed and universally accepted. CBD Plaintiffs therefore suggest that any effort by NRA/SCI to present a defense will unnecessarily delay the case. This argument not only improperly asks the Court to address the ultimate merits issues of the case, but would effectively erect nearly insurmountable barriers to permissive intervention.

## III. CONCLUSION

NRA/SCI have demonstrated a significantly protectable interest in hunting with lead ammunition and that the Service does not adequately protect their interests. They respectfully request that this Court grant them intervention as of right. Alternatively, NRA/SCI request they be granted permissive intervention, or as a final alternative, allow NRA/SCI to participate in this case as amici curiae.

Respectfully submitted this 9th day of May, 2016.

**MICHEL & ASSOCIATES, P.C.**

/s/ C.D. Michel
C.D. Michel
*Attorneys for Proposed Defendant-Intervenor*

**11**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

*National Rifle Association of America*

**SAFARI CLUB INTERNATIONAL**

/s/ Douglas S. Burdin
Douglas S. Burdin
Anna M. Seidman
*Attorneys for Proposed Defendant-Intervenor Safari Club International*

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2016, I electronically transmitted the REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENORS NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL'S MOTION TO INTERVENE to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Dustin J. Maghamfar
US Dept of Justice - Environmental & Natural Resources
P.O. Box 7611
Washington, DC 20044
202-514-1806
Fax: 202-514-8865
Email: dustin.maghamfar@usdoj.gov

Attorney for Defendant, United States Forest Service

Kevin M. Cassidy
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
781-659-1696
Email: cassidy@lclark.edu

Attorney for Plaintiffs

Allison LaPlante
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97211
(503) 768-6894
Email: laplante@lclark.edu

Attorney for Plaintiffs

James Frederick Odenkirk
Office of the Attorney General
1275 W Washington
Phoenix, AZ 85007-2997
602-542-7787
Fax: 602-542-7798
Email: james.odenkirk@azag.gov

Attorney for Defendant Intervenor, State of Arizona

Norman D. James
Rhett A. Billingsley
Fennemore Craig, P.C.
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-2394
Telephone: (602) 916-5000
Email: njames@fclaw.com
   rbilling@fclaw.com

Attorneys for Proposed Defendant Intervenor Applicant, National Shooting Sports Foundation, Inc.

/s/Douglas S. Burdin
Douglas S. Burdin

**13**
**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**