# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, Sierra Club, and Grand Canyon Wildlands Council,<br><br>Plaintiffs,<br><br>v.<br><br>United States Forest Service,<br><br>Defendant. | No. CV-12-08176-PCT-SMM<br><br>**ORDER** |

  Pending before the Court is Defendant United States Forest Service's Motion to Dismiss and Memorandum of Points and Authorities in Support. (Doc. 123.) Defendant moves to dismiss Plaintiffs' suit for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

  Also pending before the Court is Intervenor-Defendant National Shooting Sports Foundation's Motion for Judgment on the Pleadings and Supporting Memorandum. (Doc. 124.) Intervenor-Defendant National Shooting Sports Foundation moves the Court for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).

  Finally, pending before the Court is Intervenor-Defendants National Rifle Association of America and Safari Club International's Motion to Dismiss. (Doc. 125.) These Intervenor-Defendants move to dismiss Plaintiffs' suit for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

  Plaintiffs filed one response to these motions (Doc. 132), to which Defendant and Intervenor-Defendants filed separate replies (Docs. 133, 134, 135). Thus, each pending

motion is fully briefed. The Court now issues the following rulings.

## I.   BACKGROUND[1]

Plaintiffs Center for Biological Diversity, Sierra Club, and Grand Canyon Wildlands Council (collectively, "Plaintiffs") bring this suit against Defendant United States Forest Service ("USFS" / "Defendant") under the citizen's suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 (a)(1)(B), "to limit the disposal of a known toxin on public lands in northern Arizona and to protect wildlife species threatened by exposure to spent lead ammunition in the foraging range within [USFS] land in Arizona." (Doc. 1 at ¶ 1.) Plaintiffs seek "judicial review, as well as declaratory and/or injunctive relief, from this Court to stop the continued endangerment to wildlife species occurring within the Kaibab National Forest, and to prevent harm to the Plaintiffs and their members that has resulted and is resulting from the ongoing endangerment." (Id. at ¶ 4.) Plaintiffs state that "an actual, justiciable controversy" exists between them and the Forest Service, and that their request for relief is proper under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the citizen's suit provision of the RCRA, 42 U.S.C. § 6972(e). (Id. at ¶ 5.)

In an earlier proceeding, Defendant moved to dismiss for lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 46.) This Court granted Defendant's Fed. R. Civ. P. 12(b)(1) motion (Doc. 81), and Plaintiffs appealed. The United States Court of Appeals for the Ninth Circuit reversed, concluding that Plaintiffs had Article III standing. (Doc. 86-1 at 2.) The Court of Appeals remanded to this Court the question of "whether there is a valid cause of action sufficient to survive the Forest Service's motion to dismiss under Rule 12(b)(6)." (Id. at 5.) Defendant then renewed its motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 123) – the motion at bar.

The Court does not reach Defendant's motion to dismiss for failure to state a claim

---

[1] The Court will review only the relevant procedural background upon which Defendant's motion is based. A more comprehensive background can be found in a previous Order. (Doc. 81 at 1-2.)

- 2 -

pursuant to Fed. R. Civ. P. 12(b)(6), or Intervenor-Defendants' motions, because the Court cannot regard Plaintiffs' suit as other than a request for an advisory opinion, which this Court is without power to render. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

## II. LEGAL STANDARD

Article III, Section 2 of the United States Constitution limits the federal judicial power to cases and controversies. U.S. Const. art III, §2; see also Flast v. Cohen, 392 U.S. 83, 94 (1968) ("The jurisdiction of federal courts is defined and limited by Article III of the Constitution."); Preiser v. Newkirk, 422 U.S. 395, 401 (1975) ("The exercise of judicial power under [Article] III of the Constitution depends on the existence of a case or controversy."); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239 (1937) (noting that there is no meaningful distinction between the terms "cases" and "controversies"). The Supreme Court in Flast explained the case and controversy limitation as follows:

> Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. *Justiciability* is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

Flast, 392 U.S. at 95 (emphasis added). If a dispute is not a proper case or controversy, "[the court has] no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006); see also Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

No justiciable controversy exists "when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action."[2] Flast, 392 U.S. at 95. The Supreme Court has emphasized that "the oldest and most consistent thread in federal law of justiciability" is the prohibition against advisory opinions. Id. at 96 (internal quotations and further citations omitted). As described by the Supreme Court in U.S. v. Fruehauf, 365 U.S. 146 (1961), advisory opinions are:

> "[A]dvance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests."

Fruehauf, 365 U.S. at 157.

Although a somewhat indefinite definition, courts have applied the prohibition on advisory opinions with precision. For example, in Chicago & Southern Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 113-14 (1948), the Supreme Court ruled that federal courts could not review certain decisions of the Civil Aeronautics Board made pursuant to the Civil Aeronautics Act. The decisions at issue were subject to the approval of the President of the United States. Chicago & Southern, 333 U.S. at 113-14. The Court noted that rendering a judgment after the Board made its decision, but before the President made his decision, would be the equivalent of a making a recommendation to the

---

[2] As is apparent from this quotation, there are many grounds upon which controversies can be found non-justiciable. Flast, 392 U.S. at 95, 98. Importantly, "[w]hen *standing* is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and *not whether the issue itself is justiciable*." Id. at 98-100 (emphasis added). Accordingly, a party may have standing in a particular case, but the federal court "may nevertheless decline to pass on the merits of the case" if, for example, the parties ask for an advisory opinion. Id. at 95, 100.

This is precisely the juncture at which the Court finds itself: despite the fact that Plaintiffs have Article III standing to bring this suit (see supra page 2), the suit will not proceed because the Court finds that the parties seek to obtain an advisory opinion from this Court.

1  President. Id. The Court, describing the unconstitutional nature of judicial review under
2  these circumstances, said:

> To revise or review an administrative decision, which has only the force of a recommendation to the President, would be to render an advisory opinion in its most obnoxious form – advice that the President has not asked, tendered at the demand of a private litigant, on a subject concededly within the President's exclusive, ultimate control.

6  Id. The Court added that it is *not* the practice of federal courts to render judgments that
7  are "not binding and conclusive on the parties" and "subject to later review or alteration
8  by administration action." Id. (further citations omitted). Judgments, the Court said,
9  "within the powers vested in courts by the Judiciary Article of the Constitution, may not
10 lawfully be revised, overturned, or refused faith and credit by another Department of the
11 Government." Id.

12 With this as a backdrop, the Court now turns to the Declaratory Judgment Act.
13 The Declaratory Judgment Act provides that in a case of "*actual* controversy within its
14 jurisdiction" a court "*may* declare the rights and other legal relations of any interested
15 party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). As is readily
16 apparent from the statutory language, a federal court is not obligated to make such a
17 declaration; rather, it has "unique and substantial discretion in deciding whether to
18 declare the rights of [the] litigants." Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118,
19 136 (2007) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)); see also
20 Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 111 (1962) ("[The Declaratory
21 Judgment Act] gave the federal courts competence to make a declaration of rights; it did
22 not impose a duty to do so."). A federal court is vested with such discretion because
23 "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of
24 the case for resolution, are peculiarly within [its] grasp." Medimmune, 549 U.S. at 136
25 (quoting Wilton, 515 U.S. at 289).

26 Significantly, a federal court first must be satisfied that the lawsuit passes
27 *constitutional muster* and fulfills statutory jurisdictional prerequisites before it exercises
28 its discretion. Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th

1 Cir. 1998). To pass constitutional muster means that the lawsuit seeking federal
2 declaratory relief presents a case or controversy within the meaning of Article III, Section
3 2 of the United States Constitution. Dizol, 133 F.3d at 1222 (citing Haworth, 300 U.S. at
4 239-40). To be sure, when presented with a claim for declaratory judgment, federal courts
5 "must take care to ensure presence of an actual case or controversy, such that the
6 judgment does not become an unconstitutional advisory opinion." Rhoades v. Avon
7 Products, Inc., 504 F. 3d 1151, 1157 (9th Cir. 2007).

**III.  DISCUSSION**

Review of Plaintiffs' Complaint and in-Court statements reveal that there is no real and substantial controversy before this Court; to the contrary, the Court finds that the relief requested by Plaintiffs would necessarily take the form of an advisory opinion.

In the Complaint, Plaintiffs state that they seek "judicial review, declaratory and/or injunctive relief, from this Court to stop the continued endangerment to wildlife species occurring within the Kaibab National Forest, and to prevent the harm to the Plaintiffs and their members that has resulted and is resulting from the ongoing endangerment." (Doc. 1 at ¶ 4.) More specifically, Plaintiffs request that the Court declare the USFS to be a "contributor" under the RCRA and permanently enjoin the USFS from contributing to the endangerment to the condors posed by lead ammunition. (Id. at ¶ 47.) Importantly, Plaintiffs' prayer for relief is built upon the repeated assertion that the USFS has the authority to stop the disposal of lead ammunition on USFS lands, but has failed to take action on the matter. (Id. at ¶ ¶ 3, 6, 13, 16, 34.)

At an April 2016 hearing, Plaintiffs' counsel summarized their request for relief as follows: "[t]he relief we're seeking is an order from this Court to abate the endangerment so the United States would have some discretion in terms of how it carries out the Court's order, but what we want is the endangerment abated." (Doc. 116 at 14.) Counsel continued: "we don't necessarily think the Court's order needs to direct the [USFS] to issue a regulation, rather, it needs to direct the [USFS] to abate the endangerment, leaving the [USFS] some discretion as to how it complies with the Court's order." (Id.)

The Court finds that these in-Court statements and the Complaint excerpts show that Plaintiffs seek to obtain an advisory opinion from this Court. First, were the Court to issue the requested order – directing the USFS to "abate the endangerment" and allowing the USFS to execute this directive in whatever way it chooses (Id. at 14) – the Court would be issuing nothing more than a recommendation to the USFS. "[T]o revise or review an administrative decision, *which has only the force of a recommendation* …would be to render an advisory opinion in its most obnoxious form." Chicago & Southern Air Lines, 333 U.S. at 437 (emphasis added). Prohibition of lead ammunition in national forests is a matter over which the USFS has control. Indeed, the Court has already ruled that the USFS *has* the authority to prohibit lead ammunition in national forests *but has decided not* to exercise that authority:

> [The USFS] has authority to regulate activities in the National Forests. This broad authority includes the right to issue regulations that restrict actions that threaten endangered species of animals, such as the California condor. [The USFS] opts not to exercise this authority and instead allows the use and disposal of lead on the land which it administers. Although [The USFS] may choose not to ban certain types of ammunition in deference to Arizona's regulation of hunting, it is not thereby automatically relieved of its affirmative duty to stop the disposal of environmental contaminants in the [Kaibab].

 (Doc. 81 at 5.). Thus, for the Court to direct the USFS to exercise its authority on a matter within the USFS's control would amount to nothing more than a recommendation to the USFS that the USFS would be free to disregard. The Court is not authorized to render such a judgment.

Second, rather than a conclusive, binding order, Plaintiffs seek a generalized order in which the Court directs the USFS to "abate the endangerment" and affords the USFS discretion in how to execute that directive. (Doc. 116 at 14.) It is *not* the practice of federal courts to render judgments that are "not binding and conclusive on the parties." Chicago & Southern Air Lines, 333 U.S. at 113-14. This is precisely the type of order Plaintiffs seek from the Court. Plaintiffs seek an order requiring a generalized outcome, with no clear terms for attainment. Rather, Plaintiffs ask the Court to allow USFS to create its own terms. The Court is not authorized to issue such an order. Furthermore, the

- 7 -

order Plaintiffs seek would necessarily be subject to later review, input, or alteration by other entities.³ It is not the practice of federal courts to render judgments that would be "subject to later review or alteration by administration action." Chicago & Southern Air Lines, 333 U.S. at 114.

Finally, the Court finds that directing the USFS to exercise its authority and "abate the endangerment" (i.e., prohibit lead ammunition) would be an improper intrusion into the domain of the USFS. "That by the Constitution of the United States, the government thereof is divided into three distinct and independent branches, and *that it is the duty of each to abstain from, and to oppose, encroachments on either*." Muskrat v. U.S., 219 U.S. 346, 352 (1911) (citation omitted) (emphasis added); see also Flast, 392 U.S. at 96

---

³ For example, the Court notes the following laws and regulations:

"It is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes. The purposes of sections 528 to 531 of this title are declared to be supplemental to, but not in derogation of, the purposes for which the national forests were established as set forth in section 475 of this title. Nothing herein shall be construed as affecting the jurisdiction or responsibilities of the several States with respect to wildlife and fish on the national forests. Nothing herein shall be construed so as to affect the use or administration of the mineral resources of national forest lands or to affect the use or administration of Federal lands not within national forests." 16 U.S.C. § 528.

"In the effectuation of sections 528 to 531 of this title the Secretary of Agriculture is authorized to cooperate with interested State and local governmental agencies and others in the development and management of the national forests." 16 U.S.C. § 530.

"Officials of the Forest Service designated by the Secretary of Agriculture shall, in all ways that are practicable, aid in the enforcement of the laws of the States or Territories with regard to stock, for the prevention and extinguishment of forest fires, and for the protection of fish and game, and with respect to national forests, shall aid the other Federal bureaus and departments on request from them, in the performance of the duties imposed on them by law." 16 U.S.C. § 553.

"Provided further, [t]hat nothing in this Act shall be construed as authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands or on lands in the National Forest System and adjacent waters or as enlarging or diminishing the responsibility and authority of the States for management of fish and resident wildlife." 43 U.S.C. § 1732(b).

"All forest officers will cooperate with State officials, insofar as practicable, to enforce State fire, game, and health laws." 36 C.F.R. § 211.3.

"Officials of the Forest Service will cooperate with State, county, and Federal officials in the enforcement of all laws and regulations for the protection of wildlife." 36 C.F.R. § 241.1(a)

("When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III."); United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947) ("The Constitution allots the nation's judicial power to the federal courts. Unless these courts respect the limits of that unique authority, they intrude upon powers vested in the legislative or executive branches."). As previously discussed, prohibition of lead ammunition in national forests is a matter over which the USFS has control. See supra, page 7 ("Prohibition of lead ammunition in national forests is a matter over which the USFS has control. Indeed, the Court has already ruled that the USFS *has* the authority to prohibit lead ammunition in national forests *but has decided not* to exercise that authority[.]"). It is a matter on which the USFS has knowledge and expertise. It is also a matter involving, and sometimes requiring, input from and cooperation with other entities.[4] The Court is not authorized, nor is it in any position, to supplant the USFS's authority, knowledge, and expertise on this matter in the form of a judgment ordering the USFS to take a certain course of action. To do so would be an improper intrusion into the domain of the USFS.

For these reasons, the Court finds that there is no controversy before it and that Plaintiffs seek to obtain an advisory opinion. The lack of a controversy also nullifies Plaintiffs' request for relief under the Declaratory Judgment Act. See Golden v. Zwickler, 394 U.S. 103, 959 (1969) ("Federal courts…do not render advisory opinions. For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions are requisite. This is as true for declaratory judgments as any other field.") (internal quotations and further citations omitted).

## IV.  CONCLUSION

Although Plaintiffs allege that an "actual, justiciable controversy exists" (Doc. 1 at ¶ 5), the fact is no actual, justiciable controversy exists: what exists is a request for an

---

[4] See n. 3, supra page 8.

advisory opinion, which this Court lacks power to render. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94 (1998) (quoting <u>Ex parte McCardle</u>, 74 U.S. 506, 514 (1868)). Pursuant to this clear directive, the Court will grant Defendant and Intervenor-Defendants' motions and dismiss this suit, albeit it on grounds different than those which Defendant and Defendant-Intervenors have argued.

Accordingly,

**IT IS HEREBY ORDERED** dismissing without prejudice all of Plaintiffs' claims in this suit. The Clerk of Court shall terminate this case.

**IT IS FURTHER ORDERED** granting United States Forest Service's Motion to Dismiss and Memorandum of Points and Authorities in Support. (Doc. 123.)

**IT IS FURTHER ORDERED** granting Intervenor-Defendant National Shooting Sports Foundation's Motion for Judgment on the Pleadings and Supporting Memorandum. (Doc. 124.)

**IT IS FURTHER ORDERED** granting Intervenor-Defendants National Rifle Association of America and Safari Club International's Motion to Dismiss. (Doc. 125.)

Dated this 15th day of March, 2017.

Honorable Stephen M. McNamee
Senior United States District Judge